# **EXHIBIT D**



# IMPALA
PARTNERS

July 2, 2001

Mr. William Rouhana, Jr.
Chairman and Chief Executive Officer
Winstar Communications, Inc.
685 Third Avenue
New York, NY 10017

Dear Bill:

This letter confirms the retention of Impala Partners, LLC ("Impala") to provide advisory services to Winstar Communications, Inc. (the "Company"), including, without limitation, providing the services of Mr. Paul A. Street as Chief Restructuring Officer of the Company. We will advise you in connection with the restructuring of the Company ("the Restructuring") and, by signing this letter, we hereby accept the engagement under the terms hereof and subject to the approval of the Bankruptcy Court.

We will act as your advisor for a period of one (1) year from the date hereof, subject to earlier termination pursuant to section 5 or further extension by mutual agreement between the parties and subject to the following conditions:

1.  You will furnish or cause to be furnished to us such current and historical financial information and other information regarding the business of the Company as we may request in connection with this engagement. You agree that you will use your good faith efforts to ensure that all of the foregoing information will be accurate in all material respects at the time it is furnished, and you agree to keep us advised of all developments materially affecting the Company or its financial or legal position. In connection with our activities hereunder, we agree to keep confidential all non-public information provided to us by the Company, except as required by law, or as agreed to by the Company in writing.

2.  In consideration for our services, you agree to pay us a monthly retainer of $250,000 per month for the first two months. Thereafter, at the rate of $100,000 per month for the services of Paul A. Street; and $50,000 for the services of each of Peter C. Keenoy, Michael P. Borom, and J. Robert Vipond only in respect to those of the three aforementioned individuals who are actively involved in the Winstar advisory engagement, provided, that each of the persons set forth in this letter spend substantially all of their working time during such month in such activity. An initial advance of $250,000 is payable in full at the inception of the engagement as the first monthly payment hereunder, subject only to Bankruptcy Court approval. Thereafter, for as long as the engagement continues, the retainer shall be payable monthly in advance with expenses to be reimbursed in accordance with paragraph 3 below. You further

LN/672087.1   Impala Partners, LLC 300 First Stamford Place, Stamford, CT 06902

PAGE 4/10 * RCVD AT 5/16/2007 2:06:48 PM [Eastern Daylight Time] * SVR:NYFX01/5 * DNIS:3499 * CSID:2039566546 * DURATION (mm-ss):03-24

agree to pay us an additional fee ("the Success Fee") which will be mutually agreed upon within 30 days of the date hereof, payable upon the earlier of confirmation of a plan under or other emergence from Chapter 11 of the U.S. Bankruptcy Code of the Company or its successor, whether through a recapitalization, merger, or sale of the Company, confirmation of a plan or otherwise and subject to Bankruptcy Court approval.

3. You will reimburse us for all of our reasonable and actual out-of-pocket expenses incurred in connection with this engagement, including fees and expenses, up to a maximum of $20,000 of counsel that we determine is required to advise us in connection with carrying out our duties under this letter; provided, that before such counsel is retained we will provide advance written notice to the Company and consult with the General Counsel of the Company. All reimbursements shall be made promptly after such payments accrue and are submitted to you with appropriate documentation for payment hereunder.

4. No fee payable to any other financial advisor, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. Our engagement hereunder may be terminated by you or us at any time without liability or continuing obligation to you or us, except that following such termination and any expiration of this agreement (a) we shall remain entitled to any fees accrued pursuant to paragraph 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, as contemplated by paragraph 3 hereof; and (b) upon any expiration or termination of this agreement, we shall remain entitled to any full payment of any fee contemplated by paragraph 2 hereof in respect of any restructuring resulting from negotiations commenced during the term of this agreement which is consummated within nine (9) months following such termination or expiration, as the case may be. The provisions of this paragraph 5 shall survive the termination of this Agreement.

6. Any written financial advice rendered by us pursuant to this agreement is intended solely for the benefit and use of management and the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such written advice may not be disclosed publicly or made available to third parties (except as required by law) without the prior written consent of Impala, which consent shall not be unreasonably withheld except that the Company may share such written advice with the members of the Post-petition and Pre-petition bank lenders and the members of the Creditor's Committee and each of their representatives without Impala's consent.

7. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company and Impala. This agreement may not be amended or modified except in a writing executed by the Company and us and shall be

2

LA/672087.1

governed by and construed in accordance with the laws of the State of New York, without reference to principals of conflicts of law. This agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

8. In consideration of our agreement to act as advisor to the Company in the Company agrees to the same indemnification provisions attached hereto as Annex A. In addition, the Company will notify its existing insurance carrier of its existing directors and officers' policy and cause Mr. Street to become covered under such policy immediately as an officer of the Company. The provisions of this paragraph 8 shall survive the termination of this Agreement.

9. This agreement shall be subject to approval by the U.S. Bankruptcy Court. The Company will prepare and file with the Bankruptcy Court a motion seeking approval of this letter promptly.

If the foregoing correctly sets forth the understanding between us, please so indicate on the enclosed signed copy of this agreement in the space provided therefor and return it to us, whereupon this agreement shall constitute a binding agreement between us.

Very truly yours,

IMPALA PARTNERS

By: _____
Paul A. Street

AGREED TO AND ACCEPTED
as of the date first above written:

Winstar Communications, Inc.

By: _____
William J. Rouhana, Jr.
Chairman and Chief Executive Officer

3

LA/672067.1

ANNEX A

Indemnification Provisions

1. In connection with the engagement of Impala Partners, LLC ("Impala Partners") by Winstar Communications, Inc., (the "Company") pursuant to a letter agreement dated July 2, 2001 between the Company and Impala Partners, as it may be amended from time to time (the "Letter Agreement"), the Company hereby agrees as follows:

2. The Company agrees to indemnify and hold harmless Impala Partners and each of its partners, agents, employees and controlling persons (within the meaning of the Securities Act of 1933, as amended) (each, an "Indemnified Person") against any losses, claims, damages or liabilities (or actions or proceedings in respect thereof) brought by any third party (i.e., a person not a party to the Letter Agreement or an Indemnified Party hereunder) arising out of the rendering of services by Impala Partners under the Letter Agreement and will reimburse Impala Partners and each other person indemnified hereunder for all reasonable legal and other expenses as incurred in connection with investigating or defending any such loss, claim, damage, liability, action or proceeding; provided, however, that the Company will not be liable in any such case for losses, claims, damages, liabilities or expenses arising from the negligence or willful misconduct of Impala Partners or any other party entitled to indemnification hereunder. In case any proceeding shall be instituted involving any Indemnified Party, such person shall promptly notify the Company, and the Company, upon the request of the Indemnified Party, shall retain counsel reasonably satisfactory to the Indemnified Party to represent the Indemnified Party and any others the Company may designate in such proceeding and shall pay all reasonable fees and expenses of such counsel related to such proceeding. In any such proceeding, any Indemnified Party shall have the right to retain its own counsel at its own expense, except that the Company shall pay as incurred the fees and expenses of counsel retained by the Indemnified Party only in the event that (i) the Company and the Indemnified Party shall have mutually agreed to the retention of such counsel, or (ii) the named parties to any such proceeding (including any impleaded parties) include both the Company and the Indemnified Party and representation of both parties by the same counsel would be inappropriate, in the reasonable opinion of the Company, due to actual or potential differing interests between them.

3. The Company shall not be liable for any settlement of any proceeding effected without its written consent. In addition, the Company will not, without the prior written consent of Impala Partners, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder unless such settlement, compromise or consent includes an unconditional release of each party for which indemnification is sought hereunder from all liability arising out of such claim, action, suit or proceeding.

4. In the event that the indemnity provided for in paragraph 2 hereof is unavailable or insufficient to hold any Indemnified Party harmless, then the Company shall contribute to amounts paid or payable by an Indemnified Party in respect of such Indemnified Party's losses, claims, damages and liabilities as to which the indemnity provided for in paragraph 1 hereof is unavailable or insufficient (1) in such proportion as appropriately reflects the relative benefits received by the Company, on the one hand, and Impala Partners, on the other hand, in connection with the matters as to which such losses, claims, damages or liabilities relate, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as appropriately reflects not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and Impala Partners, on the other hand, as well as any other equitable considerations. The amounts paid or payable by a party in respect of losses, claims, damages and liabilities referred to above shall be deemed to include any reasonable legal or other fees and expenses incurred in defending any litigation, proceeding or other action or claim. Nothing herein shall be deemed to increase the scope of matters for which indemnity or contribution may be available beyond those described in paragraph 1 of these Indemnification Provisions.

5. These Indemnification Provisions shall survive the expiration of the term of the Letter Agreement, and shall be in addition to any liability that the Company might otherwise have to any Indemnified Party under the Letter Agreement or otherwise. The Company and Impala Partners each hereby waives any right to a trial by jury with respect to any claim or action arising out of the engagement of Impala Partners under the Letter Agreement or the Indemnification Provisions. It is further agreed that no Indemnified Party (including Impala Partners) shall be liable to the Company or any affiliate of the Company in connection with any matter arising out of or relating to the engagement of Impala Partners under the Letter Agreement, or any actions take or omitted , services performed or matters contemplated by or in connection with the Letter Agreement, except to the extent that such liability resulted primarily from the willful misconduct or negligence of such Indemnified Party; provided that nothing herein shall excuse Impala Partners from its obligations to perform under the Letter Agreement in good faith and in accordance with the terms thereof.

2