# EXHIBIT D



# MEMORANDUM

**TO:**   Distribution

**FROM:**   Michelle Gaynor

**RE:**   Winstar Communications, Inc.
          Winstar Wireless, Inc.

**DATE:**   August 3, 2001

---

The attached Engagement Letter is for your file.

Distribution
J. Abrams
D. Casanova
Central Files
Fireproof Vault (Original)
R. Gentile
J. Page
C. Riker

**MEMO**

*7/30*

To:
From:

Dennis Walsh
MAP

**To:** Michael A. Puglisi
**From:** Geraldine Bolger
**Subject:** Agreement Letter
**Date:** July 30, 2001

---

Attached is the revised signed original agreement letter with Winstar.

Att.



The Blackstone Group

Arthur Newman
Senior Managing Director
July 26, 2001

Mr. Timothy R. Graham
Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.

685 Third Avenue
Suite 3100
New York, NY 10017

Dear Tim:

This letter agreement (this "Agreement") amends and supercedes our letter agreement dated April 16, 2001 (the "April 16 Agreement") and confirms the understanding and the agreement between The Blackstone Group L.P. ("Blackstone") and Winstar Communications, Inc., Winstar Wireless, Inc. and their affiliates that are debtors in possession in the pending chapter 11 bankruptcy cases (collectively, "Winstar" or the "Company") regarding the retention of Blackstone by Winstar as its financial advisor for the purposes set forth herein. This agreement together with the attached indemnification agreement is effective nunc pro tunc April 18, 2001 ("Effective Date").

Since April 6, 2001, Blackstone has acted as financial advisor to Winstar in connection with its reorganization under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Effective as of July 6, 2001, the Company has requested Blackstone to serve as its exclusive M&A advisor to provide the financial advisory services described herein and has indicated it no longer requires the broader financial advisory services provided prior thereto. Under this Agreement, Blackstone will provide financial advisory services to Winstar in connection with (i) a sale of the Company, (ii) the sale of all or substantially all of the assets of the Company, (iii) an investment by a third party under a plan of reorganization, and/or (iv) a merger, acquisition or other similar transaction by the Company, in one or a series of transactions (each such transaction listed in (i) through (iv), a "Transaction").

The financial advisory services to be rendered by Blackstone include, without limitation, the following:

The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154
Tel 212 583 5372
Fax 212 583 5707

Blackstone Financial Services®

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 2

(a) Assisting in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties regarding a Transaction;

(b) Assisting the Company in preparing marketing materials in conjunction with a possible Transaction;

(c) Assisting the Company in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(d) Assisting and advising the Company concerning the terms, conditions and impact of any proposed Transaction;

(e) Negotiating a Transaction with potential buyers; and

(f) Providing expert testimony with respect to any Transaction and bidding procedures therefor.

Notwithstanding anything contained in this Agreement or the April 16 Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Transaction or consummate a reorganization. Blackstone is retained under this Agreement solely to provide advice regarding a Transaction and shall have no duties, responsibilities or obligations in respect of "crisis management."

The Company agrees to pay the following fees to Blackstone for its financial advisory services:

(i) a monthly advisory fee in the amount of $200,000 for each of the two months during the period from May 6, 2001 through July 5, 2001 for services rendered in accordance with the April 16 Agreement. Blackstone has received $200,000 from the Company with respect to financial advisory services rendered for the month commencing April 6, 2001;

(ii) a monthly advisory fee in the amount of $100,000 for the period commencing July 6, 2001 for services rendered in connection with a Transaction (the "Monthly Fee"), with the first such Monthly Fee due on July 6, 2001, and additional installments of the Monthly Fee payable in advance on each monthly anniversary of such date prior to the termination of this Agreement;

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 3

    (iii)    upon the consummation of a Transaction, a Transaction fee ("Transaction Fee") payable in cash equal to 1% of the first $200,000,000 of Consideration (as defined below) plus 1.25% of Consideration above $200,000,000.

            In this Agreement, Consideration means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Consideration shall also include the face amount of any long-term liabilities or preferred stock (including indebtedness for borrowed money and the amount set forth in the Company's financial statements for any pension liabilities and guarantees) indirectly or directly assumed or acquired, or otherwise repaid or retired by one or more purchasers of, or investors in, the Company, in connection with or in anticipation of the Transaction, excluding all operating lease obligations that are not characterized as liabilities on the balance sheet of the Company. If the Transaction involves an investment in the Company, Consideration shall equal the total enterprise value of the Transaction (calculated based upon the amount of the investment and the percentage ownership acquired therefor), including the face amounts of any long-term liabilities or preferred stock (as defined above), indirectly or directly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Transaction. If the Transaction takes the form of a purchase of assets, Consideration shall also include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. If the Consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Consideration is paid; and

    (iv)    reimbursement of all necessary and reasonable out-of-pocket expenses commencing on April 6, 2001, incurred during this engagement, including, but not limited to, out-of-town travel requested by the Company and related lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's external counsel not to exceed $5,000 (unless consented to by the Company, which consent shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

engagement ma2.DOC

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 4

    The Company shall use its good faith efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this Agreement and Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by an order of the Bankruptcy Court acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that to the extent time records are required, Blackstone will keep them in one-half hour increments.

    The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt capital, issuing fairness opinions, or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the Company.

    Except as contemplated by the terms hereof or as required by applicable law or legal process, Blackstone shall keep confidential all material non-public information provided to it by or at the request of the Company, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

    The Company will furnish or cause to be furnished to Blackstone such information as Blackstone and the Company believe appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 5

connection with its assignment. The Company agrees to promptly notify Blackstone regarding any inquiries or solicitations related to a potential Transaction (to the extent any such inquiry or solicitation becomes known to the executive officers of the Company), and agrees to enter into any related negotiations with the assistance of Blackstone.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information, Blackstone exercises the same degree of care (and in any event exercises at least a reasonable degree of care) as it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgement, in the Chapter 11 proceeding) without the prior written consent of Blackstone or as otherwise provided herein. All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company (including its board of directors) and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company. In such capacity, Blackstone shall act as an independent contractor, and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Because Blackstone will be acting on the Company's behalf in this capacity, it is customary for us to receive indemnification. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

In the event that Blackstone is requested or authorized by the Company or required by government regulation, subpoena, or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with Blackstone's engagement for the Company, the Company will, if Blackstone is not a party to the proceeding in which the information is sought, reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

The term of Blackstone's engagement hereunder shall extend until the earliest of the effectiveness of the Plan for the Company under Chapter 11 of the Bankruptcy Code, the consummation of a Transaction as defined above, or the conversion of any Chapter 11 case for the Company to a case under Chapter 7 of the Bankruptcy Code. Blackstone's engagement

*engagement ma2.DOC*

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 6

hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur immediately upon delivery of written notice to the other party. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor, and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A, and (c) Blackstone shall be entitled to the full Transaction Fee in the event that a Transaction is consummated at any time prior to the expiration of nine full months following the termination of this Agreement.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of the private equity businesses of Blackstone and its affiliates in their businesses distinct from the restructuring advisory business of Blackstone provided that the Information is not shared with representatives of Blackstone and its affiliates who are not involved in the restructuring or mergers and acquisitions advisory businesses of Blackstone and that appropriate "Chinese wall" measures are taken to insure confidentiality.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding brought by the Company against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained by the Company exclusively in the United States Bankruptcy Court for the District of Delaware. The Company irrevocably submits to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Mr. Timothy R. Graham, Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.
July 26, 2001
Page 7

    Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

THE BLACKSTONE GROUP L.P.

By: *Arthur Newman*

Arthur B. Newman
Senior Managing Director

Accepted and Agreed to as
of the date first written above:

WINSTAR COMMUNICATIONS, INC.
WINSTAR WIRELESS, INC.

By: _____

Timothy R. Graham
Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.

ATTACHMENT A

July 26, 2001

The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154

INDEMNIFICATION AGREEMENT

Gentlemen:

     This letter will confirm that we have engaged The Blackstone Group L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of July 26, 2001 (the "Engagement Letter"). This indemnification shall be effective nunc pro tunc April 18, 2001. In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigation, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement or (ii) if and only if the allocation provided by clause (i) above is for any reason not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter.

No party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we or any Indemnified Party is an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such

action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of the Company under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and such Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

*engagement ma2.DOC*

JUL-27-2001  18:23          212 792 9348                          212 792 9348      P.02

    This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

WINSTAR COMMUNICATIONS, INC.
WINSTAR WIRELESS, INC.

By: _____

Timothy R. Graham
Executive Vice President
Winstar Communications, Inc.
Winstar Wireless, Inc.

Accepted and Agreed
to as of the date first
written above:

THE BLACKSTONE GROUP L.P.

By: _____

Arthur B. Newman
Senior Managing Director

*Winstar Revised Blackstone engagement letter1.DOC*