Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**ORIGINAL**

| | |
|---|---|
| WINSTAR HOLDINGS, LLC and IDT CORP., | : Index No. |
| | : Date Purchased |
| | : |
| | : Plaintiff designates NEW YORK 07601582 |
| Plaintiffs, | : County as the place of trial. |
| | : |
| -against- | : The basis of this venue is |
| | : residence of defendants; location where the cause |
| THE BLACKSTONE GROUP LP; | : of action arose; and Plaintiffs' designation. |
| IMPALA PARTNERS, LLC; and CITICORP, | : |
| | : **SUMMONS** |
| Defendants. | : Plaintiffs reside at |
| | : 520 Broad Street |
| | Newark, New Jersey |
| | County of Essex |

**FILED**
MAY 10 2007
NEW YORK
COUNTY CLERKS

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer on the Plaintiffs' Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   New York, New York
         May 10, 2007

MOUND COTTON WOLLAN & GREENGRASS

Philip C. Silverberg, Esq.
Gretchen Henninger, Esq.
One Battery Park Plaza
New York, NY 10004-1486
Telephone: (212) 804-4200

and

Melissa Roover, Esq.
GRAYSON & KUBLI, P.C
1420 Spring Hill Road, Suite 230
McLean, VA 22102
(703) 749-0000

Attorneys for Plaintiffs
WINSTAR HOLDINGS, LLC and
IDT CORP.

TO:   The Blackstone Group LP
      345 Park Avenue
      New York, NY 10154

      Impala Partners, LLC
      18 Marshall Street, Suite 112
      Norwalk, CT 06854

      Citicorp
      399 Park Avenue
      New York, NY 10043

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

WINSTAR HOLDINGS, LLC,
and IDT CORP.,

                          Plaintiffs,

      -against-

THE BLACKSTONE GROUP LP;
IMPALA PARTNERS, LLC; and
CITICORP,

                       Defendants.

-------------------------------------------------------------------X

Index No.:

**COMPLAINT** 7601582

FILED
MAY 10 20__
NEW YORK
COUNTY CLERK

Plaintiffs, Winstar Holdings, LLC and IDT Corp., by and through its attorneys, Mound Cotton Wollan & Greengrass, as and for its complaint against Defendants, The Blackstone Group LPI, Impala Partners, LLC, and Citicorp, hereby allege as follows:

1.    In 2001, Plaintiffs spent $42.5 million to acquire the business assets of Winstar Communications, Inc., and related entities ("Old Winstar"). In doing so, they relied on the oral and written misrepresentations of the Defendants regarding Old Winstar sales, customers, and other material information. As a result, the Plaintiffs lost hundreds of millions of dollars. The Plaintiffs bring this action to recover for those injuries.

### PARTIES

2.    Plaintiff Winstar Holdings, LLC, formerly known as IDT Winstar Acquisition, Inc. ("New Winstar"), is a Delaware corporation. It acquired the business assets of Old Winstar in an Asset Purchase Agreement dated December 18, 2001.

1

3.     Plaintiff IDT Corp. ("IDT") is a Delaware corporation. It is, among other things, a telephone company. It provided the funds for the purchase of Old Winstar, and bore most of the resulting subsequent losses.

4.     Defendant The Blackstone Group LP ("Blackstone") is a Delaware limited partnership. Its principal office is at 345 Park Avenue, New York, NY 10154. In the sale of Old Winstar's assets, it acted as an investment advisor to various entities related to Old Winstar.

5.     Defendant Impala Partners, LLC ("Impala") is a Delaware limited partnership. Its principal office is at 18 Marshall Street, Suite 112, Norwalk, Connecticut 06854. Upon information and belief, at the time of the sale of Old Winstar's assets, it was acting as a restructuring advisor for Old Winstar.

6.     Defendant Citicorp ("Citicorp") is a Delaware corporation. Its principal office is at 399 Park Avenue, New York, New York 10043. It was the largest creditor of Old Winstar while Old Winstar was a debtor in bankruptcy. Impala's actions are, in large part, attributable to Citicorp because Citicorp acted as Impala's principal. Allegations regarding Citicorp include, but are not limited to, allegations regarding Impala that are imputed to Citicorp.

## JURISDICTION AND VENUE

7.     The Supreme Court of the State of New York, as a court of general original jurisdiction, has subject matter jurisdiction of this action.

8.     Personal jurisdiction exists in this action because, among other reasons: the Defendants transact business within the state or contracted to supply goods or services within the state; have committed a tortious act within the state; and own, use or possess real property within the state.

9.     Venue lies in this County because Defendants Blackstone's and Citicorp's principal offices are located in this County, the cause of action arose in the county, and the Plaintiffs designate the county.

## ALLEGATIONS

10.     In and around 2001, IDT examined several potential acquisitions in the field of telecommunications.

11.     Through 2001, Old Winstar provided telephone service to customers using a "fixed wireless" system. This system carried calls locally by wireless means, from customer locations to Old Winstar's local "hubs."

12.     On information and belief, Old Winstar maintained an office in New York City. It also maintained some of its books and records in New York City.

13.     Old Winstar was a publicly traded company. On April 18, 2001, Old Winstar petitioned for protection under Chapter 11 of the U.S. Bankruptcy Code. The bankruptcy petition was filed in the U.S. Bankruptcy Court for the District of Delaware.

14.     On information and belief, Blackstone was retained as a financial advisor, and Blackstone's responsibility was to obtain the highest possible sale price for the assets of Old Winstar. Upon information and belief, Blackstone's compensation varied with the sale price that it obtained for Old Winstar's assets. Specifically, Blackstone received, *inter alia,* a transaction fee equal to 1% of the first $200 million of consideration paid by an acquirer. This provided Blackstone with an incentive to maximize – or inflate -- that consideration.

15.     The division of Blackstone performing the financial advisory work for Old Winstar was Blackstone's Restructuring & Reorganization Advisory Group. This group claims

3

to have provided advisory services in over 150 "distressed situations." On information and belief, it is an unincorporated division of Blackstone.

16. At all relevant times, the head of Blackstone's Restructuring & Reorganization Advisory Group was Arthur Newman ("Newman"). Newman also was a member of Blackstone's Executive Committee. The Executive Committee oversees all of Blackstone's policy decisions.

17. Upon information and belief, Old Winstar retained Impala as a restructuring advisor, for the purpose of providing restructuring advice and other related services in connection with Old Winstar's Chapter 11 bankruptcy proceedings. As compensation, Impala charged Old Winstar $250,000 per month for the first two months of its services. Thereafter, Impala's compensation was $100,000 per month for the services of Paul Street, who acted as the Chief Restructuring Officer for Old Winstar. Impala charged various other amounts for other Impala personnel. In addition, upon the sale of all or substantially all of Old Winstar's assets, in one or more transactions, in which the aggregate consideration paid by the purchaser was less than $350 million, Impala earned a transaction fee of 0.25% of such consideration. Upon the sale of all or substantially all of the Old Winstar's assets, in one or more transactions, in which the aggregate consideration paid by the purchaser was equal to or greater than $350 million, Impala earned a transaction fee of 2.0% of such consideration. Thus Impala was motivated to obtain the highest possible sale price for the Winstar assets.

18. Upon information and belief, Citicorp, as Old Winstar's largest creditor, assisted Old Winstar in negotiating its contract terms with Impala. Citicorp acted as Impala's principal.

19. To promote the sale of Old Winstar's business assets, Blackstone prepared an offering statement. Upon information and belief, Impala assisted with the preparation of the

4

offering statement. Blackstone, Citicorp, and Impala also controlled bidder access to Winstar staff, and Winstar records.

20. In connection with the sale of Old Winstar's business assets, Blackstone, Citicorp, and Impala assisted in the development of financial data and presentations to Old Winstar's Board of Directors, various creditors and other parties. Blackstone reviewed financial analyses generated by Old Winstar's finance staff and external advisors. Blackstone also performed various analyses, including cash reconciliation of Old Winstar's actual performance vs. various sets of projections. Blackstone petitioned for payment for this work, and the petition was granted.

21. IDT was one of several entities that expressed an interest in acquiring Old Winstar's business assets.

22. An auction of Old Winstar's business assets was planned for December 2001. Leading up to that auction, Blackstone circulated an "offering book." Blackstone also met with IDT and, on information and belief, other entities interested in bidding in the auction. In meetings organized by Blackstone, several Winstar officials also met with IDT and, on information and belief, other interested entities. The meetings generally were held within this County. Certain Old Winstar business records also were made available to IDT at that time, generally in an area known as the "data room," which was located within this County. Collectively, this communication and review was known as "due diligence."

23. In accordance with the timing established for the auction, IDT's due diligence was conducted between Friday, November 30, 2001, and Wednesday, December 5, 2001.

24. A number of IDT representatives engaged in this due diligence.

25. Blackstone's representatives included Arthur Newman. Newman engaged in substantive discussions about Old Winstar's business with representatives of IDT, Howard Jonas, *inter alia*.

26. Impala's representatives included Paul Street.

27. Old Winstar's representatives included Chief Financial Officer David Duncan, *inter alia*.

28. During this due diligence, Blackstone, Impala, and Old Winstar each made the following material representations (*inter alia*) regarding the status of Old Winstar's business:

    a.    that Old Winstar's business was generating $16 million or more per month in revenue;

    b.    that Old Winstar's "cash burn" (*i.e.*, losses) had been reduced to $10-12 million per month;

    c.    that Old Winstar had 9,000 paying customers;

    d.    that Old Winstar had 50,000 revenue-generating telephone lines;

    e.    that Old Winstar's "churn rate" (the rate at which existing customers discontinued service) was only 3% per year; and

    f.    that Old Winstar was employing an intercity optical network built by Lucent (the "Lucent network") to serve Old Winstar's customers.

29. On occasions when Old Winstar made these representations, they were made in the presence of Blackstone, Citicorp, and Impala; and Blackstone, Citicorp, and Impala did not dispute them, even though they knew or should have known that these representations were false, and that the plaintiffs would rely on these representations.

30. Each of these representations was false and fraudulent. The truth, known to the Defendants but not to IDT, was as follows:

    a.    that Old Winstar's business was generating substantially less than $16 million per month in revenue, and its revenue was declining;

6

b.    that Old Winstar's cash burn was materially higher than $10-$12 million per month;

c.    that Old Winstar had far fewer than 9,000 paying customers, and indeed was providing service to many customers who were not paying Old Winstar;

d.    that Old Winstar had far fewer than 50,000 revenue-generating telephone lines, and in fact was carrying and paying for many lines that were not generating any revenue;

e.    that Old Winstar's "churn rate" was far higher than 3%, in part because Old Winstar continued to maintain and pay for telephone lines, and count them as revenue-generating, long after customers had discontinued service; and

f.    that the Lucent network carried no Old Winstar customer traffic in or around December 2001 and, indeed, most of the Lucent network never would.

31.    Notably, despite this information being solely within their possession, Blackstone, Impala, Citicorp, and Old Winstar did not provide client information in any detail that would have allowed IDT and New Winstar to uncover the Defendants' false statements and material omissions.

32.    Indeed, Blackstone, Citicorp and Impala fraudulently withheld information within their possession, custody or control, including but not limited to the following: (a) that Winstar was required to continue to serve federal and other customers without regard to profit, and (b) that local telephone companies could extort concessions from Old Winstar by threatening to discontinue termination of calls placed by Old Winstar customers.

33.    On information and belief, Blackstone, Citicorp, Impala, and Old Winstar all hid and blocked IDT's access to material information about Old Winstar's finances and operations. Indeed, IDT had no access to this important information.

7

34.     The figures in the documents that were offered to IDT, including receivables reports, historical financial statements and contract summaries, were heavily distorted by (*inter alia*) Old Winstar's recording of revenue – sometimes for years – from customers who had discontinued service.

35.     Unaware of the true state of Old Winstar's affairs, IDT established New Winstar, for the purpose of acquiring Old Winstar's business assets. IDT injected a substantial amount of capital into New Winstar.

36.     The information that Blackstone, Impala, and Old Winstar provided during due diligence regarding Old Winstar's business and operations was material to IDT's decision to acquire Old Winstar's business assets. Upon information and belief, Blackstone, Citicorp, and Old Winstar knew that this information was false, or they were negligent in not knowing that. Blackstone and Old Winstar intended that IDT and New Winstar would rely upon this information. IDT and New Winstar did rely upon this information. This reliance was reasonable. IDT and New Winstar were deceived by this information.

37.     The information that Blackstone, Impala, Citicorp, and Old Winstar omitted to provide during due diligence regarding Old Winstar's business and operations was material to IDT's decision to acquire Old Winstar's business assets. Upon information and belief, Blackstone and Old Winstar knew that this information was material, or they were negligent in not knowing that. Blackstone and Old Winstar intended that IDT and New Winstar would rely upon the absence of this information. IDT and New Winstar did rely upon the absence of this information. This reliance was reasonable. IDT and New Winstar were deceived by the failure to disclose this information.

38.     As a direct and proximate result of the Defendants' misrepresentations and omissions, IDT and New Winstar submitted a bid in the auction for Old Winstar's assets, conducted on December 5, 2001.  Absent the misinformation provided by Blackstone and Old Winstar, Plaintiffs would not have done so.

39.     The apparent successful offeror in the auction was an entity other than IDT/New Winstar.  That entity was related to William J. Rouhana, Jr., the former Chairman of the Board and CEO of Old Winstar.  Despite this, Blackstone encouraged IDT to remain interested in purchasing Old Winstar's assets.

40.     On information and belief, the Rouhana entity was unable or unwilling to close the transaction.

41.     Between December 5, 2001 and December 17, 2001, there was no opportunity for any further due diligence by IDT because the Defendants did not permit it.

42.     On or about December 17, 2001, IDT learned that the Rouhana entity had failed to purchase Old Winstar's assets.  The bankruptcy court required IDT to sign an agreement for these assets (if IDT desired to purchase them) by noon on the following day.

43.     As a result of the Defendants' misrepresentations and omissions, on or about December 18, 2001, Old Winstar and New Winstar entered into an Asset Purchase Agreement (the "Agreement") for the transfer of Old Winstar's business assets, and certain other assets.

44.     On or about December 19, 2001, the bankruptcy court approved the Agreement.

45.     On or about December 20, 2001, the Agreement closed, *i.e.,* payment was made and assets were transferred.  On or around that date, New Winstar took over the operation of Winstar's business.

46.     New Winstar appointed employees to collect on accounts receivable. In many cases, the purported "customers" told those employees that service had been canceled years earlier, yet Old Winstar had continued to bill for the service.

47.     New Winstar learned that Old Winstar had inflated its reported revenue by a variety of means, including "swaps" (pairs of companies each reporting revenue from the other, without any actual payment), "dead" accounts, and "made-up" billing.

48.     As a result of the misrepresentations and material omissions during due diligence, New Winstar's revenues were materially less than represented. Between August 1, 2001 and July 31, 2002, a period that included several months preceding the asset purchase, Winstar's revenue was only $79.6 million, or less than $7 million a month. During the following year (8/02 - 7/03), revenue was only $87.5 million, and the year after that (8/03 - 7/04), revenue was only $71.6 million. In other words, Old Winstar's revenues had been overstated by over 200%.

49.     Much later, Winstar's business was sold to an entity independent of IDT.

50.     As a direct and proximate result of Blackstone's, Citicorp's, and Impala's tortuous misconduct, IDT and New Winstar have suffered losses of over $300 million.

## FIRST CAUSE OF ACTION
### (Fraud)

51.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52.     Blackstone, Citicorp, and Impala knowingly engaged in the various deceitful means enumerated above to deprive IDT and New Winstar of their property permanently.

53.     More specifically, Blackstone, Citicorp, and Impala made numerous false representations of material fact and material omissions, as set forth above and below. The Defendants knew that these representations and material omissions were false, or they made

them with reckless disregard for their truth or falsity. Blackstone, Citicorp, and Impala intended IDT and New Winstar to rely on these false statements and omissions. IDT and New Winstar reasonably relied on them. As a result, IDT and New Winstar were injured.

54.     The Defendants' false statements and material omissions were not mere projections or promises to perform, but actual representations of existing fact known only to the Defendants.

55.     The representations were made by individuals acting as agents of Blackstone, Citicorp, and Impala, who acted within the scope of their employment.

56.     The representations and omissions were made in New York, within this County. They were made during November and December 2001, by means of telephone, faxes, e-mail, in person, and indirectly through other authorized agents and through documents, as explained above.

57.     Blackstone, Citicorp, and Impala knew that these misrepresentations were false and the omissions material, or acted in reckless disregard for their truth or falsity.

58.     Blackstone, Citicorp, and Impala intended that IDT and New Winstar rely upon these misrepresentations and omissions, because they sought fraudulently to induce IDT and New Winstar to enter into the Agreement, and they sought to profit from that agreement. IDT and New Winstar reasonably relied on these misrepresentations and omissions.

59.     Blackstone, Citicorp, and Impala also failed to inform IDT and New Winstar of numerous material facts. For instance, Blackstone, Citicorp, and Impala failed to inform IDT and New Winstar that Old Winstar customers who had terminated service continued to be counted as Old Winstar customers, that Old Winstar continued to book revenue from such customers, and that Old Winstar continued to pay for telephone lines to service such customers.

As alleged above, Blackstone, Citicorp, and Impala also fraudulently withheld the material information that Winstar was required to continue to serve federal and other customers without regard to profit, and that local telephone companies could extort concessions from Winstar by threatening to discontinue termination of calls placed by Winstar customers. These all were material fraudulent omissions that Blackstone, Citicorp, and Impala had a duty to disclose to IDT and New Winstar.

60.    If IDT and New Winstar had known the truth regarding Winstar's finances and operations, they would not have entered into the Agreement. They would have retained the purchase price under that Agreement, and they would have avoided the losses that they necessarily experienced as a direct result of acquiring Old Winstar's business assets. Therefore they have been injured.

61.    For the reasons alleged above, Blackstone, Citicorp, and Impala acted recklessly, willfully and wantonly. Their conduct was gross, and morally reprehensible. Blackstone, Citicorp, and Impala exhibited such wanton dishonesty as to imply a criminal indifference to civil obligations.

61.    For the reasons alleged above, IDT and New Winstar are entitled to the following relief against Blackstone, Citicorp and Impala:

    a.    A monetary award of compensatory damages for fraud;

    b.    A monetary award of punitive damages in the maximum amount permitted by law;

    c.    Interest and costs; and

    d.    Such further relief as the Court deems just.

## SECOND CAUSE OF ACTION
### (Aiding and Abetting Fraud)

62.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 61 as if fully set forth herein.

63.   Based upon the allegations stated above, IDT and New Winstar are victims of fraud.

64.   Blackstone, Citicorp and Impala knowingly aided and abetted in Old Winstar's commission of fraud, and participated in the fraud, in the manners alleged above.

65.   Blackstone, Citicorp, and Impala's conduct was gross, and morally reprehensible. Blackstone, Citicorp and Impala exhibited such wanton dishonesty as to imply a criminal indifference to civil obligations.

66.   IDT and New Winstar suffered significant injury as a direct result of the fraud.

67.   For the reasons alleged above, IDT and New Winstar are entitled the following relief against Blackstone, Citicorp and Impala:

   a.   A monetary award of compensatory damages for aiding and abetting fraud;

   b.   A monetary award of punitive damages in the maximum amount permitted by law;

   c.   Interest and costs; and

   d.   Such further relief as the Court deems just.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

68.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

69.     Blackstone, Citicorp and Impala made the misrepresentations and omissions to IDT and New Winstar enumerated under the claim for fraud above, directly or indirectly.

70.     The individuals who made the direct misrepresentations to IDT and New Winstar acted as agents for Blackstone, Citicorp and Impala.

71.     Blackstone, Citicorp and Impala owed IDT and New Winstar a duty of care to ensure that its statements to IDT and New Winstar were true.

72.     IDT and New Winstar reasonably and justifiably relied on Blackstone and Impala for accurate information.

73.     Blackstone, Citicorp and Impala intended for IDT and New Winstar to rely upon the information that they provided.

74.     The information that Blackstone, Citicorp and Impala provided to IDT and New Winstar was false, in the manner described under the claim for fraud above.

75.     IDT and New Winstar were injured by the false information that Blackstone, Citicorp and Impala provided to them.

76.     Blackstone, Citicorp and Impala's negligent misrepresentations were willful and wanton. They acted with such indifference as to whether IDT and New Winstar would be harmed as to be equivalent to an intent to harm them.

77.     Blackstone, Citicorp and Impala's conduct was gross, and morally reprehensible. Blackstone, Citicorp and Impala exhibited such wanton dishonesty as to imply a criminal indifference to civil obligations.

78.     For the reasons alleged above, IDT and New Winstar are entitled the following relief against Blackstone, Citicorp and Impala:

      a.    A monetary award of compensatory damages for negligent misrepresentation;

14

b. A monetary award of punitive damages on account of Blackstone's willful and wanton negligence, in the maximum amount permitted by law;

c. Interest and costs; and

d. Such further relief as the Court deems just.

## FOURTH CAUSE OF ACTION
### (Negligence)

79. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 78 as if fully set forth herein.

80. Blackstone, Citicorp and Impala are experienced professional organizations in the field of finance.

81. Blackstone claims to be a world leader in private equity; among the largest in private equity real estate investments; a leader in private mezzanine and structured debt vehicles; and a leader in providing "unconflicted" advice and counsel to senior management. Blackstone's Restructuring & Reorganization Advisory Group claims to be a market leader, having advised in over 150 distressed situations, involving $350 billion of outstanding debt.

82. Arthur Newman, the head of Blackstone's Restructuring & Reorganization Advisory Group, has forty years of experience, including thirty years in reorganization. He claims to have served as advisor on some of the largest business restructurings in history.

83. Impala claims to be a world leader in restructuring advice to troubled companies. Impala claims to have been involved in transactions totaling over $7 billion since 1997.

84. As alleged above, Blackstone, Citicorp and Impala directly and indirectly made representations to IDT and New Winstar regarding Old Winstar's finances and operations. On information and belief, Blackstone, Citicorp and Impala did not exercise due care in ascertaining or disseminating this information.

15

85.     Blackstone, Citicorp and Impala owed IDT and New Winstar a duty of care in ascertaining and disseminating this information. It was reasonably foreseeable to Blackstone, Citicorp and Impala that their negligence would injure IDT and New Winstar, because IDT and New Winstar would be induced to enter into the Agreement, and then to incur significant additional losses.

86.     Blackstone, Citicorp and Impala failed to exercise reasonable care in this regard. To the contrary, their lack of care was willful and wanton. They acted with malice, intending to harm IDT and New Winstar, because (on information and belief) the more that IDT and New Winstar paid under the Agreement, the more that Blackstone and Impala could receive as compensation. In the alternative, Blackstone, Citicorp and Impala acted with such indifference as to whether IDT and New Winstar would be harmed as to be equivalent to intent to harm IDT and New Winstar.

87.     In all other respects, the Defendants failed to act with due care to provide accurate information to IDT and New Winstar.

88.     The natural and probable consequence of the Defendants' negligence was that IDT and New Winstar were induced to enter into the Agreement, and to incur additional subsequent losses, which have caused significant injury to IDT and New Winstar.

89.     Blackstone, Citicorp and Impala's conduct was gross, and morally reprehensible. Blackstone, Citicorp and Impala exhibited such wanton dishonesty as to imply a criminal indifference to civil obligations. They were reckless and willful.

90.     For the reasons alleged above, IDT and New Winstar are entitled the following relief against Blackstone, Citicorp and Impala:

    a.     A monetary award of compensatory damages for negligence;

16

b. A monetary award of punitive damages on account of the Defendant's willful and wanton negligence, in the maximum amount permitted by law;

c. Interest and costs; and

d. Such further relief as the Court deems just.

## FIFTH CAUSE OF ACTION
### (Civil Conspiracy)

91. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

92. The Defendants engaged in a combination and conspiracy involving four conspirators:

a. the officers, employees and agents of Blackstone; and

b. the officers, employees and agents of Impala; and

c. the officers, employees and agents of Citicorp; and

d. the officers, employees and agents of Old Winstar.

93. These conspirators combined for the purpose of injuring IDT and New Winstar. Specifically, the conspirators sought to deprive IDT and New Winstar of their property interests in the purchase price of the Agreement, and the funds used to pay for subsequent Winstar losses. The Defendants did so not only in the manners alleged above, but also by means of the following overt acts, *inter alia*:

a. announcing and conducting of the auction;

b. creating the data room, and the invitation to IDT and New Winstar representatives (and, on information and belief, others) to examine its contents;

c. engaging in other communications relating to Old Winstar's finances and operations, as alleged above;

d. the negotiation, preparation and execution of the Agreement; and

        e.        actions taken to obtain bankruptcy court approval of that Agreement.

94.     The Defendants' conspiracy has caused IDT and New Winstar injury, including the special damages of (*inter alia*) payment of the Purchase Price of $42,500,000 set forth in Section 3.1 of the Agreement. The Defendants' conspiracy deprived IDT and New Winstar of this amount. In addition to this, IDT and New Winstar have suffered special damages for losses incurred following the acquisition of Winstar's business assets, which total approximately $300 million.

95.     The conspirators acted recklessly, willfully and wantonly. Their conduct was gross, and morally reprehensible. They exhibited such wanton dishonesty as to imply a criminal indifference to civil obligations.

96.     For the reasons alleged above, IDT and New Winstar are entitled the following relief against Blackstone, Citicorp and Impala:

        a.        A monetary award of compensatory damages for civil conspiracy;

        b.        A monetary award of punitive damages for civil conspiracy, in the maximum amount permitted by law;

        c.        Interest and costs; and

        d.        Such further relief as the Court deems just.

## JURY REQUEST

97.     The Plaintiffs request a jury for all issues that may be tried by a jury.

WHEREFORE, IDT and New Winstar seek the following relief against Blackstone, Citicorp and Impala:

a.  A monetary award of compensatory damages for fraud; aiding and abetting fraud, negligent misrepresentation, negligence, and civil conspiracy;

b.  A monetary award of punitive damages in the maximum amount permitted by law for fraud, aiding and abetting fraud, negligent misrepresentation, negligence, and civil conspiracy;

c.  Interest and costs; and

d.  Such further relief as the Court deems just.

Dated: New York, New York
      May 10, 2007

MOUND COTTON WOLLAN & GREENGRASS

Philip C. Silverberg, Esq.
Gretchen Henninger, Esq.
One Battery Park Plaza
New York, NY 10004-1486
Telephone: (212) 804-4200

and

Melissa Roover, Esq.
GRAYSON & KUBLI, P.C
1420 Spring Hill Road, Suite 230
McLean, VA 22102
(703) 749-0000

Attorneys for Plaintiffs
WINSTAR HOLDINGS, LLC and
IDT CORP.

WINSTAR HOLDINGS, LLC,
and IDT CORP.,

                    Plaintiffs,

      -against-

THE BLACKSTONE GROUP LP;
IMPALA PARTNERS, LLC; and.
CITICORP,

                 Defendants.



FILED  MAY 10 2007  NEW YORK COUNTY CLERK'S OFFICE

---

## SUMMONS and COMPLAINT

---

### MOUND, COTTON, WOLLAN & GREENGRASS
*Attorneys for*

#### Plaintiffs

*Office and Post Office Address, Telephone*
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004
(212) 804-4200

---

**To:**

**Attorney(s) for**

Service of a copy of the within is
hereby admitted.

Dated:_____20_____

_____