UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WINSTAR HOLDINGS, LLC and
IDT CORP.,

              Civ. No.: 07 CV 4634 (GEL)

      Plaintiff,     ECF Case

    -against-

THE BLACKSTONE GROUP LP; IMPALA
PARTNERS, LLC; AND CITICORP

      Defendants.
-----------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO REMAND

COHEN TAUBER SPIEVACK WAGNER LLP
Joseph M. Vann (JMV 7601)
Jed Lewin (JL 2428)
420 Lexington Avenue
New York, New York 10170
(212) 586-5800

and

GRAYSON & KUBLI, P.C.
Alan M. Grayson, of counsel
Melissa Roover (MR 1163)
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
(703) 749-0000


*Attorneys for Plaintiffs Winstar Holdings, LLC and IDT Corp.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 3

    A.    The Old Winstar Bankruptcy Liquidation Proceeding ..................................... 3
    B.    Retention of Blackstone ..................................................................................... 3
    C.    Retention of Impala ........................................................................................... 4
    D.    Citicorp's Role in Liquidation Proceeding ...................................................... 4
    E.    The Old Winstar Due Diligence Team .............................................................. 4
    F.    The Misrepresentations ...................................................................................... 5
    G.    The Liquidation Proceeding Auction Process ................................................... 7
    H.    Plaintiffs' Discovery of the Fraud and Misrepresentations ............................... 8
    I.    Plaintiffs' Losses ............................................................................................... 8
    J    The Lawsuit ....................................................................................................... 8

ARGUMENT ................................................................................................................. 9

    POINT I - IMPALA HAS NOT ESTABLISHED
            "RELATED TO" JURISDICTION ......................................................... 10

    POINT II - MANDATORY ABSTENTION REQUIRES
            THAT THE LAWSUIT BE REMANDED TO
            THE STATE COURT ............................................................................. 12

        1.    The Motion to Abstain Was Made on Time ...................................... 13
        2.    The Lawsuit Involves Only State Law Claims .................................. 14
        3.    The Lawsuit Does Not Arise Under the Bankruptcy Code .............. .14
        4.    Section 1334 Provides the Sole Would-Be Basis for Jurisdiction ..... 15
        5.    The Lawsuit Was Commenced in State Court ................................... 16
        6.    The Lawsuit Can Be Adjudicated in a Timely Manner
               in the Supreme Court of the State of New York ............................... 16

    POINT III - ALTERNATIVELY, THIS COURT SHOULD
            ABSTAIN FROM EXCERCISING JURISDICTION
            OVER THE LAWSUIT, ON "PERMISSIVE" OR
            "EQUITABLE" GROUNDS ........................................................... 17

        1.    The Effect on the Efficient Administration of the Bankruptcy ......... 18
        2.    The Predominance of State Law Issues .............................................. 19
        3.    Difficulty or Unsettled Nature of State Law Issues ........................... 20

{00004185.DOC; 3.4}

4.    Comity .............................................................................. 20
5.    The Relationship of the Lawsuit to the Bankruptcy Proceeding ....... 21
6.    Right to a Jury Trial ........................................................ 21
7.    Prejudice to the Removed Parties ...................................... 22
8.    Duplicative Litigation; Wasted Resources and Inconsistent Results. 22

POINT IV - IMPALA'S "REQUEST" TO TRANSFER
            THE LAWSUIT TO THE DELAWARE
`           BANKRUPTCY COURT MUST BE DENIED
            AS PREMATURE AND IMPROPERLY RAISED......................... 23

CONCLUSION.................................................................................. 24

{00004185.DOC; 3.4}

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amanat v. Wollmuth Maher & Deutsch, LLP*
　338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005) ................................................................ 13, 15, 16

*Bay Ridge Air Rights, Inc. v. State,*
　375 N.E.2d 29 (N.Y. 1978) ........................................................................................ 12

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
　337 B.R. 22 (S.D.N.Y. 2005) ..................................................................................... 13

*Digital Satellite Lenders, LLC v. Ferchill,*
　Case No. 03-8803, 2004 WL 1794502, at *5 (S.D.N.Y. Aug. 10, 2004) ................................ 18

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,*
　130 B.R. 405 (S.D.N.Y. 1991) .............................................................................. 19, 21, 23

*General Elec. Cap. Corp. v. Pro-Fac Coop.*,
　No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002) ................................ 11

*Guccione v. Bell,*
　Case No. 06-492, 2006 WL 2032641, at *5 (S.D.N.Y. July 20, 2006) .............................. 18, 21

*In re Chateaugay Corp.,* 213 B.R. 633, 640 (S.D.N.Y. 1997 ...................................................... 11

*In re Leco Enters., Inc.*,
　144 B.R. 244 (S.D.N.Y. 1992) .................................................................................. 14, 15

*In re Turner,*
　724 F.2d 338 (2d Cir. 1983) ....................................................................................... 10

*In re WorldCom, Inc. Sec. Litig.,*
　293 B.R. 308 (S.D.N.Y. 2003) ................................................................................. 10, 11

*Kerusa Co. v. W10Z/515 Real Estate Ltd.,*
　2004 WL 1048239, at *2 (S.D.N.Y. May 7, 2004) ................................................... passim

*Linardos v. Fortuna,*
　157 F.3d 945  (2d Cir. 1998) ...................................................................................... 10

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005) ...................................... 13, 16

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
　458 U.S. 50 (1982) .................................................................................................... 22

**Statutes**

11 U.S.C. §502(e) ............................................................................................ 12

28 U.S.C. §1334(b) .................................................................................... passim

28 U.S.C. §1447(c), ......................................................................................... 13

28 U.S.C. §1452(b) ......................................................................... 1, 2, 10, 18

28 U.S.C. §157(b)(2) ...................................................................... 15, 21, 23

## INTRODUCTION

Plaintiffs Winstar Holdings, LLC and IDT Corp. (together, "Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion to Remand, dated July 1, 2007, for the entry of an Order, pursuant to 28 U.S.C. § 1334(c)(2), remanding this lawsuit to the Supreme Court of the State of New York, because of the absence of bankruptcy jurisdiction or pursuant to the mandatory abstention doctrine.  In the alternative, this action should be remanded to state court pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b), because of permissive abstention.

## PRELIMINARY STATEMENT

Plaintiffs commenced this action on May 10, 2007, in the Supreme Court of the State of New York, Commercial Division, against The Blackstone Group, L.P. ("Blackstone"),[1] Impala Partners, LLC ("Impala") and Citicorp ("Citicorp") (collectively, the "Defendants").  The action is captioned *Winstar Holdings, LLC and IDT Corp. v. The Blackstone Group LP, Impala Partners, LLC and Citicorp* (Index No. 601582/07) (the "Lawsuit").  The Lawsuit is grounded completely in state law tort claims of fraud and misrepresentation.  Plaintiffs allege that they have suffered losses exceeding $300 million resulting from their December 2001 acquisition of substantially all of the assets of Winstar Communications, Inc. and certain related entities ("Old Winstar").  Plaintiffs seek damages from Defendants for Defendants' acts of fraud and misrepresentation, made within the State of New York, in connection with the Old Winstar acquisition.

By Notice of Removal dated June 1, 2007 (the "Notice of Removal"), Defendant Impala removed this Lawsuit to this Court, purportedly pursuant to 28 U.S.C. §1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure.  The only ground for removal articulated by Impala

---

[1]    Upon information and belief, effective March 12, 2007, defendant "The Blackstone Group, L.P." has been renamed "Blackstone Advisory Services, L.P."

is that this Lawsuit is somehow "related" to Old Winstar's chapter 7 liquidation proceeding,
solely because Impala holds a *potential* right of indemnification against Old Winstar, which is a
*non-party* to this Lawsuit.  That right of indemnification specifically excludes "willful
misconduct," (*see*, Exhibit D to Notice of Removal) which is what Plaintiffs allege here.
Significantly, Impala does not allege any other basis of jurisdiction in this Court.  There is no
diversity jurisdiction and no federal question or bankruptcy law is at issue here.

     Contrary to Impala's assertion, Impala has not established that its potential
indemnification rights against Old Winstar give rise to "related-to" jurisdiction that establishes
jurisdiction in this Court.  Moreover, the mandatory abstention provision of 28 U.S.C.
§1334(c)(2) unequivocally mandates that "related" proceedings based upon state law causes of
action -- such as this Lawsuit -- be heard in a state court, and not a federal court, if a lawsuit has
been commenced in the state court and can be adjudicated in a timely manner in that forum.
Accordingly, this Court must abstain from exercising jurisdiction over this Lawsuit and remand
it to the Supreme Court of the State of New York.

     In the alternative, this Court should abstain on "permissive" or "discretionary" grounds
under 28 U.S.C. §§ 1334(c)(1) and 1452(b), because, *inter alia*, state law claims predominate in
this Lawsuit, this Lawsuit is not sufficiently "related to" the Liquidation Proceeding, and
Plaintiffs seek a jury trial to decide its state law claims.  For these reasons, this Court should
abstain from exercising jurisdiction over this Lawsuit and remand it back to the Supreme Court
of the State of New York, where it rightfully belongs.[2]

---

[2]   Nor, a fortiori, is there any basis for transfer of this Lawsuit to the United States Bankruptcy Court for the District of Delaware, as Impala appears to request in Paragraph 13 of its Notice of Removal (without citing any statutory basis for doing so).  In any event, in requesting that the Lawsuit be transferred, Impala places the proverbial cart before the horse, in that this Court must first determine whether it has (or will exercise) jurisdiction. Absent jurisdiction, the Court lacks the ability to transfer this Lawsuit anywhere (other than remanding it back to the Supreme Court of the State of New York from, where it originated).

{00004185.DOC; 3.4}

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In December 2001, Plaintiffs paid $42.5 million at a bankruptcy court-sanctioned auction, to acquire substantially all of the assets of Old Winstar.  In doing so, Plaintiffs relied on what turned out to be misrepresentations by the Defendants.  As a direct result of this reliance, Plaintiffs subsequently suffered losses in excess of $300 million. (Ex. 1 ¶ 1).

A.     <u>The Old Winstar Bankruptcy Liquidation Proceeding</u>.

Old Winstar was a publicly traded company providing telephone service to customers, using a "fixed wireless" system.  On April 18, 2001, it commenced a bankruptcy proceeding by filing a voluntary petition seeking protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq*. (the "Bankruptcy Code").  That petition evolved into a Chapter 7 liquidation proceeding under Case No. 01-1430 (the "Liquidation Proceeding").[4]  This proceeding remains pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B.     <u>Retention of Blackstone</u>.

In the Liquidation Proceeding, Old Winstar retained Blackstone as a financial advisor, to obtain the highest possible sale price for the assets of Old Winstar.  Blackstone's compensation depended upon the sale price that it obtained for Old Winstar's assets.  Specifically, Blackstone received, *inter alia*, a transaction fee equal to 1% of the first $200 million of consideration paid

---

[3]     The facts are drawn from the Complaint (Ex. 1), and other documents referenced in the Complaint, and are presented in full detail there.  For the Court's convenience, these documents are attached to the Declaration of Joseph Vann, Esq., dated July 1, 2007 (the "Vann Decl."), which is submitted herewith in support of Plaintiff's Motion to Remand.  All exhibits referred to in this Memorandum of Law are appended to the Vann Decl. and will be referenced simply as "Ex. __").

[4]     The Old Winstar bankruptcy proceeding started as a reorganization proceeding, but by Order of the Bankruptcy Court, entered on or about January 24, 2002, it was converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.  A true and correct copy the relevant excerpts from the docket of the Liquidation Proceeding is attached to the Vann Decl. as Ex. 2.

{00004185.DOC; 3.4}

by an acquirer.  This fee arrangement provided Blackstone with an incentive to maximize – or inflate – that consideration.  (Ex. 1 ¶ 14).

      C.      <u>Retention of Impala</u>.

Old Winstar also retained Impala as a restructuring advisor, to provide restructuring advice and other related services in connection with the Liquidation Proceeding.  In addition to its fixed compensation, upon the sale of substantially all of Old Winstar's assets in which the aggregate paid by the purchaser was less than $350 million, Impala earned a transaction fee of 0.25% of such consideration.  (If the sale of substantially all of Old Winstar's assets exceeded $350 million in the aggregate, Impala's transaction fee rose to 2.0% of such consideration.)  This fee arrangement similarly provided Impala with an incentive to maximize – or inflate – that consideration.  (Ex. 1 ¶ 17).

      D.      <u>Citicorp's Role in Liquidation Proceeding</u>.

Citicorp, as Old Winstar's largest creditor, assisted Old Winstar in negotiating its contract terms with Impala.  Citicorp acted as Impala's principal, and Impala as Citicorp's agent.  (Ex. 1 ¶ 18).

      E.      <u>The Old Winstar Due Diligence Team</u>.

To promote the sale of Old Winstar's business assets, Blackstone prepared an offering statement.  Impala assisted in its preparation.  Blackstone, Citicorp and Impala controlled bidder access to Old Winstar staff and to Old Winstar records.  (Ex. 1 ¶ 1).

In connection with the sale of Old Winstar's business assets, Blackstone, Citicorp and Impala assisted in the development of financial data and presentations to Old Winstar's Board of Directors, various creditors and other parties.  Blackstone reviewed financial analyses generated

by Old Winstar's finance staff and external advisors.  Blackstone also performed various

financial analyses itself.  (Ex. 1 ¶ 20).

     An auction of Old Winstar's assets was planned for December 2001.  Leading up to that

auction, Blackstone circulated an "offering book."  Blackstone met with IDT as one of the

potential bidders.  In meetings in New York, organized by Blackstone, IDT also met with several

Old Winstar officials.  Certain Old Winstar business records were also made available to IDT at

that time in New York, in an office generally known as the "data room."  The data room was

located in New York.  Collectively, this communication and review was known as "due

diligence."  (Ex. 1 ¶ 22).

     In accordance with the timing established for the auction, IDT's due diligence was

conducted between Friday, November 30, 2001, and Wednesday, December 5, 2001.  Several

IDT representatives engaged in the due diligence and met with representatives from Blackstone,

Impala and Old Winstar.  (Ex. 1 ¶¶ 24-27).

     F.    The Misrepresentations.

     During this due diligence, Blackstone, Impala and Old Winstar each made the following

material misrepresentations (*inter alia*) regarding the status of Old Winstar's business:

    a.    that Old Winstar's business was generating $16 million or more per month in revenue;

    b.    that Old Winstar's "cash burn" (*i.e.*, losses) had been reduced to $10-$12 million per month;

    c.    that Old Winstar had 9,000 paying customers;

    d.    that Old Winstar had 50,000 revenue-generating telephone lines;

    e.    that Old Winstar's "churn rate" (the rate at which existing customers discontinued service) was only 3% per year; and

    f.    that Old Winstar was employing an intercity optical network built by Lucent (the "Lucent network") to serve Old Winstar's customers.  (Ex. 1 ¶ 28).

     On occasions where Old Winstar made these material misrepresentations, they were

made in the presence of Blackstone, Citicorp and Impala.  Blackstone, Citicorp and Impala did

not dispute them, even though they knew or should have known that these misrepresentations were false, and that the Plaintiffs would rely on these misrepresentations.  (Ex. 1 ¶ 29).

Each of the above misrepresentations (*inter alia*) was false and fraudulent.  The truth, known to the Defendants but not to IDT, was as follows:

a.     that Old Winstar's business was generating substantially less than $16 million per month in revenue, and its revenue was declining;

b.     that Old Winstar's "cash burn" (*i.e.*, losses) was materially higher than $10-$12 million per month;

c.     that Old Winstar had far fewer than 9,000 paying customers, and indeed was providing service to many customers who were not paying Old Winstar;

d.     that Old Winstar had far fewer than 50,000 revenue-generating telephone lines, and in fact was carrying and paying for many lines that were not generating revenue;

e.     that Old Winstar's "churn rate" was far higher than 3% per year, in part because Old Winstar continued to maintain and pay for telephone lines, and count them as revenue-generating, long after customers had discontinued service; and

f.     that the Lucent network carried no Old Winstar customer traffic in or around December 2001 and, indeed, most of the Lucent network never would.  (Ex. 1 ¶ 31).

Notably, despite this information being solely in their possession, Defendants failed to provide information in any detail that would have allowed Plaintiffs to uncover the Defendants' false statements and material omissions.  (Ex. 1 ¶ 31).

Indeed, Defendants fraudulently withheld information within their possession, custody or control, including but not limited to the following:  (a) that Old Winstar was required to continue to serve federal and other customers without regard to profit; and (b) that local telephone companies could extort concessions from Old Winstar by threatening to discontinue the termination of calls placed by Old Winstar customers.  (Ex. 1 ¶ 32).  Defendants all hid and blocked Plaintiffs' access to material information about Old Winstar's finances and operations. (Ex. 1 ¶ 33).

The information that Defendants provided during due diligence regarding Old Winstar's business and operations was material to Plaintiffs' decision to acquire substantially all of Old Winstar's business assets.  Defendants knew this information was false, or they were negligent in not knowing it was false.  Defendants provided this information intending that Plaintiffs would rely upon it, which Plaintiffs did.  (Ex. 1 ¶ 36).

The information that Defendants omitted to provide during due diligence regarding Old Winstar's business and operations also was material to Plaintiffs' decision to acquire substantially all of Old Winstar's business assets.   Defendants knew this information was material, or they were negligent in not knowing it was material.  Defendants intended that Plaintiffs would rely upon the absence of this information, which Plaintiffs did.  (Ex. 1 ¶ 37).

       G.      <u>The Liquidation Proceeding Auction Process</u>.

Unaware of the true state of Old Winstar's affairs, and based upon the false information provided and the material information omitted, IDT established "New Winstar" for the purpose of acquiring substantially all of Old Winstar's business assets.  (Ex. 1 ¶ 35).

As a direct and proximate result of the Defendants' misrepresentations and omissions, Plaintiffs submitted a bid in the auction for Old Winstar's assets, conducted on December 5, 2001.  Absent the misinformation provided by Defendants, Plaintiffs would not have done so. (Ex. 1 ¶ 38).

As a direct and proximate result of the Defendants' misrepresentations and omissions, on or about December 18, 2001, Plaintiffs entered into an Asset Purchase Agreement (the "APA") for the acquisition of Old Winstar's business assets, and certain other assets.  (Ex. 1 ¶ 43).

On or about December 19, 2001, the Bankruptcy Court approved the APA.  Following the Court's approval, on or about December 20, 2001, the APA closed (*i.e.,* payment was made

and the assets were transferred).  On or around that date, New Winstar took over the operation of Old Winstar's business.  (Ex. 1 ¶¶ 44-45).

       H.     <u>Plaintiffs' Discovery of the Fraud and Misrepresentations</u>.

After its acquisition of the assets of Old Winstar,  New Winstar learned that Old Winstar had inflated its reported revenue by a variety of means, including "swaps" (pairs of companies each reporting revenue from each other without any actual payment being made), "dead" accounts, and made-up billing.  (Ex. 1 ¶ 47).

In fact, New Winstar's revenues were materially less than represented.  Between August 1, 2001 and July 31, 2002, a period that included several months preceding the asset purchase, Winstar's revenue was only $79.6 million, or less than $7 million per month.  During the following year (8/02–7/03), revenue was only $87.5 million, and the year after that (8/03–7/04), revenue was only $71.6 million.  In other words, Old Winstar's revenues had been overstated by over 200%.  (Ex. 1 ¶ 48).

       I.     <u>Plaintiffs' Losses</u>.

As the direct and proximate cause of Blackstone's, Citicorp's and Impala's tortious conduct, Plaintiffs have suffered losses of over $300 million.  (Ex. 1 ¶ 50).

       J.     <u>The Lawsuit</u>.

On May 10, 2007, Plaintiffs filed this Lawsuit in the Supreme Court for the State of New York, County of New York, alleging exclusively State law causes of action against the Defendants for their misrepresentations and material omissions.  Old Winstar is not a party to the action.  The Defendants are all located in New York, the misrepresentations and material omissions occurred in New York, the witnesses are located in New York, the discoverable

evidence is located in New York, and this action is and was properly commenced in the venue of the Supreme Court of the State of New York (New York County).

## ARGUMENT

This Lawsuit is strictly a state law matter, involving solely state law causes of action.  It should therefore be remanded to the Supreme Court for the State of New York.  As its only basis for alleged jurisdiction in this Court, Impala asserts that it holds potential indemnification claims against Old Winstar, which it argues gives rise to "related to" jurisdiction *vis-à-vis* the Liquidation Proceeding.  However, the cited indemnification clause excludes indemnification for "willful misconduct."  *See,* Exhibit D to Notice of Removal.  Moreover, this case neither involves Old Winstar as a party, nor involves any bankruptcy issues or bankruptcy claims.  This case turns on Defendants' wrongful conduct in New York, giving rise to New York State law causes of action against Impala and the other Defendants.  Impala's attempt to remove this Lawsuit to this Court on the basis of some tenuous purported connection to the Liquidation Proceeding is a thinly disguised (and desperate) attempt by Impala to deflect to Old Winstar blame for Impala's own wrongdoing.  The possibility of an Impala indemnification claim against Old Winstar (that has not even been asserted against Old Winstar in its Liquidation Proceeding) does not convert this otherwise purely state law proceeding to a case "related to" the Liquidation Proceeding.

Even if an indemnification claim (actual or, as here, potential) were to give rise to "related to" jurisdiction sufficient to confer jurisdiction over the Lawsuit in this Court, the mandatory abstention provision of 28 U.S.C. 1334(c)(2) requires that this Lawsuit be remanded to the Supreme Court of the State of New York, because the Lawsuit was commenced in the Supreme Court of the State of New York, and it can be adjudicated in a timely manner there.

{00004185.DOC; 3.4}

Alternatively, there are ample grounds for this Court to abstain on permissive or equitable

grounds pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b) because, *inter alia*, the Lawsuit

involves solely state law issues, and Plaintiffs have demanded a jury trial.

Accordingly, whether for lack of "relatedness" to the Liquidation Proceeding, or based on

the doctrines of "mandatory abstention," "permissive abstention," or equitable grounds, this

Court either has no jurisdiction of this Lawsuit, or should not entertain jurisdiction of this

Lawsuit.  For these reasons, Plaintiffs respectfully request that this Court enter an order

remanding this Lawsuit back to the Supreme Court of the State of New York.

## POINT I

### IMPALA HAS NOT ESTABLISHED "RELATED TO" JURISDICTION

"A party seeking to remove an action from state to federal court bears the burden of

proving federal jurisdiction."  *In re WorldCom, Inc. Sec. Litig.,* 293 B.R. 308, 317 (S.D.N.Y.

2003) *citing Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("'It is also hornbook law

that the party invoking federal jurisdiction bears the burden of proving facts to establish that

jurisdiction.'").

28 U.S.C. §1334(b) provides that:  "the district courts shall have original but not

exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to

cases under title ll."  28 U.S.C. §1334(b).  In its Notice of Removal, Impala has failed to carry its

burden to establish that the Lawsuit is "related to" the Liquidation Proceeding.

In this Circuit, the test to determine whether an action is "related to" a bankruptcy is

whether there is a "significant connection" between the two.  *In re Turner*, 724 F.2d 338, 341 (2d

Cir. 1983).  This is true if "the outcome could alter the debtor's rights, liabilities, options, or

freedom of action" or impacts upon the "handling and administration of the bankrupt estate." [5]
*WorldCom, Inc.*, 293 B.R. at 317.  "Related to" jurisdiction "extends more broadly when it concerns a reorganization under Chapter 11 [as in *WorldCom*] as opposed to a liquidation under Chapter 7," as here.  *Id.*

Here, Impala has failed to establish that this Lawsuit will have such an effect on the Liquidation Proceeding.  Impala's indemnification clause excludes indemnification for "willful misconduct," which is precisely what the Lawsuit alleges.  Moreover, at best, if Impala:  (a) unsuccessfully defends against the Lawsuit, (b) brings an indemnification action against Old Winstar, and (c) wins such an action, then it would merely be a creditor to a bankrupt estate. Impala, however, has failed to establish that creditors will receive *anything* in the Liquidation Proceeding.  If not, then the Lawsuit cannot have any effect on the bankrupt estate.  In stark contrast to the facts of this case are the facts of *In re WorldCom, Inc. Sec. Litig.,* where the Court found that the contribution claim there could conceivably affect the bankruptcy estate because the unsecured creditors were to receive 36 cents on the dollar.[6]  *WorldCom, Inc.,* 293 B.R. at 324.  Simply put, where there is no money left in the bankrupt estate, there can be no "conceivable effect" on the estate.  *Id.*

In *In re Chateaugay Corp.,* 213 B.R. 633, 640 (S.D.N.Y. 1997), this Court held that it lacked jurisdiction over state court actions where there was no "articulated" basis for such a

---

[5]    Notably, in *General Elec. Cap. Corp. v. Pro-Fac Coop.*, No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002), this Court recognized that even though contribution and indemnification claims *could* conceivably "affect" the estate, these claims were an "insufficient basis for jurisdiction."  Even if it could exercise "related to" jurisdiction, that Court determined that remand would still be appropriate "in light of the non-exclusive nature of federal court jurisdiction . . . as well as on equitable grounds, including respect for Plaintiff's choice of forum, [and] the ability of the chosen forum to conduct a jury trial."  *Id.* at *3.

[6]    "[G]eneral unsecured creditors of WorldCom are slated to receive approximately 36 cents per dollar in cash and newly issued MCI stock."  H. Jason Gould, *WorldCom Granted Extension to Emerge from Bankruptcy,* BANKRUPTCY PROTECTOR, Feb. 25, 2004.

{00004185.DOC; 3.4}

-11-

claim.  Here, Impala has not "articulated" any basis for its claim that its potential indemnification claim actually could overcome the "willful misconduct" exclusion much less lead to its recovery of estate funds.[7]

Impala has not met its burden to demonstrate "related to" jurisdiction. [8]  Assuming *arguendo,* that it had, mandatory abstention would necessitate, and permissive abstention militates strongly in favor of, remand of the Lawsuit to State Court, as explained below.

### POINT II

### MANDATORY ABSTENTION REQUIRES THAT
### THE LAWSUIT BE REMANDED TO THE STATE COURT

The "mandatory abstention" statute, 28 U.S.C. §1334(c)(2), provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if an action *is commenced* and *can be timely adjudicated* in a State forum of appropriate jurisdiction.

28 U.S.C. §1334(c)(2) (emphasis added).

---

[7]    Neither Blackstone nor Citicorp have alleged similar indemnification claims that might give rise to a "related to" connection to the Liquidation Proceeding.

[8]    Impala also has not met its burden of proving an impact upon the Liquidation Proceeding sufficient to create "related to" jurisdiction for three other independent reasons.  First, if a claim for indemnification exists at all – which it does not because the type of claims alleged in the Lawsuit are expressly *excluded* from Impala's indemnification agreement with Old Winstar – such claim is unripe and premature, as it is settled law in New York that an action for indemnity or contribution does not generally accrue until the payment is made by the party seeking recovery.  *Bay Ridge Air Rights, Inc. v. State*, 375 N.E.2d 29 (N.Y. 1978).  Second, Section 502(e) of the Bankruptcy Code provides for disallowance of a claim for indemnity, if at the time such claim is considered for allowance or disallowance, it is still contingent and unliquidated. *See*, 11 U.S.C. §502(e) ("the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that … (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution …").  Here, Impala's claim for indemnification is thus far contingent and unliquidated.  Finally, third, it is more than likely that any claim of Impala for indemnification against Old Winstar is barred from consideration in the Liquidation Proceeding for failure of Impala to file any claim in the Liquidation Proceeding seeking indemnification against Old Winstar.

It is well-settled in this Circuit that mandatory abstention applies to actions removed from state courts. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005); *Amanat v. Wollmuth Maher & Deutsch, LLP*, 338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005) Federal courts considering mandatory abstention pursuant to 28 U.S.C. 1334(c)(2) have consistently held, in accordance with the plain language of the statute, that they must abstain from exercising jurisdiction over an action removed from a state court whenever the following six factors are present: (1) the motion to abstain is made on time; (2) the action is based on state law claims; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section §1334(b) would provide the sole basis for federal jurisdiction; (5) an action was commenced in state court; and (6) that action can be adjudicated in a timely manner in state court. *Amanat*), 338 B.R. at 581 (and cases cited therein); *see also Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 27 (S.D.N.Y. 2005). As demonstrated below, this Lawsuit satisfies all six factors. Indeed, the Notice of Removal does not allege otherwise. This requires the Court to abstain from exercising jurisdiction over the Lawsuit.

    1.    <u>The Motion to Abstain Was Made on Time.</u>

Impala filed the Notice of Removal on or about June 1, 2007. It was entered on this Court's ECF Docket on June 4, 2007. Pursuant to 28 U.S.C. §1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Plaintiffs have filed herewith their Motion to Remand. Accordingly, the Motion to Remand is timely.

2.    The Lawsuit Involves Only State Law Claims.

The causes of action asserted in the Complaint -- fraud, aiding and abetting fraud, negligent misrepresentation, negligence and civil conspiracy -- are all State law causes of action, which satisfy the second factor.  (Ex. 1 ¶¶ 51-96).

3.    The Lawsuit Does Not Arise Under the Bankruptcy Code.

Under 28 U.S.C. §1334(a), federal courts have exclusive jurisdiction of cases "under" the Bankruptcy Code ("core" cases).  Under *id.* §1334(b), federal courts have nonexclusive jurisdiction, subject to both mandatory and permissive abstention, of cases "related to cases under" the Bankruptcy Code ("non-core" cases).[9]  A proceeding falls within the bankruptcy court's "core" jurisdiction only if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise *only* in the context of a bankruptcy case."  *In re Leco Enters., Inc.*, 144 B.R. 244, 249 (S.D.N.Y. 1992) (emphasis added).  A proceeding is "non-core" if it "exists independently under state law and is merely 'related to' the bankruptcy case because of a conceivable effect upon the debtor's estate."  *Kerusa Co. v. W10Z/515 Real Estate Ltd.*, 2004 WL 1048239, at *2 (S.D.N.Y. May 7, 2004) (Lynch, J.).  "'Related to' jurisdiction is presumptively non-core." *Amanat,* 338 B.R. at 581.

As noted above, the sole basis for Impala's claim that this Lawsuit is "under" (*i.e.*, core) the Bankruptcy Code or "related to" (*i.e.*, non-core) a case under the Bankruptcy Code is that Old Winstar allegedly must indemnify Impala against claims from third parties, and therefore (supposedly) "the resolution of Plaintiffs' claims will directly affect whether there are additional monies available for distribution to [Old Winstar's] creditors."[10]  Notice of Removal ¶ 16.

---

[9]    Notably, Impala fails to indicate whether or not it consents to entry of final orders or judgments by the bankruptcy judge.  This is an express requirement under Rule 9027 with respect to non-core matters.

[10]    Impala also argues that the Plaintiffs "irrevocably submitted to the jurisdiction of the Bankruptcy Court" in the APA, and therefore, the Bankruptcy Court in Delaware somehow retains jurisdiction over the Lawsuit.  Notice of

{00004185.DOC; 3.4}

Paragraphs 13 and 14 of the Notice of Removal contend that the Bankruptcy Court has core jurisdiction, by positing that the State law causes of action in the Lawsuit somehow strike "at the 'heart' of the administration of the bankruptcy estate."  Notice of Removal ¶¶ 13, 14. This argument is specious.  The Lawsuit does not seek one dollar from Old Winstar.  Impala cites no statutory or case law authority for the purported "core" nature of the claims in the Lawsuit, nor could it - because Plaintiffs' claims of fraud and misrepresentation under New York law simply are not listed in 28 U.S.C. §157(b)(2) (defining core proceedings).  Nor do the claims alleged in the Complaint "invoke[] a substantive right provided by title 11 or … by its nature, could arise only in the context of a bankruptcy case."  *In re Leco Enters., Inc.*, 144 B.R. at 249. "[T]here is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction." *Amanat,* 338 B.R. at 581.

Therefore, the Lawsuit does not "aris[e] in" a bankruptcy case or "aris[e] under" the Bankruptcy Code, and the third factor of 28 U.S.C. §1334(c)(2) has been satisfied.

    4.    Section 1334 Provides the Sole Would-Be Basis for Jurisdiction.

The sole basis asserted by Impala for federal jurisdiction over the removed lawsuit is 28 U.S.C. § 1334.  There is no diversity among the parties; no federal question has been raised and no bankruptcy code provision is at issue.  The Court's sole basis for jurisdiction over this Lawsuit therefore arises, if at all, under "related to" jurisdiction under 28 U.S.C. § 1334 (as Impala acknowledges in its Notice of Removal).  Therefore, the fourth factor is satisfied.

    5.    The Lawsuit Was Commenced in State Court.

---

Removal ¶¶ 9-11.  The APA governs relations between "[t]he parties hereto," *id.*, and the Lawsuit is not an action between those parties.  Impala has not established that it qualifies as a beneficiary of the APA.  Plaintiffs are not looking to enforce the APA.  In this Lawsuit, indeed, Plaintiffs allege tort claims of fraud and misrepresentation by Defendants for inducing Plaintiffs to enter into the APA at all.  It is doubtful that even Old Winstar, much less Impala, could enforce the APA against the Plaintiffs to defeat a claim that the APA was fraudulently induced.
{00004185.DOC; 3.4}

The Notice of Removal attaches the Complaint filed in the Supreme Court of the State of New York.  Thus, the fifth factor has been satisfied.  "[T]here is no longer an issue in the Second Circuit that a lawsuit was "commenced" and can be adjudicated in State Court under 28 U.S.C.§1334(c)(2) even if the lawsuit was removed to federal court, provided that the suit can be remanded." *Amanat,* 338 B.R. at 574, *citing Mt. McKinley Ins. v. Corning Inc.,* 399 F.3d 436, 446-47 (2d Cir. 2005).

6.    The Lawsuit Can Be Adjudicated in a Timely Manner
in the Supreme Court of the State of New York.

The sixth and final factor of mandatory abstention requires that the Lawsuit can be adjudicated on a timely basis in state court.  The state courts of New York are ideally suited to adjudicate New York state causes of action, arising out of acts and omissions occurring in New York, involving parties located in New York, and with discoverable evidence located in New York.  Furthermore, this action had been assigned to the Supreme Court's Commercial Division, a specialized docket in New York State's Court system with a faster docket than other state courts.  *Amanat,* 338 B.R. at 582 (recognizing that cases assigned to the Commercial Division of the Supreme Court "move on a fast-track basis").

Moreover, the court to which Impala seeks to transfer this case has hardly set a speed record in the Liquidation Proceeding.  It has been pending for more than six years, with no end in sight.  Impala is hard-pressed to explain how the Commercial Division of the Supreme Court of the State of New York cannot adjudicate the Lawsuit at least within a similar time frame, if not much sooner.

Because all six factors for mandatory abstention under 28 U.S.C. 1334(c)(2) are therefore satisfied, this Court ***must*** abstain, and remand the Lawsuit to the Supreme Court for the State of New York, where it rightfully belongs.

{00004185.DOC; 3.4}

-16-

**POINT III**

**ALTERNATIVELY, THIS COURT SHOULD
ABSTAIN FROM EXCERCISING JURISDICTION OVER
THE LAWSUIT, ON "PERMISSIVE" OR "EQUITABLE" GROUNDS**

Assuming, *arguendo*, that mandatory abstention were somehow inapplicable to the Lawsuit (although it is), there is a separate and independent basis for this Court to abstain from exercising jurisdiction over the Lawsuit – the interest of justice and comity.  28 U.S.C. §1334(b)(1) (permissive abstention).

Congress codified this discretion in 28 U.S.C. §1334(c)(1), which provides:  "Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  The Court's power to abstain or remand on a "permissive" or "discretionary" basis is therefore very broad.

"Congress has recognized that the bankruptcy jurisdiction, particularly in its 'related to' aspect, is potentially so broad that federal courts require equally broad discretion to remand cases to the state courts where fairness and judicial efficiency will be better served by litigating the matters in state court than by sucking into the federal courts large and complex actions lacking any specifically federal component merely because they tangentially effect a bankrupt estate."  *Kerusa Co.,* 2004 WL 1048239, at *3.

Courts in this district have abstained on a permissive basis pursuant to 28 U.S.C. §1334(c)(1) upon considering eight relevant factors.  The factors are:  "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy

{00004185.DOC; 3.4}

case; (6) the existence of a right to trial by jury; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources and the lessened possibility of inconsistent results." *Kerusa Co.,* 2004 WL 1048239 at \*3.

As this Court itself has noted, "the list of factors analyzed above is non-exclusive and was developed simply as a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of 'equity,' 'justice' and 'comity' involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances." *Kerusa Co.,* 2004 WL 1048239, at \*7 (holding that an overall assessment of what was at stake in the non-bankruptcy related state law claims "pointed towards remand even more decisively than the already lopsided calculation of conventionally-listed factors").

Courts exercising "equitable" authority to remand removed actions to state courts are guided by the same factors. Regarding removed lawsuits that give rise to "related to" jurisdiction, 28 U.S.C. §1452(b) provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Courts in this Circuit treat the analysis for discretionary abstention under 28 U.S.C. §1334(c)(1) and equitable remand under 28 U.S.C. §1452(b) as essentially identical. *Kerusa Co.,* 2004 WL 1048239, at \*3; *see also Digital Satellite Lenders, LLC v. Ferchill*, Case No. 03-8803, 2004 WL 1794502, at \*5 (S.D.N.Y. Aug. 10, 2004); *Guccione v. Bell*, Case No. 06-492, 2006 WL 2032641, at \*5 (S.D.N.Y. July 20, 2006).

These guiding factors militate strongly in favor of abstention and remand here.

1.    <u>The Effect on the Efficient Administration of the Bankruptcy</u>

"The principal federal interest in any invocation of bankruptcy jurisdiction is in the efficient administration of the underlying bankruptcy estate." *Kerusa Co.,* 2004 WL 1048239, at

*4. Impala has not established that this Lawsuit will have any effect on the liquidation of the Old Winstar estate in the Liquidation Proceeding. First, Old Winstar itself is not a party to this Lawsuit. Second, Old Winstar is no longer an entity going through a complicated reorganization any more. Having sold substantially all of its assets to Plaintiffs in 2001, it is a "lame duck" in liquidation. Old Winstar is merely awaiting the outcome of an adversary proceeding in bankruptcy. That outcome will determine the distributions, if any, from its Liquidation Proceeding.[11] In short, though the bankrupt estate of Old Winstar still exists, there is no discernible impact that this Lawsuit can have upon that Liquidation Proceeding. As this Court determined in *Kerusa Co.*, the administration of an estate not in reorganization, but in liquidation, with substantially all of the assets to be sold, and with no requirement to oversee the complexities of a company in reorganization, does not favor retention of federal jurisdiction. *Id.* at *4-5.[12]

    2.    <u>The Predominance of State Law Issues</u>

The Lawsuit does not implicate any federal question or question of bankruptcy law, or any other matters in which the federal court has interest or expertise. *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991) (holding that while the action was sufficiently related to bankruptcy action for jurisdictional purposes, the predominance of state law claims warranted remand). Accordingly, the fact that the Lawsuit involves solely issues of state law weighs heavily in favor of abstention and remand. *Kerusa Co.,* 2004 WL 1048239, at *5 (holding that questions solely of state law are a factor weighing in favor of remand).

---

[11]   On or about December 28, 2005, in Adversary Proceeding No. 01-01063 commenced in the Delaware Bankruptcy Court, Old Winstar obtained a judgment against Lucent Technologies, Inc. ("Lucent") in an amount exceeding $278 million. The District Court affirmed on April 26, 2007 and Lucent has appealed to the Third Circuit.
[12]   Notably, nothing prevents Impala from asserting a claim in those proceedings, even if this Court returns this action to the state court.

{00004185.DOC; 3.4}

3.     Difficulty or Unsettled Nature of State Law Issues

Whether there are unsettled or complex issues regarding the fraud and misrepresentation claims that are the center of the Lawsuit cannot be known until the Lawsuit progresses. But, as with the second factor above, these are matters best left for development in State court to the extent they exist at all.

4.     Comity

This factor weighs heavily in favor of remand, as States retain a vested interest in seeing that their laws are enforced as intended. The claims against the Defendants -- fraud, aiding and abetting fraud, negligent misrepresentation, negligence and civil conspiracy – are solely New York law causes of action sounding in tort, and concern fraudulent misrepresentations and material omissions committed in New York, by some of New York's most powerful and influential financial institutions. New York state courts have a compelling interest in adjudicating these claims in their court system, to ensure that the laws of New York are given their full weight and effect. In fact, this Court has noted that the prospect of removing a New York state court action concerning New York tort claims to this Court, and then transferring the case to the Bankruptcy Court for the District of North Carolina for adjudication of the state law claims there, "verges on the bizarre." *Id.* at *6. Clearly, in the interest of comity, this action should be remanded for the speedy adjudication of New York causes of action, in New York's Commercial Division.

5.    The Relationship of the Lawsuit to the Bankruptcy Proceeding

As previously noted, there is virtually no connection between this Lawsuit and the

Liquidation Proceeding.  The Plaintiffs have not filed any claims arising from or in connection

with the Liquidation Proceeding.  Nor to Plaintiffs' knowledge, despite Impala's contentions

regarding potential indemnification rights, have any of the Defendants filed any claims against

Old Winstar or its estate in the Liquidation Proceeding seeking such indemnification.  When the

thrust of the matters in dispute in a removed lawsuit have nothing at all to do with bankruptcy

laws or a bankruptcy case, this fifth factor points strongly toward remand.  *Kerusa Co.,* 2004

WL 1048239, at *6; *Guccione*, 2006 WL 2032641, at *6 (holding same).

6.    Right to a Jury Trial

This factor also militates strongly in favor of abstention and remand.  "Because a

bankruptcy court cannot conduct a jury trial absent special designation and the consent of all

parties, 28 U.S.C. § 157(e), the presence of a Seventh Amendment jury trial right in a removed

action weighs heavily in favor of remand."  *Kerusa Co.,* 2004 WL 1048239 at *6; *see also*

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 409 (S.D.N.Y. 1991)

(holding that demands for jury trials in non-core proceedings are considered "sufficient

ground[s] for an equitable remand").   In this action, Plaintiffs have demanded a jury trial, as is

their constitutional right.  Defendants -- powerful and influential New York financial institutions

-- seek to avoid having their tortious acts and material admissions aired before a local jury, by

utilizing the forum shopping maneuver of removal.  Not content merely with removal of the

action to this Court, Defendants seek to avoid appearing before a jury altogether by requesting a

transfer of the action to the Bankruptcy Court of the District of Delaware.[13]  The imperative of

the Plaintiffs' right to a trial by jury heavily favors remanding this action to the State Court.

> 7.    Prejudice to the Removed Parties

The prejudice to Plaintiffs in removing this action to this Court, if then transferred to the

District of Delaware where the Liquidation proceeding is pending, will be enormous.  Thus, this

factor weights heavily in favor of remand as well.  All of the parties to this action maintain

offices in or nearby New York.  The misrepresentations and material omissions occurred in New

York.  The witnesses are located in New York.  The discoverable evidence is located in New

York.  Plaintiffs specifically commenced the Lawsuit in New York precisely because every

causal nexus of this action is in New York, and because the courts of New York are the best

possible adjudicators of purely state law causes of action.  To deprive Plaintiffs of their chosen

forum to litigate, to deny Plaintiffs access to a constitutionally guaranteed right to a trial by jury,

and to force Plaintiffs to litigate their claims hundreds of miles from the *situs* of the entire action,

would be of enormous prejudice to the Plaintiffs.  This factor therefore also weighs in favor of

remand.  *Kerusa Co.,* 2004 WL 1048239 at *7.

> 8.    Duplicative Litigation; Wasted Resources and Inconsistent Results

The likelihood of duplicative litigation is increased by removal.  Plaintiffs have

demanded a jury trial, which the Bankruptcy Court is not empowered to conduct absent special

designation by the district court, and by consent of all parties.  Wrangling and maneuvering over

this aspect of the case alone would likely result in substantial motion practice and wasted judicial

resources, long before the action is actually heard on its merits.  Additionally, the Bankruptcy

---

[13]    As this Court has previously held, under well-established constitutional and statutory authority, this action, if removed "must be tried before a jury in a district court and not the bankruptcy court."  *Kerusa Co.,* 2004 WL 1048239 at *6; *see* 28 U.S.C. §§ 157(b)(5) and (e); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982).

{00004185.DOC; 3.4}

Courts lack jurisdiction to enter a final judgment in this action, and any decision of the Bankruptcy Court would have to be reviewed *de novo* by the District Court. This would be the antithesis of judicial economy. "Only a district court, and not a bankruptcy court, may enter final judgment in a non-core 'related to' proceeding." *Id.* at *2; *see also* 28 U.S.C §157(b)(1) & §157(c)(1). Moreover, if this Lawsuit may be transferred to the Bankruptcy Court, this will necessarily produce multiple stages of review. This factor points strongly towards remand for adjudication in the State Court.

Based on the analysis of the eight factors listed above, Plaintiffs respectfully submit that this Court (if it reaches the question) should exercise its "permissive" and "equitable" authority to remand this action to the Supreme Court of the State of New York.

**POINT IV**

**IMPALA'S "REQUEST" TO TRANSFER THE LAWSUIT
TO THE DELAWARE BANKRUPTCY COURT
MUST BE DENIED AS PREMATURE AND IMPROPERLY RAISED**

In its Notice of Removal, Impala seems to argue for a transfer of venue to the Delaware Bankruptcy Court. Yet Impala has not articulated in its Notice for Removal any statutory basis for such a transfer.[14] This request for transfer of the Lawsuit is premature at best, because this Court has yet to rule on its jurisdiction over the Lawsuit. In addition, as demonstrated above, this Court either must recognize lack of "relatedness" or mandatory abstention and remand the Lawsuit, or it should remand the Lawsuit to New York State Court for permissive and equitable reasons.

Accordingly, Plaintiffs oppose the request for transfer of the Lawsuit to the Delaware Bankruptcy Court. They fully reserve their right to address all venue issues: (a) in opposition to

---

[14] Implicitly recognizing such infirmities in Impala's Notice of Removal, all Defendants joined in a Motion to Transfer Venue, filed on June 21, 2007.

{00004185.DOC; 3.4}

Defendants' joint motion for transfer of venue, filed June 21, 2007, and (b) after this Court determines whether or not to abstain and remand this Lawsuit to the Supreme Court of the State of New York.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (a) acknowledging no right of removal for lack of "relatedness" under 28 U.S.C. §1334(b) or pursuant to the mandatory abstention provisions of § 1334(c)(2); or, in the alternative, (b) abstaining from exercising this Court's jurisdiction pursuant to permissive abstention under §1334(c)(1) or equitably under § 1452(b), and remanding the Lawsuit to the Supreme Court of the State of New York.  The Court also should deny Impala's "request" to transfer this Lawsuit to the Bankruptcy Court of the District of Delaware.

Dated: New York, New York
      July 1, 2007

                            Respectfully submitted,

                            _____s/ Joseph M. Vann_____
                            Joseph M. Vann (JMV 7601)
                            Jed Lewin (JL 2428)
                            COHEN TAUBER SPIEVACK & WAGNER, LLP
                            420 Lexington Avenue, 24th Floor
                            New York, New York  10170
                            (212) 586-5800

                                -and-

                            _____s/Melissa A. Roover_____
                             Alan M. Grayson, of counsel
                             Melissa A. Roover (MR 1163)
                            GRAYSON & KUBLI, P.C.
                            1420 Spring Hill Road, Suite 230
                            McLean, Virginia 22102
                            (703) 749-0000

                            Attorneys for Plaintiffs