UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

WINSTAR HOLDINGS, LLC and
IDT CORP.,

                                             Civ. No.: 07 CV 4634 (GEL)
                Plaintiff,             ECF Case

        -against-

THE BLACKSTONE GROUP LP; IMPALA
PARTNERS, LLC; AND CITICORP

                Defendants.
-------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF DELAWARE**


GRAYSON & KUBLI, P.C.
Alan M. Grayson, of counsel
Melissa Roover (MR 1163)
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
(703) 749-0000


and


COHEN TAUBER SPIEVACK WAGNER LLP
Joseph M. Vann (JMV 7601)
Jed Lewin (JL 2428)
420 Lexington Avenue
New York, New York 10170
(212) 586-5800


*Attorneys for Plaintiffs Winstar Holdings, LLC and IDT Corp.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

PRELIMINARY STATEMENT AND BACKGROUND.........................................1

ARGUMENT ....................................................................................................3

I.      THIS LAWSUIT DOES NOT BELONG IN BANKRUPTCY
        COURT, AND THEREFORE, IT CANNOT
        BE TRANSFERRED PURSUANT TO SECTION 1406(a) ..........................4

        A.      The Forum Selection Clause Is Not Available to
                Defendants Nor Applicable to This Lawsuit .........................4

        B.      The Bankruptcy Court Did Not Retain
                Jurisdiction Over the Lawsuit .............................................8

        C.      The Lawsuit is Not "Related To" the
                Liquidation Proceeding........................................................9

II.     THE INTERESTS OF JUSTICE WOULD NOT BE
        SERVED BY TRANSFERRING THE CASE TO
        THE DELAWARE BANKRUPTCY COURT.................................12

        1.      The Convenience of the Witnesses.....................................14
        2.      The Convenience of the Parties. ........................................14
        3.      The Locus of Operative Facts.............................................15
        4.      The Location of Relevant Documents. ................................15
        5.      The Availability of Process.................................................16
        6.      The Forum's Familiarity with Relevant Law.....................16
        7.      The Relative Financial Means of the Parties ......................17
        8.      Calendar Congestions and Trial Efficiency .......................17
        9.      The Interests of Justice Generally......................................18

CONCLUSION....................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna, Inc. v. Medtest Express, Inc.*,
  No. 01-CV-4398 (ILG), 2001 WL 1776155, at *5 (E.D.N.Y. Nov. 30, 2001) .................. 16, 17

*Bay Ridge Air Rights, Inc. v. State*,
  375 N.E. 2d 29 (N.Y. 1978) ........................................................................................... 11

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998) ........................................................................ passim

*Connors v. Lexington Ins. Co.*,
  666 F. Supp. 434 (S.D.N.Y. 1987) ................................................................................. 18

*Credit Suisse Secs. (USA) LLC v. Hilliard*,
  469 F. Supp. 2d 103 (S.D.N.Y. 2007) .............................................................................. 7

*Dan-Dee Int'l, Ltd. v. Kmart Corp.*,
  No. 99-11689, 2000 WL 1346865 (S.D.N.Y. Sept. 19, 2000) ................................. 7, 8, 12, 13

*Frene N.V. v. Kmart Corp.*,
  1998 WL 427688, at *3 (S.D.N.Y., 1998) ....................................................................... 15

*General Elec. Cap. Corp. v. Pro-Fac Coop.*,
  No. 01 Civ. 10215, 2002 WL 1300054 (S.D.N.Y. June 12, 2002) ...................................... 10

*In re Turner*,
  724 F.2d 338 (2d Cir. 1983) ........................................................................................... 10

*In re WorldCom, Inc. Sec. Litig.*,
  293 B.R. 308 (S.D.N.Y. 2003) ................................................................................ 9, 10, 11

*Int'l Securities Exchange, LLC v. Chicago Board Options Exchange, Inc.*,
  No. 06-13445, 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007) ........................... 14, 15, 16

*Kerusa Co., LLC v. W10Z/515 Real Estate Ltd.*,
  No. 04-cv-708(GEL), 2004 WL 1048239, at *6 (S.D.N.Y. May 7, 2004) .............................. 17

*Korean Press Agency, Inc. v. Yonhap News Agency*,
  421 F. Supp. 2d 775 (S.D.N.Y. 2006) ............................................................................... 7

*Linardos v. Fortuna*,
  157 F.3d 945 (2d Cir. 1998) ............................................................................................. 9

*Ruby v. Pam Am World Airways, Inc.*,
   252 F. Supp. 873 (S.D.N.Y. 1965) ............................................................................ 8

*Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*,
   927 F. Supp. 731 (S.D.N.Y. 1996) ............................................................................ 5

*Victor G. Reiling & Assoc. v. Fisher-Price, Inc.*,
   No. 03-222, 2003 WL 21785580, at *2 (D. Conn. July 31, 2003). ......................... 5

*Weiss v. Columbia Pictures Television, Inc.*,
   801 F. Supp. 1276 (S.D.N.Y. 1992) ...................................................................... 5, 6

**Statutes**

11 U.S.C. §502(e) (2000) ......................................................................................... 11

28 U.S.C. § 1404(a) .......................................................................................... 4, 12, 15

28 U.S.C. § 1406(a) (2000) ................................................................................... 2, 11

28 U.S.C. § 1452 (2000) ............................................................................................ 1

28 U.S.C. §1334(b) ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 45(b)(2) ............................................................................................ 16

Rule 9027 of the Federal Rules of Bankruptcy Procedure ........................................ 1

## INTRODUCTION

Plaintiffs Winstar Holdings, LLC and IDT Corp. (together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue to the United States District Court for the District of Delaware ("Motion to Transfer Venue" or "Defendants' Motion"), dated July 19, 2007.

## PRELIMINARY STATEMENT AND BACKGROUND

Plaintiffs commenced this action on May 10, 2007 (the "Lawsuit"), in the Supreme Court of the State of New York, Commercial Division, against The Blackstone Group, L.P. ("Blackstone"), Impala Partners, LLC ("Impala") and Citicorp ("Citicorp") (collectively, the "Defendants"). The Lawsuit is grounded completely in tort claims of fraud and misrepresentation arising under New York law. Plaintiffs allege that they have suffered losses exceeding $300 million resulting from Defendants' misrepresentations and omissions that induced Plaintiffs to acquire, in December 2001, substantially all of the assets of Winstar Communications, Inc. and certain related entities ("Old Winstar"). Plaintiffs seek damages from Defendants for Defendants' acts of fraud and misrepresentation, made within the State of New York, in connection with the Old Winstar acquisition.

By Notice of Removal dated June 1, 2007 (the "Notice of Removal" or "Notice"), Defendant Impala removed this Lawsuit to this Court, purportedly pursuant to 28 U.S.C. § 1452 (2000) and Rule 9027 of the Federal Rules of Bankruptcy Procedure. Plaintiffs timely filed their Motion to Remand in response to the Notice of Removal, on July 1, 2007, and hereby incorporate their Motion to Remand by reference.

The only ground for removal articulated by Impala in its Notice is that this Lawsuit is somehow "related" to Old Winstar's Chapter 7 liquidation proceeding ("Liquidation

Proceeding"), solely because Impala holds a *potential* right of indemnification against Old Winstar, which is *not a party* to this Lawsuit.   Importantly, that right of indemnification specifically excludes "willful misconduct," (*see*, Exhibit F to Defendants' Motion) which is what Plaintiffs allege here.  Impala evidently has not filed any claim against Old Winstar purporting to assert such a right, and its time to do so has expired.

Impala does not allege any other basis of jurisdiction in this Court.  There is no diversity jurisdiction, and no federal question or bankruptcy law is at issue here.

In its Notice of Removal, Impala informally, and without basis, also requested a transfer of venue to the Delaware Bankruptcy Court.  Yet Impala did not articulate in its Notice for Removal any statutory basis for such a transfer.  Implicitly conceding the infirmities of the ineffective request to transfer venue in Impala's Notice of Removal, all Defendants joined in a formal Motion to Transfer Venue, filed on June 21, 2007.  In their Motion, Defendants now request that this Court transfer venue to the United States District Court for the District of Delaware for referral to the United States Bankruptcy Court for the District of Delaware, pursuant to 28 U.S.C. § 1406(a) (2000) (wrong district), or in the alternative *id.* § 1404(a) (convenience of parties & witnesses/interest of justice).

As an initial matter, Plaintiffs reiterate their position, articulated in their Motion to Remand, that this Court does not have jurisdiction of the Lawsuit.  Accordingly, the Court need not (and cannot) decide Defendants' Motion to Transfer Venue until it decides Plaintiffs' Motion to Remand.  And, if Plaintiffs' Motion to Remand is granted, Defendants' Motion to Transfer Venue becomes moot.

If, notwithstanding, this Court elects to consider Defendants' Motion to Transfer Venue on its merits, Defendants' Motion must be denied.  Defendants argue that this case

2

belongs in the Delaware Bankruptcy Court for three reasons: (1) a forum selection clause in the Asset Purchase Agreement ("APA") by which Plaintiffs purchased the assets of Old Winstar – an Agreement to which none of the Defendants is a party; (2) the Delaware Bankruptcy Court's purported retention of "exclusive" jurisdiction over "any disputes arising under or related to the Asset Purchase Agreement;" and (3) based on an Indemnification Agreement between Impala and Old Winstar, to which Plaintiffs were not a party.[1] Defendants also argue, in the alternative, that even if venue exists in this District, the Court should transfer the Lawsuit to Delaware "in the interests of justice," pursuant to Section 1404(a). However, as set forth below, all of these arguments for transfer lack merit. This Lawsuit concerns activities in New York, raising issues of New York State law and the Lawsuit therefore belongs in New York.

## ARGUMENT

Contrary to Defendants' conclusory assertions, the issues in this case are not "related" to, and have no "significant connection" to the Delaware Liquidation Proceeding. Plaintiffs filed this Lawsuit in the Supreme Court for the State of New York, County of New York, alleging exclusively New York State law causes of action against Defendants who are all located in (or close to) New York. The misrepresentations and material omissions occurred in

---

[1] Defendants now also assert that an Indemnification Agreement between Blackstone and Old Winstar provides a basis for a venue transfer. However, that Indemnification Agreement similarly excludes indemnification for actions arising out of "gross negligence or willful misconduct." Def. Mot. Ex. D. Pursuant to a letter agreement (the "Blackstone Agreement"), Old Winstar retained Blackstone to act as its exclusive M & A advisor to provide financial advisory services, including with respect to the sale of Old Winstar's assets. Pursuant to that Agreement, Old Winstar agreed to indemnify Blackstone for "all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigation, preparing, pursuing, defending, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with" Blackstone's retention by Old Winstar. Def. Mot. at 4, citing Def. Ex. D. This is similar to the purported Indemnification Agreement between Old Winstar and Defendant Impala, which formed the basis for this Court's alleged jurisdiction. *See* Def. Mot. Ex. F. Any argument concerning alleged Indemnification Agreements is an effort to mislead the Court, however, as the next sentence of both the Blackstone and the Impala Indemnification Agreements state that Old Winstar will "not be liable" under the foregoing indemnification provision for claims arising from "negligence" or "willful misconduct." *See* Def. Mot. Exs. D, F. Plaintiffs assert claims of fraud and misrepresentation, *i.e.*, willful misconduct.

New York.  The witnesses are located in the New York metropolitan area.  The discoverable evidence is located in New York.  Old Winstar, the debtor in the Liquidation Proceeding, is not a party to this Lawsuit.  The lawsuit focuses solely on Defendants' wrongful conduct that occurred prior to the APA.  Defendants nevertheless argue that this case now belongs "exclusively" in Delaware because of the mandatory forum selection clause in the APA, to which they are not parties.[2]  However, the Defendants, as strangers to the APA, are not entitled to enforce the forum selection clause in the APA or the Order approving the APA.[3]  Accordingly, Defendants' primary argument for transfer of venue lacks merit.  Moreover, as demonstrated in the annexed Declaration of Melissa Roover and below, the interests of justice under 28 U.S.C. § 1404(a) strongly militate against any transfer of venue.

## I.    THIS LAWSUIT DOES NOT BELONG IN BANKRUPTCY COURT, AND THEREFORE, IT CANNOT BE TRANSFERRED PURSUANT TO SECTION 1406(a)

### A.    The Forum Selection Clause Is Not Available to Defendants Nor Applicable to This Lawsuit

Defendants argue that this case should be transferred to the United States District Court for the District of Delaware for referral to the Delaware Bankruptcy Court, pursuant to Section 1406(a), because Plaintiffs' claims supposedly are subject to the mandatory forum

---

[2] The tort causes of action of fraud and misrepresentation asserted in the Lawsuit are inherently independent of the APA, for Plaintiffs assert no breach of the APA.  Plaintiffs assert that Defendants committed fraud and made misrepresentations that induced Plaintiffs to participate in the auction of Old Winstar's asserts, and ultimately, to enter into the APA.  Had Plaintiff not entered into the APA, Plaintiffs could still maintain the lawsuit to recover the significant expenses it incurred to participate in and bid at the bankruptcy auction of Old Winstar's assets.  *See,* Complaint ¶ 38.  Accordingly, while the APA may be relevant to the damages suffered by Plaintiffs, Defendants' tortious acts, which occurred in New York, remain actionable independent of the APA.

[3] The APA expressly states that it does not provide any rights to third parties. Specifically, Section 9.7 of the APA states: "*Third-Party Beneficiaries.*  Nothing in this Agreement shall be construed as giving any person, including any counter-party to an Assumed Agreement, other than the parties hereto, any legal or equitable right, remedy or claim under or with respect to this Agreement."  (emphasis in original). *See,* Def. Mot., Ex. A.

selection clause in the APA and because the Bankruptcy Court, when approving the APA, supposedly retained exclusive jurisdiction.  Def. Mot. at 7-11.  Defendants are incorrect.

Section 1406(a) "applies to claims for which venue is improper in this district." *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 737 (S.D.N.Y. 1996).  "When venue lies in the wrong division or district, the district court 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'"  *Victor G. Reiling & Assoc. v. Fisher-Price, Inc.*, No. 03-222, 2003 WL 21785580, at *2 (D. Conn. July 31, 2003).

Defendants present the "mandatory" forum selection clause in their Motion as a *fait accompli* to support their circular (and meritless) argument that venue in this Court is improper because the APA and Order approving the APA make venue proper only in the District of Delaware. Yet, Defendants were not parties to, and cannot avail themselves of, the APA provisions. Moreover, even if Defendants had been parties to the APA (which they were not), while "the parties' expressed preference for a forum in a forum selection clause is entitled to substantial consideration, [] it is not dispositive."  *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992).

 "While '[a] forum selection clause is enforceable unless it is shown that to enforce it would be unreasonable and unjust or that some invalidity such as fraud or overreaching is attached to it,'" "'[t]his general rule applies, however, only when *the contract containing the forum selection clause is the subject of the suit*.'"  *Fisher Price*, 2003 WL 21785580, at *2 (emphasis added) (citations omitted).  In *Fisher-Price*, plaintiff toy creators entered into an Option Agreement with the defendant toy company.  Under the Option Agreement, plaintiffs manufactured various doll prototypes, all of which the defendants rejected.

After the expiration of the Option Agreement, defendants marketed a toy incorporating plaintiffs' ideas. Plaintiffs filed suit alleging breach of contract, unfair competition and misappropriation of an idea, and defendants moved to transfer venue.

The court in *Fisher Price* denied defendant's motion to transfer. It stated that the forum selection clause of the Option Agreement was inapplicable where, as here, plaintiffs did not sue under that agreement, but brought other claims only tangentially related to the Option Agreement. That court determined that the forum selection clause applied only to claims arising under the Option Agreement, and consequently, not to any claim or dispute that did not arise under it. *Id.* The fact that there would be discovery on the Option Agreement was "unexceptional," given that the Option Agreement was part of the "contextual background" of the case. *Id.* Such discovery did not justify transfer. *Id.*

Similarly, here, the fact that Plaintiffs bought the assets of Old Winstar under the APA is simply part of the "contextual background" of the Lawsuit. It is hardly enough to justify, let alone require, transfer of this case to the Delaware Bankruptcy Court. Contrary to Defendants' argument, this Lawsuit does not seek to reverse "the purchase of the vast majority of Old Winstar's business assets," nor does the Lawsuit "strike[] at the core of the bankruptcy estates and the still ongoing bankruptcy proceedings." Def. Mot. at 11. Rather, the Lawsuit seeks a remedy for Defendants' misrepresentations and omissions, and the consequences that flowed from them.

Defendants argue that the Plaintiffs agreed to "irrevocably submit to the exclusive jurisdiction of the [United States] Bankruptcy Court [for the District of Delaware] (or any court exercising appellate jurisdiction over the Bankruptcy Court) over any dispute arising out of or relating to this Agreement or any other agreement or instrument contemplated hereby or entered

into in connection herewith or any of the transactions contemplated hereby or thereby." Def. Mot. at 5. Yet the APA governs relations solely between "[t]he parties hereto," Def. Ex. A. *The Lawsuit, however, is not an action between those parties.* This critical fact, standing alone, distinguishes all of the cases relied upon by Defendants for the enforceability of forum selection clauses, as those cases -- unlike here -- involved disputes between the actual parties to the contract containing the forum selection clause.[4]

Defendants are not parties (or beneficiaries) of the APA.[5] Plaintiffs are not looking to enforce or interpret the APA. To the contrary, in this Lawsuit, Plaintiffs allege tort claims of fraud and misrepresentation against Defendants for, *inter alia*, inducing Plaintiffs to enter into the APA. It is doubtful that even Old Winstar, much less Impala or Blackstone, could enforce the APA against the Plaintiffs to defeat a claim that the APA was fraudulently induced.

The public policy of enforcing forum selection clauses applies only "when the contract containing the forum selection clause is the subject of the suit." *Dan-Dee Int'l, Ltd. v. Kmart Corp.*, No. 99-11689, 2000 WL 1346865, at *5 (S.D.N.Y. Sept. 19, 2000) (court refused to apply forum selection clause where plaintiff did not sue under the contract).[6] Here, Plaintiffs likewise did not sue under the APA. They are not "'attempting to assert contractual rights

---

[4] Indeed, Defendants cite no authority for their contention that a tort committed by a party unrelated to a contract can enforce a forum selection clause in that contract. Defendants reply upon *Credit Suisse Secs. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103 (S.D.N.Y. 2007) and *Korean Press Agency, Inc. v. Yonhap News Agency*, 421 F. Supp. 2d 775 (S.D.N.Y. 2006) for this proposition. Such reliance is misplaced. In these cases, it is the parties *to the contract containing the forum selection clause* that are seeking to enforce that clause in subsequent litigation.

[5] *See*, footnote 3, *supra.*

[6] It is also well-established that a plaintiff's choice of forum is "generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Because the typical transfer case involves a defendant seeking to transfer the case to its home forum, a plaintiff's choice of forum should be afforded "considerable weight" where, as here, Plaintiffs' choice of forum is the Defendants' home forum.

7

arising from'" the APA. *Id.* Plaintiffs sued Defendants, none of whom is a party to the APA, for fraud and misrepresentation occurring prior to the APA, not for breach of contract of the APA.

**B.    The Bankruptcy Court Did Not Retain Jurisdiction Over the Lawsuit**

Defendants next argue that the Bankruptcy Court, in its Order approving the APA, somehow "retained" exclusive jurisdiction over the Lawsuit filed five years later. Def. Mot. at 6. Defendants rely on Paragraph 15 of the Order, which states:

> This court retains exclusive jurisdiction to endorse and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith (including the Management Agreement) in all respects, including, but not limited to, retaining jurisdiction to (a) compel the delivery of the Purchased Assets to the Buyer, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, and (d) interpret, implement, and enforce the provisions of the Asset Purchase Agreement and this Sale Order. *Id.*

Plaintiffs do not seek to compel the delivery of the assets listed in the APA; Plaintiffs have delivered the purchase price of the assets; all duties have been performed under the APA; the dispute between Plaintiffs and Defendants does not "arise under or relate to the" APA; and Plaintiffs do not seek to interpret, implement or enforce any provision of the APA. To the contrary, Plaintiffs claim that but for the Defendants' misrepresentations and omissions, the APA never would have been signed, and the Order never would have come into being.[7]

Defendant's reliance on *Ruby v. Pam Am World Airways, Inc.*, 252 F. Supp. 873, 880 (S.D.N.Y. 1965) is misplaced. In *Ruby*, the court dismissed claims involving an interpretation of the pilots' association agreement because exclusive jurisdiction over

interpretation vested in an alternative forum.  Here, Plaintiffs do not seek an "interpretation" of

the APA; rather, they seek damages from Defendants for Defendants' fraud, misrepresentations

and omissions.

**C.    The Lawsuit is Not "Related To" the Liquidation Proceeding**

Defendants also argue that venue is proper in the Delaware Bankruptcy Court

under the "broad scope" of "related to" jurisdiction under 28 U.S.C. §1334(b).  Def. Mot. at 10-

11.  This is incorrect, because this Lawsuit is neither "related" nor "significantly connected" to

the Old Winstar Liquidation Proceeding in Delaware, but rather focuses on Defendants'

wrongful conduct in New York.

The test under Section 1406(a) is not, however, whether venue is "proper" in

Delaware; the test is whether it is "improper" in New York.  Apparently, Defendants' have no

authority that venue is improper in New York other than their argument that venue is purportedly

also proper in Delaware under the APA or 28 U.S.C. § 1334(b) (2000).

In any case, under Section 1334(b), the district courts have "original ***but not***

***exclusive jurisdiction*** of all civil proceedings arising under Title 11, or arising in or related to

cases under Title 11."  28 U.S.C. §1334(b) (emphasis added).  "A party seeking to remove an

action from state to federal court bears the burden of proving federal jurisdiction."  *In re*

*WorldCom, Inc. Sec. Litig.,* 293 B.R. 308, 317 (S.D.N.Y. 2003) *citing Linardos v. Fortuna*, 157

F.3d 945, 947 (2d Cir. 1998) ("'It is also hornbook law that the party invoking federal

jurisdiction bears the burden of proving facts to establish that jurisdiction.'").  Defendants have

failed, both in Impala's Notice of Removal and in their Motion to Transfer Venue, to carry their

---

[7] One can only surmise that Defendants' motivation for defrauding and misrepresenting Old Winstar's financial health was to attract as many bidders as possible to the bankruptcy auction given Defendants' respective "success fees" due upon sale.  *See, e.g.*, Def. Mot., Ex. D at ¶ (iii) (1-1.25% "Transaction Fee").

burden to establish that the Lawsuit is "related to" the Liquidation Proceeding, within the meaning of Section 1334(b).

In this Circuit, the test to determine whether an action is "related to" a bankruptcy is whether there is a "significant connection" between the two. *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983). This is true if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action" or impacts upon the "handling and administration of the bankrupt estate."[8] *WorldCom, Inc.*, 293 B.R. at 317. "Related to" jurisdiction "extends more broadly when it concerns a reorganization under Chapter 11 [as in *WorldCom*] as opposed to a liquidation under Chapter 7," as here. *Id.*

In this case, Impala and Blackstone, however, have failed to establish that: (i) their potential "claims" for indemnification are recognizable or allowable in the Liquidation Proceeding, or (ii) that creditors of the earlier Chapter 11 stage of the Liquidation Proceeding (now in Chapter 7 liquidation) will receive *anything* in the Liquidation Proceeding. In the absence of factor (i) or (ii), the Lawsuit cannot have any effect on the bankrupt estate.[9] In stark contrast to the facts of this case are the facts of *In re WorldCom, Inc. Sec. Litig.,* where the Court found that the contribution claim there could conceivably affect its reorganizing (not liquidating)

---

[8] Notably, in *General Elec. Cap. Corp. v. Pro-Fac Coop.*, No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002), this Court recognized that even though contribution and indemnification claims *could* conceivably "affect" the estate, these claims were an "insufficient basis for jurisdiction." Even if it could exercise "related to" jurisdiction, the Court determined that remand would still be appropriate "in light of the non-exclusive nature of federal court jurisdiction . . . as well as on equitable grounds, including respect for Plaintiff's choice of forum, [and] the ability of the chosen forum to conduct a jury trial." *Id.* at *3.

[9] Even if creditors eventually do receive a distribution from the Liquidation Proceeding, a contingent and unliquidated claim by Defendants cannot possibly have a significant impact on the Liquidation Proceeding. For, if Defendants can somehow get around the Bar Date Order in the Liquidation Proceeding precluding their claims, their indemnification claims will either be disallowed as being contingent, or estimated and reserved.

bankruptcy estate, because the unsecured creditors were to receive 36 cents on the dollar.[10]
*WorldCom, Inc.,* 293 B.R. at 324. Where Old Winstar is in liquidation, not reorganization, and
Defendants have failed to demonstrate that there are any funds presently available in the
Liquidation Proceeding to distribute to creditors at their level of priority, or that they even have a
right to file a claim in the Liquidation Proceeding (which is apparently time barred), there can be
no "conceivable effect" on the estate. *Id.* Accordingly, Defendants have not met their burden to
demonstrate "related to" jurisdiction. [11]

In sum, try as Defendants might to shoehorn this Lawsuit into a case suitable for
adjudication in the Bankruptcy Court, neither the APA, nor the Order approving the APA, nor
the Impala and Blackstone purported indemnification agreements confer original jurisdiction
over this Lawsuit in the Delaware Bankruptcy Court. Venue for this Lawsuit remains
appropriate in New York. Certainly, Defendants have failed to establish that the Lawsuit was
"wrongly . . . filed" in New York. 28 U.S.C. § 1406(a) (2000).

---

[10] "[G]eneral unsecured creditors of WorldCom are slated to receive approximately 36 cents per dollar in cash and newly issued MCI stock." H. Jason Gould, *WorldCom Granted Extension to Emerge from Bankruptcy,* BANKRUPTCY PROTECTOR, Feb. 25, 2004.

[11] Impala and Blackstone also have not met their burden of proving an impact upon the Liquidation Proceeding sufficient to create "related to" jurisdiction for three other independent reasons. First, if a claim for indemnification exists at all – which it does not because the type of claims alleged in the Lawsuit are expressly *excluded* from Impala's and Blackstone's indemnification agreements with Old Winstar – such claim is unripe and premature, because it is settled law in New York that an action for indemnity or contribution does not generally accrue until the payment is made by the party seeking recovery. *Bay Ridge Air Rights, Inc. v. State*, 375 N.E. 2d 29 (N.Y. 1978). Second, Section 502(e) of the Bankruptcy Code provides for disallowance of a claim for indemnity, if at the time such claim is considered for allowance or disallowance, it is still contingent and unliquidated. *See* 11 U.S.C. §502(e) (2000) ("the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that … (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution …"). Here, Impala's and Blackstone's claims for indemnification are thus far contingent and unliquidated. Third, Impala and Blackstone have not filed any proof of claim for indemnification against Old Winstar in the Liquidation Proceeding, and more than likely such claims are now time-barred from doing so. A June 11, 2002 Order in the Liquidation Proceeding sets August 30, 2002 as the bar date for the filing of all Administrative Claims (whether or not contingent or unliquidated). See Ex. 1 [Roover Declaration], Ex. A.

## II.    THE INTERESTS OF JUSTICE WOULD NOT BE SERVED BY TRANSFERRING THE CASE TO THE DELAWARE BANKRUPTCY COURT

The Court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a) (2000).  "'Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.'"  *Dan-Dee*, 2000 WL 1346865, at *5 (citations omitted).  On a motion to transfer, the moving party bears the burden of demonstrating the desirability of transfer.  *Id.*  A "court should not disturb a plaintiff's choice of forum unless the defendant makes a clear and convincing showing that the balance of convenience favors the defendant's choice." *Id.*  Indeed, the plaintiff's choice of forum is "accorded more deference where [as here] there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim."  *Berman*, 30 F. Supp. 2d at 659.

In addition, in applications for transfer under 28 U.S.C. §1404(a) (2000), the movant must "support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony."  *Id.* at 656, *see also Dan-Dee Int'l , Ltd.*, 2000 WL 1346865, at *6. Defendants have submitted no such affidavit here; their application to transfer under Section 1404(a) is therefore facially invalid.

Assuming *arguendo*, that the Court considers Defendants' Motion to Transfer Venue anyway (which it should not), the inquiry on a motion to transfer is twofold.  First, courts must determine whether the action sought to be transferred is one that "'might have been

brought' in the transferee court." *Id.* Second, the court must determine whether transfer is warranted for "'the convenience of parties and witnesses' and [in] the 'interests of justice.'" *Id.*

Here, the relevant events to Plaintiffs' claims for fraud and misrepresentation took place *solely* in New York. Only Plaintiffs' purchase of Old Winstar's assets occurred in the transferee court. As discussed above, this is not sufficient to confer jurisdiction in the transferee court.

Even if the Lawsuit could have been brought in the transferee court, the district court would then consider the following factors to determine if the balance of convenience favors transfer: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the locus of operative facts (that is, the place where the events at issue occurred); (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with governing law; (7) the relative financial means of the parties; (8) calendar congestions and trial efficiency; and (9) the interests of justice generally." *Dan-Dee Int'l, Ltd.,* 2000 WL 1346865, at *5 (citations omitted). "The convenience of party and non-party witnesses is generally considered the most important factor in deciding a motion to transfer venue." *Id.* Here, all parties, and the notable non-party witnesses, are located in the New York metropolitan area. "A party who seeks to transfer venue on the grounds of witness convenience must 'clearly specify the key witnesses to be called and must make a general statements [sic] of what their testimony would cover.'" *Id.* Here, Defendants have done no such thing, because they cannot.

The guiding factors militate strongly in favor of denial of transfer here.

1.    <u>The Convenience of the Witnesses.</u>

"Convenience of witnesses 'is probably the single-most important factor in the analysis of whether transfer should be granted.'" *Int'l Securities Exchange, LLC v. Chicago Board Options Exchange, Inc.*, No. 06-13445, 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007) (granting motion to transfer where defendants, most relevant witnesses and documents were located in the Northern District of Illinois) (citation omitted); *see also Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) (motion to transfer granted where virtually all witnesses and documents are located in the Northern District of California).  When considering the convenience of the witnesses, a court "'must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district.'" *Int'l Securities Exchange, LLC,* 2007 WL 1541087, at *3 (citations omitted).  In this case, virtually all witnesses with knowledge are located in the New York metropolitan area.  Ex. 1, ¶ 3. Defendants have not identified any material witnesses that are located in Delaware, because they cannot.  Thus, this factor favors denial of Defendants' Motion.

2.    <u>The Convenience of the Parties.</u>

All of the parties to this action maintain offices in or near New York.  *Id.* ¶ 2. Defendants Blackstone and Citicorp, among New York's most powerful and influential financial institutions, have their principal offices in New York City.  *Id.*  Defendant Impala Partners' ("Impala's") principal office is just outside New York in Norwalk, Connecticut.  *Id.*  The Plaintiffs are located in Newark, New Jersey.  *Id.*  This district is thus centrally located for all parties.  It is certainly more convenient than Delaware.[12]  No party is located in Delaware.

---

[12]  Defendants also argue that Plaintiffs' agreement to the forum selection clause in the APA demonstrates that Delaware is not an inconvenient forum for Plaintiffs.  Def. Mot. at 3.  Plaintiffs' agreement to allow the Delaware Bankruptcy Court to oversee the *interpretation* and *enforcement* of the APA, *i.e.*, whether Old Winstar

Tellingly, the typical transfer motion involves a defendant seeking to transfer the lawsuit to its home district. *See Berman*, 30 F. Supp.2d at 657 (case moved to California from New York for the convenience of the defendants and other witnesses); *Int'l Securities Exchange, LLC,* 2007 WL 1541087, at *3 (transferring case to Illinois, where Defendant was located); *Frene N.V. v. Kmart Corp.,* 1998 WL 427688, at *3 (S.D.N.Y., 1998) (transferring case to Michigan). Here, the opposite is true. Defendants oddly seek to transfer this case from a district convenient to all parties, to one inconvenient to all parties. This factor also favors denial of Defendants' Motion.

       3.     <u>The Locus of Operative Facts.</u>

"'Where the operative facts occurred is an obvious factor to consider.'" *Berman*, 30 F. Supp. 2d at 658 (citation omitted). "Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." *Id.* Again, that is not the case here. The claims against the Defendants – fraud, aiding and abetting fraud, negligent misrepresentation, negligence and civil conspiracy – concern fraudulent misrepresentations and material omissions committed in New York. Complaint ¶ 22. Plaintiffs met with Defendants, and conducted their due diligence, in New York. *Id.* ¶¶ 22-29. New York is therefore the locus of operative facts in this case.

       4.     <u>The Location of Relevant Documents.</u>

"The location of documents and ease of access to sources of proof weighs in favor of transfer[, and is] 'clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a).'" *Berman*, 30 F. Supp. 2d at 658 (citation omitted). Again, in the typical

---

delivered the Purchased Assets and Plaintiffs delivered the purchase price, has no bearing on whether Plaintiffs agreed to litigate this Lawsuit – against Defendants that were not a party to the APA and for claims that are unrelated to the APA – in Delaware.

motion to transfer, the movant seeks to transfer the case to where the relevant documents are located. *Id.* (transferring case to Northern California where the documents were located). Here, however, the relevant documents and discoverable evidence are located in or about New York.

### 5.    The Availability of Process.

"Availability of compulsory process 'is an important consideration in transfer motions.'" *Int'l Securities Exchange, LLC,* 2007 WL 1541087, at *4. The bulk of the non-party witnesses to this action are believed to be located in the New York metropolitan area.[13] Ex. 1, ¶ 3. Non-party David Duncan, Winstar's Chief Financial Officer at the relevant time and a key participant in Plaintiffs' due diligence, is located in New York. *Id.* To move this action to Delaware, where this, and perhaps other, witnesses may not be subject to subpoena power, would prejudice Plaintiffs. *See* Fed. R. Civ. P. 45(b)(2) (district court can enforce a trial subpoena served on a witness within a judicial district of the court, or within 100 miles of the court). "The fact that these key witnesses may not be compelled to testify in [the Delaware] action is an important factor weighing in favor of transfer." *Berman*, 30 F. Supp. 2d at 658. Therefore, this factor weighs heavily in favor of denying Defendants' Motion.

### 6.    The Forum's Familiarity with Relevant Law.

"When a case is transferred pursuant to Section 1404(a), the transferee forum must apply the law, including the choice of law rules, that the transferor forum would have applied." *Aetna, Inc. v. Medtest Express, Inc.*, No. 01-CV-4398 (ILG), 2001 WL 1776155, at *5 (E.D.N.Y. Nov. 30, 2001). "For tort claims, New York law requires courts to apply the law of the state with the greatest interest in the outcome of the litigation." *Id.* This is determined

---

[13] Plaintiffs note again that Defendants did not submit the required affidavit in support of their Motion to Transfer under section 1404(a), which requires movants to list expected witnesses and the subjects of their testimony.

"'almost exclusively [by] the parties' domiciles and the locus of the tort.'" *Id.* (citation omitted). The claims against Defendants are solely New York causes of action sounding in tort. New York courts are therefore "familiar" with the relevant law, and indeed, have a compelling interest in adjudicating these claims in their court system. Again, this factor favors denial of the Defendants' Motion.

7.    <u>The Relative Financial Means of the Parties.</u>

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman*, 30 F. Supp. 2d at 659. Here, all parties are large corporations. Accordingly, this factor weighs neutrally in the overall analysis.

8.    <u>Calendar Congestions and Trial Efficiency.</u>

District courts also look to whether transfer "will prevent duplicative litigation and avoid the risk of inconsistent results." *Id.* at 660. Here, transfer to Delaware will actually increase the likelihood of duplicative litigation, for two reasons. First, Plaintiffs have demanded a jury trial, which the Delaware Bankruptcy Court is not empowered to conduct absent special designation by the district court, and by consent of all parties. *Kerusa Co., LLC v. W10Z/515 Real Estate Ltd.*, No. 04-cv-708(GEL), 2004 WL 1048239, at *6 (S.D.N.Y. May 7, 2004).[14] Wrangling over this aspect of the case would likely result in substantial motion practice and wasted judicial resources, long before the action is actually heard on its merits. Second, Bankruptcy Courts lack jurisdiction to enter final judgment in this action, requiring any decision of the Bankruptcy Court to be reviewed *de novo* by the District Court. *Id.* at *2. This would be the antithesis of judicial economy.

---

[14]  Notably, Defendants have not proffered such consent. Plaintiffs also have not consented.

Finally, one of the factors considered by courts is the existence of similar litigation in the transferee district. *Berman*, 30 F. Supp. 2d at 660, *quoting Connors v. Lexington Ins. Co.,* 666 F. Supp. 434, 455 (S.D.N.Y. 1987) (where pending related litigation involves the same issues, the same allegedly fraudulent transactions and the same defendants, litigation was transferred). Here, the Liquidation Proceeding involves different issues, different parties and different causes of actions. This factor thus weighs heavily in favor of denial of Defendants' Motion.

        9.     <u>The Interests of Justice Generally.</u>

This Lawsuit is strictly a state law matter, involving solely state law causes of action, based on events that occurred in the State of New York. As noted above, to get jurisdiction in this Court, Defendant Impala asserts that it holds potential indemnification claims against Old Winstar, which it argues gives rise to "related to" jurisdiction *vis-à-vis* the Liquidation Proceeding. However, the cited indemnification clause excludes indemnification for "willful misconduct." Def. Mot. Ex. F. Moreover, this case neither involves Old Winstar as a party, nor involves any bankruptcy issues or bankruptcy claims. To then transfer this Lawsuit to a non-related Liquidation Proceeding does not serve the interests of justice. This case turns on Defendants' wrongful conduct in New York, giving rise to New York State law causes of action against Impala and the other Defendants. As such, it should be heard in New York.

Based on the analysis of the nine factors listed above, Plaintiffs respectfully submit that this Court should deny Defendants' Motion to Transfer Venue, and grant Plaintiffs' Motion to Remand that is presently pending before this Court.

## **CONCLUSION**

Plaintiffs reiterate their belief that this Court does not have jurisdiction of the Lawsuit.  If the Court determines that it does have such jurisdiction, then, for the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Transfer Venue.

Dated: New York, New York
      July 19, 2007

Respectfully submitted,

    s/Melissa A. Roover
Alan M. Grayson, Of Counsel
Melissa A. Roover (MR 1163)
GRAYSON & KUBLI, P.C.
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
(703) 749-0000

-and-

s/ Joseph M. Vann
Joseph M. Vann (JMV 7601)
Jed Lewin (JL 2428)
COHEN TAUBER SPIEVACK & WAGNER, LLP
420 Lexington Avenue, 24th Floor
New York, New York  10170
(212) 586-5800

Attorneys for Plaintiffs