**ORAL ARGUMENT REQUESTED**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WINSTAR HOLDINGS, LLC and IDT CORP.,** *Plaintiffs*, - against - **THE BLACKSTONE GROUP L.P., IMPALA PARTNERS, LLC, and CITICORP,** *Defendants.* | **Case No.: 07 CV 4634 (GEL) (AJP)** **ECF CASE** |

**DEFENDANTS' JOINT MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Telephone: (212) 529-1400
Facsimile: (212) 592-1500
Stephen M. Rathkopf
Andrew C. Gold

*Attorneys for Defendant Impala Partners, LLC*

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Yosef J. Riemer
Vickie Reznik
David S. Flugman

*Attorneys for Defendant The Blackstone Group L.P.*

GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Stephen L. Saxl
William Wargo

*Attorneys for Defendant Citigroup Inc., as successor by merger to Citicorp*

# Table of Contents

Page

I THIS COURT HAS JURISDICTION TO ADJUDICATE THE ACTION PURSUANT TO 28 U.S.C. § 1334(b) ....5
A. The Action Gives Rise To "Arising In" Jurisdiction Because It Involves Post-Petition Activities Which Constitute "Core Proceedings" ....7
B. The Action Gives Rise To "Arising Under" Jurisdiction Because It Implicates The Bankruptcy Court's Authority To Oversee The Implementation of the APA And To Interpret The Sale Order, And Because Plaintiffs Consented To Exclusive Jurisdiction ....9
C. Plaintiffs' Action Is "Related To" Winstar's Bankruptcy ....11

II MANDATORY ABSTENTION IS NOT WARRANTED AS ALL OF THE REQUIRED FACTORS HAVE NOT BEEN SATISFIED ....15
A. "Arising In" or "Arising Under" Jurisdiction Renders Mandatory Abstention Inapplicable. ....15
B. The Motion Was Not Timely ....16
C. The Action Involves Federal Law In Addition To State Law ....16
D. The Action May Not Be More Timely Adjudicated In The State Court Rather Than In The Bankruptcy Court ....17

III DISCRETIONARY ABSTENTION OR EQUITABLE REMAND IS NOT WARRANTED ....18
A. Efficient Administration ....19
B. State Law Issues Do Not Predominate ....20
C. The Complaint Does Not Allege Any Complicated State Law Issues ....21
D. Comity Concerns Are Misplaced ....21
E. Judicial Resources ....22
F. The Action Is At The Heart Of The Bankruptcy ....22
G. A Jury Trial Remains Possible ....23
H. All Of The Defendants Consented To The Removal ....24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Agent Systems, Inc. v. Capital Metropolitan Transportation Authority (In re Agent Systems, Inc.)*, 289 B.R. 828 (Bankr. N.D. Tex. 2002) ....................................16

*Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Securities Litigation)*, 311 B.R. 345 (S.D.N.Y. 2003)....................................6, 11, 12

*Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324 (9th Cir. 1986)...........9

*Bethlehem Contracting Company v. Lehrer/McGovern, Inc.*, 800 F.2d 325 (2d Cir. 1986) ....................................18

*Bondi v. Grant Thornton International*, 322 B.R. 44 (S.D.N.Y. 2005)............................15

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ....................................5, 14

*Chambers v. Silliman (In re Bryan)*, 308 B.R. 583 (Bankr. N.D. Ga. 2004).....................16

*Comco Associates v. Faraldi Food Industries Ltd.*, 170 B.R. 765 (E.D.N.Y. 1994) ..........9

*International Fidelity Insurance Co. v. Robb (In re Robb)*, 139 B.R. 791 (Bankr. S.D.N.Y. 1992) ....................................19

*J.D. Marshall International v. Redstart, Inc.*, 74 B.R. 651 (N.D. Ill. 1987) .....................17

*Kerusa, Co. LLC v.W10Z/515 Real Estate Ltd. Partnership*, No. 04 Civ. 708 (GEL), 2004 WL.1048239 (S.D.N.Y. May 7, 2004)....................................11, 22

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail)*, 304 F.3d 223 (2d Cir. 2002)....................................6

*ML Media Partners LP v. Century/ML Cable Venture, (In re Adelphia Communications Corp.)*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002) ...............................15

*Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir. 1995) ....................9

*Nemsa Establishment, S.A. v. Viral Testing Systems Corp.*, No. 95 Civ. 0277 (LAP), 1995 U.S. Dist. LEXIS 11650 (S.D.N.Y. Aug. 14, 1995)..................11, 19, 21

*Neuman v. Goldberg, 159* Bankr. 681 (S.D.N.Y. 1993)....................................20

*New York City Employees' Retirement System v. Ebbers (In re WorldCom Securities Litigation)*, 293 B.R. 308 (S.D.N.Y. 2003)..............................11, 12, 14, 15

*Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)*, 124 F.3d 619 (4th Cir. 1997).....14

*Publicker Industries Inc. v. United States (In re Cuyahoga)*, 980 F.2d 110 (2d Cir. 1992).....11, 12

*Riverside Nursing Home*, 144 Bankr. 951 (Bankr. S.D.N.Y. 1992).....19

*Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792 (Bankr. S.D.N.Y. 2003).....6, 7, 9

*Texaco Inc. v. Sanders (In re Texaco)*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995).....18

*Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir. 1983).....12

*Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.*, 209 B.R. 307 (S.D.N.Y. 1997).....6

*In re United States Lines*, 197 F.3d 631 (2d Cir. 1999).....7

*Unity Natural Foods v. Ridgefield, Inc.*, 35 B.R. 876 (Bankr. N.D. Ga. 1983).....21

*Willcox v. Consolidated Gas Co. of New York*, 212 U.S. 19 (1909).....18

*Senorx, Inc. v. Coudert Brothers, LLP*, No. C-07-1075, 2007 WL. 1520966 (N.D. Cal. May 24, 2007).....22

**FEDERAL STATUTES AND RULES**

11 U.S.C. § 363.....24

11 U.S.C. § 502(e).....15

28 U.S.C. § 157(b).....6, 17

28 U.S.C. § 157(b)(2)(A).....4, 7, 8, 9

28 U.S.C. § 1334.....5, 6, 11, 15, 18, 19

28 U.S.C. § 1452(a).....7

28 U.S.C. § 1452(b).....19

Fed. R. Bankr. P. 9027(e)(3).....4

Defendants Impala Partners, LLC ("Impala"), The Blackstone Group L.P. ("Blackstone"), and Citigroup Inc., as successor by merger to Citicorp ("Citigroup" together with Blackstone and Impala, the "Defendants") respectfully submit this Memorandum of Law in opposition to the motion (the "Remand Motion") by plaintiffs Winstar Holdings, LLC ("New Winstar") and IDT Corp ("IDT," together with New Winstar, the "Plaintiffs") to remand this matter to the New York State Supreme Court or, in the alternative, abstain from hearing this action on the grounds of mandatory or permissive abstention.

**Preliminary Statement**

This is an action in which Plaintiffs allege that they were fraudulently and negligently induced to purchase the business assets of Winstar Communications, Inc. ("Winstar" or the "Debtor") from the bankruptcy estate of Winstar for approximately $40 million in cash pursuant to an Asset Purchase Agreement dated December 18, 2001 (the "APA"). The APA contains a mandatory forum selection clause pursuant to which Plaintiffs consented to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") to hear any dispute arising out of or relating to the APA. (APA Section 9.10.) The APA was approved by the Delaware Bankruptcy Court in an Order dated December 19, 2001 (the "Sale Order") in which the Delaware Bankruptcy Court retained "exclusive jurisdiction" "to . . . resolve any disputes arising under or related to the" APA and to "interpret, implement, and enforce the provisions of the [APA] and the Sale Order."[1]

Plaintiffs allege in their complaint (the "Complaint") that the Debtor itself (although not named as a defendant), as well as its investment advisor (Blackstone) and its restructuring advisor/chief restructuring officer (Impala), both of whose retention was approved

[1] The APA and the Sale Order approving it are attached as Exhibits 1 and 2 to the accompanying Declaration of Andrew C. Gold in Support of Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, dated July 31, 2007 (hereinafter the "Gold Dec.").

by the Bankruptcy Court, made misrepresentations and withheld information which led to Plaintiffs' entering into the APA and purchasing the assets.

This Action is based solely on a transaction that is inextricably linked to the Winstar Bankruptcy Case and the Delaware Bankruptcy Court. Plaintiffs approached the Debtors in Wilmington, Delaware - - just outside the courtroom of the Delaware Bankruptcy Court - - with their offer to purchase Winstar's assets and quickly appeared in the Bankruptcy Court to outline the details of their proposed Agreement. (Gold Dec. Ex. 9 at 17-28.) IDT's counsel made clear to the Bankruptcy Court that "It's an as is, where is acquisition, with no reps and warranties." (Id. at 24). The subsequent APA reflected those terms (and Defendants will rely on IDT's in-court statements and the APA in defending this Action). (APA § 5.10.)

As Plaintiffs acknowledge, the Winstar Bankruptcy Case is still a pending bankruptcy proceeding in the Delaware Bankruptcy Court.[2] Nevertheless, rather than raising these allegations in the Delaware Bankruptcy Court, Plaintiffs attempted to do an end run around the Bankruptcy Court's exclusive jurisdiction by filing this action (the "Action") in New York State Supreme Court, five and one-half years after the bankruptcy sale. The Action asserts claims for the first time against the Debtor's retained advisors, Blackstone and Impala, and a creditor (Citigroup) of the Debtor, claiming that entering into the APA damaged Plaintiffs to the tune of $300 million (approximately eight times the cash actually paid by Plaintiffs for the assets purchased). Plaintiffs assert that this is a purely state law matter involving Defendants' alleged wrongful conduct in New York, with no connection to the Delaware Bankruptcy Court. (Pl. mem. at pp. 9.) Indeed, Plaintiffs consistently assert that this case neither involves Winstar as a party, nor involves any bankruptcy issues or bankruptcy claims. (Pl. mem. at pp. 2, 8, 9, 15, and

[2] *In re* Winstar Communications, Inc., et al. Case No. 01-1430 (KJC) (the "Winstar Bankruptcy Case").

21.) Yet Plaintiffs allege throughout the Complaint that the Debtor made the misstatements and omissions for which Plaintiffs sue the named Defendants.

Despite the fact that Plaintiffs consented to the exclusive jurisdiction of the Bankruptcy Court in the APA and the Bankruptcy Court retained exclusive jurisdiction in the Sale Order, Plaintiffs' Remand Motion simply ignores that these facts provide this Court with "arising in" and "arising under" jurisdiction over this matter pursuant to 28 U.S.C. § 1334.[3] Rather, the Remand Motion solely addresses whether or not this Court has "related to" jurisdiction.

Plaintiffs likewise ignore many of the key indisputable facts that give rise to "arising in" or "arising under" jurisdiction in this Action. For example:

- Plaintiffs fail to mention the Delaware Bankruptcy Court Order approving the sale, or that the Bankruptcy Court retained "<u>exclusive jurisdiction</u>" to . . . resolve any disputes arising under or related to the Asset Purchase Agreement," (Sale Order ¶ 15(c)), and thus preserved its core jurisdiction to adjudicate this dispute;

- The Bankruptcy Court also retained "exclusive jurisdiction to "interpret, implement, and enforce the provisions of the Asset Purchase Agreement," (Sale Order ¶ 15(d)), as will be required in this Action, in which Plaintiffs seek, *inter alia*, to hold Defendants liable for alleged misrepresentations and omissions by the Debtor and its advisors;

- Plaintiffs ignore the fact that this matter involves the <u>post-petition</u> purchase of assets through the APA and that they consented in the APA (Section 9.10) to the "<u>exclusive jurisdiction</u> of the Bankruptcy Court. . . over any dispute arising out of or relating to this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith or any of the transactions contemplated hereby or thereby";

- Plaintiffs ignore their own allegations of misrepresentations and material omissions by <u>the Debtor</u> (<u>see, e.g.</u>, Complaint ¶¶ 28, 29, 31 & 33), and the obvious impact of this Action on the administration of the Debtor's estate, including the financial ramifications of the indemnities (which began as soon as Defendants incurred attorneys' fees in this Action), the possibility of third-

---

[3] Indeed, while Plaintiffs repeatedly assert that Defendants removed solely on the grounds of "related to" jurisdiction, in fact the Notice of Removal invoked "core jurisdiction" as grounds for removal of this Action. <u>See, e.g.</u>, Notice of Removal, ¶¶ 13-16.

party claims against the Debtor's estate, and the necessity for substantial discovery against the Debtor if the Action survives initial motion practice; and

- Plaintiffs ignore that this Action "concerns the administration" of the Winstar estate and thus comes within the core jurisdiction of the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(A).

Contrary to Plaintiffs' assertions, because Impala and Blackstone have contractual indemnities from Winstar, this Court also has "related to" jurisdiction. (Gold Dec. Exs. 3 & 4.) First, the right of indemnification arose as soon as Impala and Blackstone began incurring attorneys' fees in connection with this Action. Second, Plaintiffs' claims are not limited to "willful misconduct," but include negligent conduct, and, in any event, there is a right to indemnity unless and until "willful misconduct" is proven. Third, the indemnification will impact the Winstar Bankruptcy Case because the Winstar Chapter 7 Trustee has recovered a $300 million judgment (the "Judgment") (Gold Dec. Ex. 5) against Lucent Technologies, Inc. ("Lucent") - - a fact about which Plaintiffs fail to inform the Court. The Judgment has been affirmed by the United States District Court for the District of Delaware. (Gold Dec. Ex. 6.) Lucent has appealed the judgment to the Third Circuit Court of Appeals and has provided the Trustee with a $300 million letter of credit to bond the Judgment. Thus, with two courts already having ruled in the Winstar Trustee's favor and a $300 million letter of credit to look to, there is a significant likelihood that there will be substantial funds to be distributed to Winstar's creditors and, accordingly, the indemnities will have a real effect on the Winstar Bankruptcy Case.

Plaintiffs' request for mandatory abstention is likewise unwarranted in this case as all of the required factors have not been satisfied. As noted above, Plaintiffs' claims "arise in" a case under the Bankruptcy Code and "arise under" the Bankruptcy Code, making mandatory abstention inapplicable. In addition, Plaintiffs failed to file a "timely" abstention motion in accordance with Federal Rule of Bankruptcy Procedure 9027(e)(3). Moreover, because this Action involves federal and bankruptcy law issues and is intertwined with the efficient resolution

of the pending bankruptcy proceedings, timely adjudication of this action will more appropriately take place in Delaware Bankruptcy Court. Plaintiffs' failure to establish any one of these factors is sufficient to deny their request for mandatory abstention.

As set forth below, most if not all of the relevant factors weigh against this Court's exercise of permissive abstention or equitable remand. Importantly, a number of defenses on the merits will relate to the terms and provisions of the Sale Order and APA and their interpretation by the Delaware Bankruptcy Court, including what was said on the record at the sale hearing. Furthermore, Plaintiffs do not cite a single case where permissive abstention occurred in a case where the Bankruptcy Court retained exclusive jurisdiction in a still pending bankruptcy case and Defendants do not believe such a case exists. As the Court is aware, Defendants have asked this Court to transfer this matter to the Delaware Bankruptcy Court which retained exclusive jurisdiction over the claims asserted. Thus in petitioning this Court to remand, Plaintiffs are in effect asking the Court to ignore the Delaware Bankruptcy Court's own retention of exclusive jurisdiction. This request by Plaintiffs can only be made to the Delaware Bankruptcy Court itself.

For all of these reasons, Plaintiffs' Motion to Remand should be denied and this Action should be transferred to the United States District Court for the District of Delaware, for referral to the Delaware Bankruptcy Court.

## I THIS COURT HAS JURISDICTION TO ADJUDICATE THE ACTION PURSUANT TO 28 U.S.C. § 1334(b)

The jurisdiction of the bankruptcy court is delineated in 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all proceedings arising under title 11, or arising in or related to cases under title 11." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).

Section 1334 provides the jurisdictional basis for removal of an action pursuant to 28 U.S.C. § 1452(a). District courts (and bankruptcy courts) may exercise three types of jurisdiction pursuant to the statute. They are "arising under" and "arising in" jurisdiction, which courts regard as a type of federal question jurisdiction, and "related to" jurisdiction. Sterling Vision, Inc. v. Sterling Optical Corp. (*In re* Sterling Optical Corp.), 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). A bankruptcy judge may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11 but may only hear a "non-core" proceeding if it is "related to" a bankruptcy action. Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc., 209 B.R. 307, 310-11 (S.D.N.Y. 1997). The Second Circuit has construed a bankruptcy court's core jurisdiction "as broadly as possible" so as to be "close to or congruent with constitutional limits." Luan Investment S.E. v. Franklin 145 Corp. (*In re* Petrie Retail), 304 F.3d 223, 229 (2d Cir. 2002) (internal quotations and citations omitted). This jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings." Id.

Here, although Plaintiffs' claims are nominally state law claims and they have failed to name the Debtor as a party,[4] the nature of the proceedings and the relief requested nevertheless provide this Court with "arising in," "arising under," and "related to" jurisdiction over this action, pursuant to 28 U.S.C. § 1334(b). First, this action "arises in" a case under Title 11 because (i) the Bankruptcy Court retained exclusive jurisdiction, (ii) it involves the post-petition sale by the Debtor of its assets, (iii) it concerns the administration of the Winstar estate - all of which constitute "core proceedings" under 28 U.S.C. § 157(b). Second, this Action "arises under" Title 11 because it not only implicates the Bankruptcy Court's authority to oversee the implementation of the APA and to interpret the Sale Order (in adjudicating the claims and

[4] Indeed, the Remand Motion should be denied if for no other reason than, as this Court has already ruled, that a plaintiff will not be permitted to engage in this type of procedural chicanery in order to avoid bankruptcy court jurisdiction. Beightol v. UBS Painewebber (*In re* Global Crossing, Ltd. Securities Litigation), 311 B.R. 345 (S.D.N.Y. 2003).

defenses and this Action) as a core proceeding, but because the Plaintiffs specifically consented to exclusive Bankruptcy Court jurisdiction in the APA. Third, at a minimum, this Action is "related to" a case under Title 11 because it will have a conceivable impact on the handling and administration of the bankrupt estate in light of the significant damages requested by Plaintiffs coupled with the Debtors' ongoing indemnification obligations to Defendants Impala and Blackstone as a result of this Action.

**A. The Action Gives Rise To "Arising In" Jurisdiction Because It Involves Post-Petition Activities Which Constitute "Core Proceedings."**

This Action "arises in" the ongoing Winstar Bankruptcy Case and thus remand should be denied. First, the Delaware Bankruptcy Court retained "exclusive jurisdiction" to adjudicate disputes relating to the APA in the Sale Order. (Sale Order ¶ 15.) The sale arose in the Winstar Bankruptcy and the Delaware Bankruptcy Court in the Bankruptcy Case preserved its jurisdiction over such claims. For this reason alone, "arising in" jurisdiction exists. Moreover, Plaintiffs themselves consented to exclusive Bankruptcy Court jurisdiction in the APA. (APA § 9.10.)

Second, this Action involves claims arising from a contract and involves only post-petition conduct by the Debtor and its retained advisors and post-petition creditor. A claim "arises in" bankruptcy if, by its very nature, the claim has no existence outside of bankruptcy. Sterling, 302 B.R. at 801. In addition, a threshold question in determining if a contractual dispute is core (and thus "arises in" the bankruptcy by its timing is whether the contract was formed post-petition, not whether the cause of action accrued post-petition. *In re* United States Lines, 197 F.3d 631, 637-638 (2d Cir. 1999). The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under 28 U.S.C. § 157(b)(2)(A). Id. Here, the Action could not have existed outside of the Winstar Bankruptcy Case because it involves a contract and a sale that took place within the Winstar Bankruptcy Case.

In addition, the contract and all of the facts relevant to Plaintiffs' claims arose post-petition. These include the retention of Impala, the retention of Blackstone, the alleged misrepresentations, omissions and negligence, and the ultimate sale. Moreover, all of the relevant aspects of Plaintiffs' claims arose post petition.[5] For example, Plaintiffs allege that Impala and Blackstone's retention, which occurred post-petition, gave rise to transaction fees and related expenses that motivated Defendants to fraudulently misrepresent the Debtor's assets. (Compl. at ¶ 14, 17.) Likewise, Plaintiffs allege that the misrepresentations and omissions that induced them to enter into the APA took place within the context of the auction and bidding process for the Debtor's assets and the due diligence process conducted in connection therewith -- all of which took place post-petition. (Compl. at ¶ 22.) Moreover, Plaintiffs allege that the ultimate sale of the Debtor's assets, pursuant to the APA reviewed and approved by the Bankruptcy Court, was the result of fraud. (Compl. at ¶ 60.) Because Plaintiffs allege that they were fraudulently and negligently induced by the Debtor and its retained advisors into the court-approved post-petition purchase of the Debtor's assets "arising in" jurisdiction exists.

Third, this Action "concerns the administration" of the Debtor's estate, and thus comes within the core jurisdiction of the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(A). The claims at issue turn on the conduct of the Debtor and its retained advisors during the Winstar Bankruptcy Case and in connection with a Bankruptcy Court-approved transaction. Moreover, if the Complaint survives initial motion practice, the Action will require substantial discovery against the Debtor, as it involves the nature and scope of the information provided by the Debtor to Plaintiffs in connection with the APA (Compl. at ¶ 22.) In addition, Blackstone and Impala have claims for contractual indemnification from the Debtor (including for attorneys' fees

[5] This matter is distinguishable from Global Crossing and WorldCom, in which suits were commenced against officers and directors of those companies for pre-petition securities fraud and other pre-petition defalcations. Those actions could have been maintained independent of any bankruptcy proceeding and were not predicated on alleged actions taken post-petition by retained professionals in connection with bankruptcy-related transactions.

incurred) and Defendants may assert third-party claims against the Debtor to the extent that any of the alleged misrepresentations were made by any of the Debtor's officers, directors, or employees.

For all these reasons, the Court has "arising in" jurisdiction.

**B. The Action Gives Rise To "Arising Under" Jurisdiction Because It Implicates The Bankruptcy Court's Authority To Oversee The Implementation of the APA And To Interpret The Sale Order, And Because Plaintiffs Consented To Exclusive Jurisdiction.**

The Court also has "arising under"[6] jurisdiction over this Action because it will be necessary for the Delaware Bankruptcy Court to interpret the Sale Order. "Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner. Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented." Beneficial Trust Deeds v. Franklin (*In re* Franklin), 802 F.2d 324, 326 (9th Cir. 1986).

The Sale Order specifically provides that the Delaware Bankruptcy Court retains "exclusive jurisdiction to. . . resolve any disputes arising under or related to the APA" (Sale Order ¶ 15) and that its provisions "inure to the benefit of . . . creditors . . . and any affected third parties . . ." (Sale Order ¶ 17.)

Thus, the court which tries this Action will be called upon to review and construe the Sale Order and APA and all of the attendant findings, covenants and determinations of law contained therein. Provisions of the APA will necessarily be raised in defense of this action. For example, the effect of the merger provision (APA § 9.13), "survival of the representations"

---

6 "Arising under" jurisdiction relates to federal question claims of a particular type - those federal questions that have their origin in Title 11 of the United States Code - i.e., the Bankruptcy Code - and rest on provisions of Title 11 Sterling, 302 B.R. at 801. Claims that arise under Title 11 are deemed to be core proceedings. Maitland v. Mitchell (*In re* Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995). "Arising under" jurisdiction can exist where the Debtor is not named as a party. See, e.g., Comco Associates v. Faraldi Food Industries Ltd., 170 B.R. 765, 772 (E.D.N.Y. 1994).

provision (APA § 9.3), and the "as is/where is" provision (APA § 5.10) will be at issue in the substance of this case. The court will also be asked to interpret the Delaware Bankruptcy Court's findings of fact contained in the Sale Order. For example, the Court found: (a) "Each of the Sale, the Management Agreement and the Asset Purchase Agreement were negotiated, proposed and agreed to by the Debtors and the Buyer as parties thereto without collusion, in good faith, and from arm's-length bargaining positions." (Sale Order ¶ G); and (b) "The consideration provided by the Buyer for the Purchased Assets (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets and (iii) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative." (Sale Order ¶ H; see also ¶ 10.) The Delaware Bankruptcy Court which approved the Sale Order and the APA, and has overseen the sale and lived through the Winstar Bankruptcy, is the best forum to interpret and apply the Sale Order and APA provisions.

Additionally, Plaintiffs consented to the Delaware Bankruptcy Court's exclusive jurisdiction "over any dispute arising out of or relating to" the APA. (APA § 9.10.) Plaintiffs should not be relieved of this contractual provision merely because they made the strategic decision not to name the Debtor as a party defendant while at the same time alleging that the Debtor engaged in the same actionable conduct as Impala and Blackstone. Indeed, provisions of the Sale Order are clearly not limited to actions between Plaintiffs and the Debtor but encompass Citigroup, a "creditor," and any "affected third party." This language is surely broad enough to encompass Impala and Blackstone, both of whom were the Debtor's retained professionals and both of whom have been sued in connection with the services rendered on behalf of the Debtor in connection with the Winstar Bankruptcy Case. Indeed, suing Impala, the Debtor's chief restructuring officer, is essentially the equivalent of suing the Debtor.

### C. Plaintiffs' Action Is "Related To" Winstar's Bankruptcy.

As noted earlier, in the Remand Motion the Plaintiffs do not even address the fact that the Action falls under the "arising in" and "arising under" jurisdiction provisions of 28 U.S.C. § 1334. Although any one basis is sufficient, Plaintiffs only address the "related to" basis for jurisdiction.

Plaintiffs' claims are "related to" the Winstar Bankruptcy Case as they will have a "conceivable effect" on the Winstar estate. 28 U.S.C. § 1334(b) confers upon this Court original, but not exclusive, jurisdiction of all civil proceedings related to cases under title 11. Although 28 U.S.C. § 1334(b) does not provide a definition for "related to" actions,[7] the Second Circuit applies the following test to determine if a third party action is related to a bankruptcy proceeding:

> The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any *"conceivable effect"* on the bankruptcy estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court. (Emphasis supplied.)

Publicker Industries Inc. v. United States (*In re* Cuyahoga), 980 F.2d 110, 114 (2d Cir. 1992). See also Kerusa, Co. LLC v.W10Z/515 Real Estate Ltd. Partnership, No. 04 Civ. 708 (GEL), 2004 WL1048239 at *3 (S.D.N.Y. May 7, 2004) (claims against non-debtor were clearly "related to" bankruptcy case because they likely give rise to contribution or indemnity claims); *In re* Global Crossing, 311 B.R. at 347 (potential claim for contribution against debtor has a conceivable effect on bankrupt estate); New York City Employees' Retirement System v. Ebbers (In re WorldCom Securities Litigation), 293 B.R. 308, 317-24 (S.D.N.Y. 2003).

---

[7] Nemsa Establishment, S.A. v. Viral Testing Systems Corp., No. 95 Civ. 0277 (LAP), 1995 U.S. Dist. LEXIS 11650, at *5, 6 (S.D.N.Y. Aug. 14, 1995).

Plaintiffs cite only the "significant connection" test set forth in Turner v. Ermiger (*In re* Turner), 724 F.2d 338 (2d Cir. 1983). But that test was redefined by the Second Circuit in *In re* Cuyahoga, 980 F.2d at 114 (2d Cir. 1992) in favor of the "conceivable effect" test. As this Court and the WorldCom court recognized, an action is related to a bankruptcy proceeding if it "in any way impacts on the handling and administration of the bankruptcy estate." Global Crossing, 311 B.R. at 345 (quoting WorldCom, 293 B.R. at 317).

The Court's analysis in Global Crossing is particularly on point. In finding that the Court had jurisdiction of a suit originally filed in state court, the Court found that "litigation against an officer of a bankrupt corporation which could lead to a contribution claim would certainly have a 'conceivable effect' on the bankrupt estate." Id. at 347. As with the potential contribution claims in Global Crossing, so too could Impala and Blackstone's contractual indemnity claims[8] against the Debtor have a "conceivable effect" on the Winstar Bankruptcy Case. Indeed, Plaintiffs seek the not insignificant sum of $300 million in damages. This figure is, coincidentally, the approximate amount of the Judgment that Plaintiffs fail to mention in the Remand Motion.

Plaintiffs raise three grounds as to why they believe the Impala and Blackstone indemnities do not provide a basis for "related to" jurisdiction: first, that the indemnities exclude indemnification for "willful misconduct;" second, that the Defendants have not established that creditors will receive anything in the Winstar Bankruptcy Case and therefore even if the Debtor is liable under the indemnifications it will have no effect on the Winstar estate; and third, that Defendant have only a "potential" claim for indemnification.

Plaintiffs' repeated assertion that the Complaint alleges only "willful misconduct" is demonstrably false. Plaintiffs simply ignore that their own Complaint in this Action seeks

[8] As Chief Restructuring Officer, Impala would have a contribution claim regardless of the contractual indemnity since Plaintiffs have alleged that the Debtor also made misrepresentations to Plaintiffs.

damages not only for fraud, but for negligent misrepresentation and negligence as well. (Compl., Third and Fourth Causes of Action).[9] These negligence claims, if proven, are indisputably covered by Blackstone's indemnification agreement ("we will not, however be liable for any losses.... that are finally determined.... to have primarily resulted from bad faith, gross negligence or willful misconduct of Blackstone.") (Gold Dec., Ex. 4 at ¶ 1). In addition, the Impala (Gold Dec., Ex. 3 at ¶ 2) and Blackstone (Gold Dec., Ex. 4 at ¶ 1) indemnities require the Debtor to reimburse Impala and Blackstone for all reasonable legal and other expenses, as incurred, regardless of the nature of the allegations at issue.

Moreover, Plaintiffs cannot at this stage of the litigation invoke these indemnification exceptions simply by pointing to their own allegations of willful misconduct, because they are at this point unproven. The indemnities apply unless and until there is a final determination of "willful misconduct." As stated in WorldCom:

> The argument that any claim for contribution or indemnification must be reduced to judgment to provide a basis for jurisdiction can be swiftly rejected. The *Pacor* standard, including the language cited with apparent approval by the Supreme Court in *Celotex*, 514 U.S. at 208 n. 6, 115 S.Ct. 1493, does not require the level of certainty that NYCERS proposes. If the litigation against the NYCERS Director and Underwriter Defendants had already concluded and resulted in a judgment against them, then the effect of their contribution claims on the bankruptcy proceeding would not simply be "conceivable," it would be certain and quantifiable.

WorldCom, 293 B.R. at 322.

Second, Plaintiffs have not cited even a single authority for the novel (and erroneous) proposition that in order to invoke "related to" jurisdiction, Defendants must prove that there will be a distribution to creditors which may be affected by this Action. In any case, Plaintiffs conveniently ignore the fact that the Trustee *has* obtained the Judgment. (Gold Dec.

---

[9] Although Impala's indemnity excludes both fraud and negligence, Impala is still entitled to be reimbursed its legal fees as incurred in this matter. Those fees will be substantial as this matter progresses to possible trial. The payment of those fees will have a "conceivable effect" on the Winstar Bankruptcy Case.

Ex. 5.) At a bare minimum, because of the Judgment, the resolution of Plaintiffs' claims will directly affect the estate, including whether or not there will be less money available for distribution to the Debtor's creditors.

Finally, in footnote 8 of their Memorandum, Plaintiffs raise three additional reasons why the indemnities supposedly cannot support "related to" jurisdiction: first, that the indemnity claims do not accrue until payment; second, that Bankruptcy Code section 502(e) prohibits claims that are contingent and that the indemnity is such a claim until liquidated; and third, that Impala failed to file a claim for indemnification prior to the deadline in the administrative bar order entered in June 11, 2002 (the "2002 Bar Order") (Gold Dec. Ex. 7.)

The first two of these arguments were addressed and rejected by the WorldCom court. The court found -- as logic dictates -- that a contribution claim which is similar to an indemnification claim need not be liquidated to have a "conceivable effect" on the bankruptcy proceedings. WorldCom, 293 B.R. at 321-322. The court stated that if an indemnity claim were liquidated it would not be "conceivable," rather, "it would be certain and justifiable." Id. WorldCom also rejected the argument that the bar against contingent claims in Bankruptcy Code § 502(e) prevents a finding of "related to" jurisdiction. The court found that "claims that are contingent today nonetheless have a 'conceivable' effect on the bankruptcy." Id. at 323. See also Owens-Illinois, Inc. v. Rapid American Corp. (*In re* Celotex Corp.), 124 F.3d 619, 626 (4th Cir. 1997).

As to the third argument in footnote 8, Plaintiffs' argument that Impala and Blackstone are barred from seeking indemnification based on this action because they did not file a claim prior to the Bar Order is nonsense. The Bar Order itself applies only to administrative claims "which arose or accrued on and between April 18, 2001 and January 24, 2002." Clearly, this Action was not commenced during that period and, accordingly, Impala and Blackstone

would have had no reason to file a proof of claim. Plaintiffs cannot wait four years after the Bar Order to bring this Action and then claim that Impala and Blackstone's indemnities are invalid because they did not file indemnity claims in 2002 for a then non-existent action.[10]

## II MANDATORY ABSTENTION IS NOT WARRANTED AS ALL OF THE REQUIRED FACTORS HAVE NOT BEEN SATISFIED.

If, as Defendants submit, this Court has "arising in" and/or "arising under" jurisdiction, it is undisputed that this Court cannot abstain from hearing this Action under 28 U.S.C. § 1334(c)(2).[11] Indeed, given the Bankruptcy Court's retention of exclusive jurisdiction, mandatory abstention would make no sense here.

Under 28 U.S.C. § 1334(c)(2), commonly referred to as a "mandatory abstention provision," the party seeking mandatory abstention must show that: (1) the abstention motion was "timely" brought; (2) the action is based upon a state law claim; (3) the action is "related to" a bankruptcy proceeding, as opposed to "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the Action is Section 1334; (5) there is an action "commenced" in state court; and (6) the action is capable of being "timely adjudicated" in state court. ML Media Partners LP v. Century/ML Cable Venture, (*In re* Adelphia Communications Corp.), 285 B.R. 127, 140-141 (Bankr. S.D.N.Y. 2002). A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements. WorldCom, 293 B.R. at 331. Here, Plaintiffs fail to meet at least four of the statutory requirements.

### A. "Arising In" or "Arising Under" Jurisdiction Renders Mandatory Abstention Inapplicable.

---

[10] Impala and Blackstone have in fact notified the Chapter 7 Trustee of their indemnification claims. (Gold Dec. Ex. 8).

[11] As a threshold matter, making a motion to abstain is a prerequisite to obtaining abstention under section 1334(c)(2). Bondi v. Grant Thornton Int'l, 322 B.R. 44, 49 (S.D.N.Y. 2005). Remand is not the same as abstention. Id. at 49. The Plaintiffs couched the Remand Motion as a motion for remand to the State Court. Although Plaintiffs request abstention in their Memorandum of Law, procedurally, no motion for abstention has been made.

As to the third factor, Plaintiffs assert that the action does not "arise under" the Bankruptcy Code or "arise in" the Winstar Bankruptcy Case. The Plaintiffs base their argument on the assertion that Impala's sole basis for removal was "related to" jurisdiction resulting from the Debtor's indemnification. However, as set forth above, the Plaintiffs disregard and fail to address that removal is also appropriate because this Court has "arising in" and "arising under" jurisdiction. This alone disposes of the argument for mandatory abstention.

**B. The Motion Was Not Timely.**

Plaintiffs' motion was not timely made. Federal Rule of Bankruptcy Procedure 9027(e)(3) requires that Plaintiffs, within 10 days of the removal, file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim the proceeding is core or non-core. Plaintiffs never filed such statement. Therefore, Plaintiffs "effectively waived any right [they] may have had to seek abstention." Agent Systems, Inc. v. Capital Metropolitan Transportation Authority (*In re* Agent Systems, Inc.), 289 B.R. 828, 835 (Bankr. N.D. Tex. 2002); also Chambers v. Silliman (*In re* Bryan), 308 B.R. 583, 586 (Bankr. N.D. Ga. 2004.) ("Plaintiffs' failure to file that statement constitutes a waiver.")

**C. The Action Involves Federal Law In Addition To State Law.**

The Action involves federal bankruptcy law in addition to state law claims. Each of the underlying issues must be examined in the context of the Winstar Bankruptcy Case. For instance, the Plaintiffs' allegations revolve around the sale transaction, the APA and the corresponding Sale Order, which invoked various sections of the Bankruptcy Code. The Plaintiffs again fail to acknowledge that the Sale Order contains findings of fact and law with regard to the sale process and the conduct of the parties, all of which will necessarily need to be addressed in the context of this litigation. For example, Paragraph G of the Sale Order, states, inter alia, that the APA and related agreements were "negotiated, proposed and agreed to by the

Debtors and the Buyer as parties thereto without collusion, in good faith, and from arm's-length bargaining positions." These findings premised upon Bankruptcy Code provisions will be part of the defense to the Action.

**D. The Action May Not Be More Timely Adjudicated <u>In The State Court Rather Than In The Bankruptcy Court.</u>**

The Action may not be more timely adjudicated in the state court rather then the Bankruptcy Court. Courts routinely examine the following factors in connection with timely adjudication: 1) backlog of the state's court calendar, 2) status of the bankruptcy proceeding, 3) complexity of the issues, and 4) whether the state court proceeding would prolong the administration or liquidation of the estate. <u>J.D. Marshall Int'l v. Redstart, Inc.</u>, 74 B.R. 651, 654-655 (N.D. Ill. 1987). Here, Plaintiffs do not offer any factual basis for their assertion that the Action can be more timely adjudicated in state court than the Bankruptcy Court, other than that the New York Supreme Court Commercial Division maintains a specialized, fast docket. But even in that docket, a fraud or negligence case still takes several years to be adjudicated *via* a trial on the merits. The plain truth is that the Bankruptcy Court is fully familiar with all the underlying facts at bar, including the negotiations of the APA. An adversarial proceeding in that court will be determined on the merits much more quickly than a state court action. Additionally, because Plaintiffs' $300 million damage claim against Blackstone and Impala – both indemnified by Debtor (Impala to the extent of legal fees) -- will substantially impact the rights of the other existing creditors in the pending Winstar Bankruptcy Case to the proceeds of the Judgment and other bankruptcy assets, the Bankruptcy Court, and the other creditors, may require that this proceeding be determined on a fast track basis in order that all creditors receive distributions sooner, rather than later.

Ultimately, the Bankruptcy Court possesses a strong incentive to move the matter quickly along so as to further the Debtor's ability to make distributions to creditors. The New

York State Court does not share such a concern and, accordingly, the Action is more likely to be prolonged in the state court forum.

Because Plaintiffs fail to meet at least four of the statutory requirements for mandatory abstention, this Court should continue to exercise jurisdiction over this Action.

## III DISCRETIONARY ABSTENTION OR EQUITABLE REMAND IS NOT WARRANTED.

Finally, Plaintiffs alternatively seek abstention pursuant to section 1334(c)(1).[12] This portion of the statute permits discretionary abstention in the interest of justice, comity with state courts or respect for state law. Here, where the Bankruptcy Court retained exclusive jurisdiction and the subject of the lawsuit is so closely intertwined with the federal bankruptcy proceedings, discretionary abstention is certainly not warranted. Indeed, this court is not being asked to hear this matter. Defendants have requested transfer to the Delaware Bankruptcy Court which retains exclusive jurisdiction under these circumstances. That Plaintiffs even request discretionary abstention is absurd given the retention of jurisdiction by the Delaware Bankruptcy Court. Plaintiffs fail to cite any authority where a District Court has abstained in a matter where a bankruptcy court has retained exclusive jurisdiction and the Defendants do not believe such a case exists.

The United States Supreme Court has stated that the federal courts should be "sparing" in their exercise of discretionary abstention. Texaco Inc. v. Sanders (*In re* Texaco), 182 B.R. 937, 946-947 (Bankr. S.D.N.Y. 1995) (quoting Willcox v. Consolidated Gas Co. of New York, 212 U.S. 19, 40 (1909) (acknowledging that if a litigant properly turns to a federal court to adjudicate an issue it is the Federal Court's "duty to take such jurisdiction" also Bethlehem Contracting Company v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir. 1986) (if a "federal court properly has subject matter jurisdiction it has a 'virtually unflagging obligation'

[12] This request is procedurally defective for the same reasons set forth in footnote 11, supra.

to exercise that jurisdiction even if an action concerning the same matter is pending in state court"); International Fidelity Insurance Co. v. Robb (*In re* Robb), 139 B.R. 791, 796 (Bankr. S.D.N.Y. 1992). As set forth below, Plaintiffs fail to demonstrate any reason why this Court should abstain from taking jurisdiction over the Action.

Plaintiffs also argue for equitable remand pursuant to 28 U.S.C. § 1452(b), which authorizes a federal court to remand a case on any equitable ground. The factors relevant to such a determination are: 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of a right to a jury trial; 7) the prejudice to the involuntarily removed defendants; and 8) waste of judicial resources. Nemsa, 1995 U.S. Dist. LEXIS 11650, at *21-22.

Courts routinely consider the same factors when deliberating over a request for discretionary abstention and in deciding equitable remand. Id. at *28. See also Riverside Nursing Home, 144 Bankr. 951, 957 (Bankr. S.D.N.Y. 1992) (finding that the equitable grounds that warrant a decision to remand under 28 U.S.C. §1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c)). As set forth below, Plaintiffs cannot satisfy the requirements for equitable remand and permissive abstention, and this request should be denied.

**A. Efficient Administration.**

Plaintiffs argue that Defendants have not established that the Action will have any effect on the Winstar Bankruptcy Case. In doing so, Plaintiffs ignore that the Winstar Bankruptcy Case is still an ongoing matter. The Trustee is actively engaged in many actions seeking to recover assets, including the litigation resulting in the Judgment against Lucent. The

Trustee will also have to reconcile, through litigation or otherwise, the substantial claims brought in the Winstar Bankruptcy Case. This Action, if successful, could result in a potential $300 million indemnification claim that will significantly reduce, if not eliminate, distributions to Winstar's creditors and significantly affect the administration of the Winstar Bankruptcy Case. Thus, the Winstar Bankruptcy Case will effectively be put on hold pending the determination of this Action. There will be no administration of the Winstar Bankruptcy Case, much less "efficient" administration if the Action proceeds in New York State Court because, at a minimum the Trustee will not be able to make distributions to creditors or to close the Winstar Bankruptcy Case until after the Action and any state court appeals thereof are determined.

**B. State Law Issues Do Not Predominate.**

Second, the Plaintiffs assert that this Action should be remanded to State Court just because the action involves issues of state law. While that is a factor to be considered, it alone is not sufficient to support remand. See, e.g., Neuman v. Goldberg, 159 Bankr. 681, 688 (S.D.N.Y. 1993) (opining that the fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex).

Here, although the underlying causes of action are state law claims of fraud and negligence, the defenses to the Action will necessarily involve federal law issues. Specifically, the defenses will rely in part on the interpretation of the APA and the factual and legal findings of the Delaware Bankruptcy Court contained in the Sale Order approving the APA. Furthermore, the alleged fraud was committed in connection with a bankruptcy sale, the procedures for which are governed by the Bankruptcy Code and Rules. The Delaware Bankruptcy Court, not the New York State Court, is the tribunal more suited to interpret the APA

and Sale Order and to determine whether or not fraud was committed in connection with the sale if approved.

**C. The Complaint Does Not Allege Any Complicated State Law Issues.**

The Complaint alleges fraud and negligence neither of which present novel or complex issues of law. In an attempt to avoid this fact, Plaintiffs make an argument that they will not know the complexity of the claims until they take discovery. Under well settled law, in order to support discretionary abstention, Plaintiffs must explain why the state law claims they assert are unsettled or complex. Failure to do so "significantly undercuts the degree to which the state law factor weighs in favor of remand to the New York courts." See Nemsa, 1995 U.S. Dist. LEXIS 11650, at *23.

In addition, the issues of fraud and negligence alleged in the Complaint are ones with which the Bankruptcy Court is fully familiar. See Unity Natural Foods v. Ridgefield, Inc. 35 B.R. 876, 879 (Bankr. N.D. Ga. 1983) (noting that the matter involved "application of state contract and commercial law which commonly arises in the bankruptcy court as the bankruptcy court deals with business debtors on a daily basis" and that the case "simply requires the bankruptcy court to interpret the bargain between the parties and to assess the damages for any breach thereof as is determined by the application of well-settled state law.") And, in this case, as set forth above, any alleged wrongdoing took place in part in the Bankruptcy Court itself. Thus, Plaintiffs fail to meet this element for discretionary abstention.

**D. Comity Concerns Are Misplaced.**

Fourth, given the history underlying this Action and the Bankruptcy Court's role and preservation of exclusive jurisdiction, supposed comity concerns are misplaced.

Plaintiffs rely heavily on this Court's decision in Kerusa, 2004 WL1048239 at *6, to support their comity argument. Kerusa is not helpful to Plaintiffs. The underlying facts in Kerusa involved the pre-petition construction of a residential apartment building located in New York City. These facts and the legal issues that needed to be resolved were applicable solely to the residents of New York City because they involved unique "local matters of real estate development" and affected the health and safety of the specific residents of the building. Id., at *5. In contrast, this Action involves nothing other than fraud and negligence claims asserted by a Delaware corporation (IDT) arising out of a Delaware Bankruptcy proceeding. Moreover, as noted above, the Bankruptcy Court's interest in this case is significant in light of the effect it will have on the Bankruptcy Court's previous Sale Order and the ongoing Winstar Bankruptcy Case. Indeed, if anything the Delaware Bankruptcy Court certainly has more of an interest then the New York State Courts in ensuring that its sales are free from fraud. New York State has no special interest in these causes of action or the facts of this case.

**E. Judicial Resources.**

An additional factor considered by courts to determine if abstention is appropriate is the possible waste of judicial resources. Removal of the Action occurred almost immediately after the initiation of the Action. As such, the New York State Court had not yet proceeded in any way, and no resources were expended by the New York State Court in this matter. Accordingly, there is no concern that judicial resources were wasted. See, e.g., Senorx, Inc. v. Coudert Brothers, LLP, No. C-07-1075, 2007 WL 1520966, at *3 (N.D. Cal. May 24, 2007) quoting H.J. Rowe, Inc. v. Sea Products, Inc. (*In re* Talon Holdings, Inc.), 221 B.R. 214, 220 (Bankr. N.D. Ill. 1998) (opining that at the time of removal, the proceedings were not sufficiently advanced such that concerns for comity and waste of judicial resources are implicated).

**F. The Action Is At The Heart Of The Bankruptcy.**

Sixth, for all of the reasons set forth above, the Action is at the heart of the existing Winstar Bankruptcy Case. The Action arises from a Bankruptcy Code § 363 sale in the Delaware Bankruptcy Court, is subject to the exclusive jurisdiction of the Bankruptcy Court, and involves the interpretation of the APA and the Sale Order. Furthermore should Plaintiffs recover a $300 million judgment against Impala and Winstar, the resulting indemnity claim will wipe out the possibility that other Winstar creditors will receive a distribution. This Action is inextricably intertwined with the Winstar Bankruptcy Case. Consequently, the high degree of relatedness between this Action and the Winstar Bankruptcy case is undeniable.

**G. <u>A Jury Trial Remains Possible.</u>**

Seventh, Plaintiffs' request for a jury trial cavils with the court. Plaintiffs availed themselves of the Delaware Bankruptcy Court to participate in the auction and bidding process for the Debtor's assets (transcript of sale hearing dated December 17, 2001, Gold Dec. Ex. 9.) Likewise, Plaintiffs approached the Debtor in Wilmington, Delaware - - just outside the courtroom of the Delaware Bankruptcy Court - - with their offer to purchase the Debtor's assets and later appeared in court before Judge Farnan to outline the details of their proposed agreement. (Gold Dec. Ex. 9 at 19; see also Ex. 9 at 17-28.) In purchasing the Debtor's assets, Plaintiffs entered into the APA with the Debtor in which they submitted exclusively to the jurisdiction of the Delaware Bankruptcy Court to resolve any and all disputes arising from that agreement, with the express understanding that a jury trial would likely not be available. (APA § 9.10.) Moreover, Plaintiffs sought and received approval of the transaction from the Delaware Bankruptcy Court, which retained exclusive jurisdiction over any and all disputes arising from its approval of the transaction. (Sale Order ¶ 15(c).) Plaintiffs should therefore not be permitted to circumvent the jurisdiction of the Delaware Bankruptcy Court and their concomitant waiver of a right to a jury trial, by now arguing that their right to a jury trial will be compromised.

Accordingly, the question of whether a jury trial remains possible in the Delaware Bankruptcy Court should not weigh in Plaintiffs' favor.

**H. All Of The Defendants Consented To The Removal.**

The final factor to consider in discretionary abstention is whether any of the Defendants will be prejudiced by their involuntary removal. Here, this factor weighs against remand because all of the Defendants consented to the Removal and now jointly oppose Plaintiffs' request for remand. Nor is the Bankruptcy Court jurisdiction inequitable to Plaintiffs given their prior consent to it - and the Sale Order's retention of exclusive jurisdiction.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons it is respectfully requested that the Court deny the relief sought in the Plaintiffs' Remand Motion and grant Defendants such other and further relief as is proper under the circumstances.

Dated: July 31, 2007

Respectfully submitted,

/s/Vickie Reznik
Yosef J. Riemer
Vickie Reznik
David S. Flugman
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Defendant The Blackstone Group, L.P.*

/s/ Andrew C. Gold
Stephen M. Rathkopf
Andrew C. Gold
HERICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Telephone: (212) 529-1400
Facsimile: (212) 592-1500

*Attorneys for Defendant Impala Partners, LLC*

/s/ Stephen L. Saxl
Stephen L. Saxl
William Wargo
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Defendant Citigroup Inc., as successor by merger to Citicorp*