UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WINSTAR HOLDINGS, LLC** and **IDT CORP.**,<br><br>   *Plaintiffs*,<br><br> - against -<br><br>**THE BLACKSTONE GROUP L.P.; IMPALA PARTNERS, LLC;** and **CITICORP**,<br><br>   *Defendants*. | Case No.: 07 CV 4634 (GEL)(AJP)<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION
BY ALL DEFENDANTS TO TRANSFER VENUE TO THE
<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE</u>**

                Yosef J. Riemer
                Vickie Reznik
                David S. Flugman

                KIRKLAND & ELLIS LLP
                Citigroup Center
                153 East 53rd Street
                New York, New York  10022-4611
                Telephone: (212) 446-4800
                Facsimile: (212) 446-4900

                *Attorneys for Defendant*
                *The Blackstone Group L.P.*

| | |
|---|---|
| Stephen M. Rathkopf<br>Andrew C. Gold<br><br>HERRICK, FEINSTEIN LLP<br>2 Park Avenue<br>New York, New York 10016<br>Telephone: (212) 592-1400<br>Facsimile: (212) 592-1500<br><br>*Attorneys for Defendant*<br>*Impala Partners, LLC* | Stephen L. Saxl<br>William Wargo<br><br>GREENBERG  TRAURIG, LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400<br><br>*Attorneys for Defendant Citigroup Inc., as*<br>*successor by merger to Citicorp* |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.  BECAUSE BOTH THE BANKRUPTCY COURT SALE ORDER AND THE ASSET PURCHASE AGREEMENT MANDATE THAT PLAINTIFFS' CLAIMS BE BROUGHT EXCLUSIVELY IN DELAWARE BANKRUPTCY COURT, THIS CASE SHOULD BE TRANSFERRED TO DELAWARE PURSUANT TO § 1406. ..............................................................................................2

    A.  Because Plaintiffs' Claims Both Relate to and Require an Interpretation of the Asset Purchase Agreement and the Sale Order, This Case is Subject to the Exclusive Jurisdiction of the Delaware Bankruptcy Court. ...............................3

    B.  Plaintiffs' Claims Can Only Be Brought in Delaware Bankruptcy Court Because they Fall Within the Broadly Worded Mandatory Forum Selection Clause in the Asset Purchase Agreement, Which Is Enforceable By Defendants.................................................................................................4

    C.  Jurisdiction Is Proper in the Delaware Bankruptcy Court. ......................................7

II.  EVEN IF VENUE IS DEEMED PROPER IN NEW YORK, THIS CASE SHOULD NONETHELESS BE TRANSFERRED TO DELAWARE BANKRUPTCY COURT PURSUANT TO § 1404 IN THE INTERESTS OF JUSTICE. .......................................................................................................................8

CONCLUSION................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Bayside Fuel Oil Corp. v. Savino (In re V. Savino Oil & Heating Corp.)*,
    No. 91 Civ. 0038 (RJD), 1992 WL 118801 (E.D.N.Y. May 21, 1992) .............................. 8

*Dan-Dee Int'l, Ltd. v. Kmart Corp.*,
    No. 99 Civ. 11689 (DC), 2000 WL 1346865 (S.D.N.Y. Sept. 19, 2000) ........................... 6

*In re Cuyahoga Equipment Corp.*,
    980 F.2d 110 (2d Cir. 1992) ............................................................................................. 7

*In re Global Crossing, Ltd. Secs. Litig.*,
    311 B.R. 345 (S.D.N.Y. 2003) ......................................................................................... 7

*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
    No. 03 Civ. 5262 (JFK), 2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ............................... 6

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*,
    No. 02 Civ. 0767 (LBS), 2002 WL 31819207 (S.D.N.Y. Oct. 10, 2002) ......................... 6

*Ruby v. Pan Am World Airways, Inc.*,
    252 F. Supp. 873 (S.D.N.Y. 1965) ................................................................................... 4

*Turtur v. Rothschild Registry Int'l.*,
    26 F.3d 304 (2d Cir. 1994) ..................................................................................... 1, 3, 6, 7

*Victor G. Reiling & Assocs. v. Fisher-Price, Inc.*
    No. 3:03 CV 222 (JBA), 2003 WL 21785580 (D. Conn. July 31, 2003) ......................... 6

*Walker v. Jon Renau Collection, Inc.*,
    423 F. Supp. 2d 115 (S.D.N.Y. 2005) .............................................................................. 9

*Wards Co., Inc. v. Jonnet Development Corp. (In re Lafayette Radio Electronics Corp.)*,
    761 F.2d 84 (2d Cir. 1982) ............................................................................................... 8

*Weingrad v. Telepathy, Inc.*,
    No. 05 Civ. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ......................... 5

*Weiss v. Columbia Pictures Television, Inc.*,
    801 F. Supp. 1276 (S.D.N.Y. 1992) ................................................................................. 8

**Statutes**

28 U.S.C. § 1334(b) ................................................................................................................ 7, 8

28 U.S.C. § 1404 ..................................................................................................................... 2, 8

28 U.S.C. § 1406 ..................................................................................................................... 2, 8

# **PRELIMINARY STATEMENT**

In December 2001, plaintiff IDT Corp. ("IDT") purchased the business assets of Winstar Communications, Inc. ("Old Winstar" or "Debtor") out of bankruptcy for a "fair and reasonable" price through a court-approved Asset Purchase Agreement ("APA").  (Ex. B (Order) at ¶ H.)[1] Now, five and a half years later, IDT asks this Court to permit its collateral attack on the validity of the APA and Sale Order to go forward in New York state court despite an Order ("Sale Order") from the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court") and a clause in the APA designating the Delaware Bankruptcy Court as the exclusive forum for this dispute.  Though Plaintiffs style their suit as sounding in tort and not contract, they cannot escape the fact that their claims -- which will necessarily require interpretation of both the APA and Sale Order  -- fall firmly within the mandatory forum provisions.  *See, e.g., Turtur v. Rothschild Registry Int'l.*, 26 F.3d 304, 309-10 (2d Cir. 1994) (use of "arising out of or relating to" language in contract is sufficiently broad to encompass claims of fraudulent inducement).  Plaintiffs' opposition merely asserts, *ipse dixit*, that this dispute does not "relate to" the APA (*see, e.g.,* Pl. Br. at 8), despite the Complaint's repeated reference to the APA and Plaintiffs' entire theory of reliance and damages predicated on the APA.  (*See* Complaint (hereinafter "Compl.") at ¶¶ 1, 2, 43-45, 58, 60, 85, 88, 93, 94.)

Although the Complaint is strewn with allegations of wrongdoing against the Debtor, Plaintiffs conspicuously chose not to name them as a party.[2]  Yet even without Old Winstar as a

---

[1] Exhibit references A through F refer to those documents attached to the Flugman Declaration submitted with Defendants' Opening Brief.

[2] *See, e.g.*, Complaint (hereinafter "Compl.") at ¶ 28 ("During this due diligence, Blackstone, Impala, *and Old Winstar* each made the following material representations . . ."); ¶ 31 ("Blackstone, Impala, Citicorp, *and Old Winstar* did not provide client information . . ."); ¶ 33 ("Blackstone, Citicorp, Impala, *and Old Winstar* all hid and blocked IDT's access . . ."); ¶ 34 ("The figures . . . were heavily distorted by (*inter alia*) *Old Winstar's* recording of revenue . . ."); ¶ 36 ("Blackstone, Citicorp, *and Old Winstar* knew that this information was false .

(Continued…)

party, the Defendants can still enforce the terms of the APA. Plaintiffs ignore the plain language of the Sale Order, which states that "the terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and *shall inure to the benefit of . . . creditors . . . and any affected third parties*." (Ex. B (Order) at ¶ 17 (emphasis added).) Likewise, as explained more fully in Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Remand Motion ("Joint Remand Opp."), filed on July 31, 2007, even without Old Winstar in this suit, the case falls firmly within the jurisdiction of the Bankruptcy Court. (*Id.* at 12-14.) Plaintiffs' attempt to deprive the Delaware Bankruptcy Court of jurisdiction over claims challenging the validity of the seminal event in Old Winstar's bankruptcy proceeding should be rejected. Accordingly, whether pursuant to § 1406 or § 1404, this Court should transfer this case to the Delaware District Court for referral to the Delaware Bankruptcy Court.

## ARGUMENT

**I. BECAUSE BOTH THE BANKRUPTCY COURT SALE ORDER AND THE ASSET PURCHASE AGREEMENT MANDATE THAT PLAINTIFFS' CLAIMS BE BROUGHT EXCLUSIVELY IN DELAWARE BANKRUPTCY COURT, THIS CASE SHOULD BE TRANSFERRED TO DELAWARE PURSUANT TO § 1406.**

Venue is improper in any court other than the Delaware Bankruptcy Court both because that court in its Sale Order retained exclusive jurisdiction over Plaintiffs' claims and because the APA contains a broadly-worded mandatory forum selection clause that covers Plaintiffs' claims. (*See* Defendants' Opening Brief (hereinafter "Def. Br.") at 7.) In response, Plaintiffs advance two meritless theories: *first*, that neither the APA (which Plaintiffs say is simply "contextual background") nor the Sale Order applies to their fraud claims, and *second*, that Defendants as

---

. ."); ¶ 64 ("Blackstone, Citicorp, and Impala knowingly aided and abetted in *Old Winstar's commission of fraud* . . ."); ¶ 92 ("The Defendants engaged in a combination and conspiracy involving four conspirators . . .(d) the officers, employees and agents of *Old Winstar*.") (emphasis added throughout).

non-parties to the APA cannot enforce its mandatory venue provisions. (Pl. Br. at 4-8.) As set forth below, each of these arguments fail.

> **A.  Because Plaintiffs' Claims Both Relate to and Require an Interpretation of the Asset Purchase Agreement and the Sale Order, This Case is Subject to the Exclusive Jurisdiction of the Delaware Bankruptcy Court.**

Despite the Bankruptcy Court's retention of exclusive jurisdiction in the Sale Order to "resolve any disputes arising under or related to the Asset Purchase Agreement" and to "interpret, implement, and enforce the provisions of the Asset Purchase Agreement and this Sale Order" (Ex. B (Order) at ¶ 15), Plaintiffs baldly assert that the Bankruptcy Court's jurisdiction does not apply to their claims. (Pl. Br. at 8-9.) Plaintiffs' arguments are devoid of any merit.

In the first instance, under the law of this Circuit, Plaintiffs' asserted claims, including their fraud claims, arise under or relate to the APA. *See Turtur*, 26 F.3d at 309-10 (fraudulent inducement claim "clearly 'arises out of' or 'relates to'" contract at issue). And while Plaintiffs may not seek to interpret the provisions of the APA or Sale Order, their claims and allegations require exactly that.[3] For example:

- Plaintiffs assert that Defendants fraudulently misrepresented Old Winstar's assets and collectively with the Debtor "hid and blocked IDT's access to material information." (Compl. at ¶¶ 30, 33.) Yet, the Bankruptcy Court Sale Order found as a matter of fact that the sale and APA were "negotiated, proposed and agreed to . . . without collusion, in good faith," and for "fair and reasonable" consideration. (*See* Ex. B (Order) at ¶¶ G, H, 10.)

- Likewise, Plaintiffs allege that they detrimentally relied on Old Winstar's and Defendants' alleged misrepresentations, which induced them to enter into the APA. (Compl. at ¶ 43.) Yet, the APA specifically states that Old Winstar made "no representation or warranty whatsoever" and that IDT purchased the assets "on an 'as-is where-is' basis." (Ex. A (APA) at § 5.10.) Indeed, when Howard Jonas (the Chairman of the Board of IDT) and IDT's counsel appeared in Delaware Bankruptcy Court to outline the terms of their agreement in principle with Old Winstar, IDT represented that "[i]t's an as is, where is acquisition, with no reps and warranties." (Declaration of Vickie Reznik (hereinafter "Reznik Decl."), Ex. I (Transcript) at 24.)

---

[3] Allegations involving the negotiations, good faith of the parties, and the APA itself appear throughout Plaintiffs' Complaint. (*See, e.g,* Compl. at ¶¶ 30, 33 (allegations of bad faith); Ex. A (APA) at ¶¶ 2, 43, 60, 93.)

Consequently, the court that adjudicates Plaintiffs' dispute will be called upon to decide, among other things, whether the terms of the APA bar any or all of Plaintiffs' claims, and the key issues of whether, as the Delaware Bankruptcy Court concluded, the parties to the APA negotiated in good faith and paid "fair and reasonable" consideration.  (*See* Ex. B (Order) at ¶¶ G, H.)

Because the plain terms of the Sale Order vest the Delaware Bankruptcy Court with exclusive jurisdiction to interpret both the APA and Sale Order, Plaintiffs' claims should be transferred to that forum.  *See Ruby v. Pan Am World Airways, Inc.*, 252 F. Supp. 873, 880 (S.D.N.Y. 1965).

> **B.  Plaintiffs' Claims Can Only Be Brought in Delaware Bankruptcy Court Because they Fall Within the Broadly Worded Mandatory Forum Selection Clause in the Asset Purchase Agreement, Which Is Enforceable By Defendants.**

In this Circuit, a forum selection clause is treated as "prima facie valid," and in order to avoid the agreed-upon forum, a plaintiff must "demonstrate exceptional facts explaining why he should be relieved from his contractual duty."[4]  (*See* Def. Br. at 8-9.)  Cognizant of this heavy burden, Plaintiffs try to avoid it entirely by arguing *first* that the Defendants, as non-parties to the APA, cannot enforce its provisions, and *second* that because they are not suing on a breach of contract theory, their claims are beyond the scope of the APA's forum selection clause.  (Pl. Br. at 4-8.)  The law of this Circuit, however, is to the contrary.

First, the Defendants can properly enforce the terms of the Asset Purchase Agreement both independently and by virtue of the Sale Order.  Defendants, although not parties to the APA, can enforce its provisions -- including the forum selection clause -- because Plaintiffs allege only collective acts of wrongdoing by the named Defendants taken in concert with Old

---

[4] Although "a plaintiff's choice of forum is generally entitled to considerable weight" (*see* Pl. Br. at 7 n.6 (internal citations omitted)), where, as here, a motion to transfer involves a mandatory forum selection clause "deference to the plaintiff's choice of forum is inappropriate."  (*See* Def. Br. at 9.)

Winstar.  (*See, supra*, at 1 n.1.)  Likewise, Defendants' alleged concealment and misrepresentation of the value of Old Winstar's assets are predicated on the alleged underlying wrongful conduct of Old Winstar itself.  (*See*, *e.g.*, Compl. at ¶¶ 29, 34, 47.)  In such cases, non-parties to an agreement may enforce its terms.  *See Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5-6 (S.D.N.Y. Nov. 7, 2005) (allowing non-signatory defendants to enforce terms of contract where plaintiff alleged action in concert with signatory, and non-parties' interests were "completely derivative of" and "directly related to, if not predicated upon" the signatory's interests).

Moreover, Plaintiffs are bound by the Sale Order pursuant to which Defendants Blackstone, Impala, and Citigroup Inc., as successor by merger to Citigroup ("Citigroup"), may enforce not only the terms of the Order, but also the terms of the APA.  (*See* Ex. B (Order) at ¶ 17.)  The plain language of the Sale Order states that "the terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and *shall inure to the benefit of creditors  . . . and any affected third parties*."  (Ex. B (Order) at ¶ 17 (emphasis added).)  Even if the Court were to find that the named Defendants were unable to independently enforce the terms of the APA, they clearly would be able to do so pursuant to the Sale Order because "to the extent that any provision of [the] Sale Order is inconsistent with the Asset Purchase Agreement . . . the terms of [the] Sale Order shall control."  (*Id*. at ¶ 18.)

Second, Plaintiffs' claims fall squarely within the APA's broadly worded mandatory forum selection clause, and thus can only be brought in Delaware Bankruptcy Court.  That Plaintiffs' claims sound in tort rather than contract makes no difference because where, as here, a forum selection clause is broadly worded to include within its scope any claim "arising out of or

relating to [the] contract," such language is interpreted to include tort as well as contract claims.[5] *See Turtur*, 26 F.3d at 309-10; *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) ("[F]orum selection clauses are not restricted solely to breach of contract claims."). While Plaintiffs may not be attempting to assert rights arising from the APA, their fraud claims "arise out of" and "relate to" the transaction it memorializes and as such fall within the forum selection clause.[6] (*See* Def. Br. at 9 n.12.)

Equally unavailing is Plaintiffs' misplaced reliance on *Victor G. Reiling & Assocs. v. Fisher-Price, Inc.* and *Dan-Dee Int'l, Ltd. v. Kmart Corp.* (Pl. Br. at 5-8.) In *Fisher-Price*, defendants sought to invoke the forum selection clause of an ***expired*** option contract over plaintiff's misappropriation claims on the grounds that the claims covered the same subject matter as the earlier agreement. *Fisher-Price,* No. 3:03 CV 222 (JBA), 2003 WL 21785580, at *2 (D. Conn. July 31, 2003) (emphasis added). Characterizing the agreement as part of the mere "contextual background" of the case, the court refused to transfer the case. *Id*. Likewise, in *Dan-Dee*, the court held a forum selection clause inapplicable to copyright infringement claims wholly independent of the contract containing the venue provision. *Dan-Dee Int'l, Ltd.*, No. 99 Civ. 11689 (DC), 2000 WL 1346865, at *5 (S.D.N.Y. Sept. 19, 2000). Unlike the contracts in *Fisher-Price* and *Dan-Dee*, which were wholly foreign and bore no relationship to the claims in those cases, the APA in this case is integrally intertwined with Plaintiffs' claims. *See*, *supra* § I.A. In fact, Plaintiffs' entire theory of damages is predicated on the execution of the APA,

---

[5] The forum selection clause in the APA employs nearly identical language to the one in *Turtur*. (*See* Ex. A (APA) § 9.10; Def. Br. at 9.)

[6] *See also Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2002 WL 31819207, at *10 (S.D.N.Y. Oct. 10, 2002) (fraud claims arising out of transaction fall within language of broadly worded forum selection).

making their attempt to brush it aside as mere "contextual background" incredible. (*See* Compl. at ¶ 60; *see also* Compl. at ¶¶ 1, 2, 43-45, 58, 85, 88, 93, 94.)

Because Plaintiffs' claims arise out of and relate to the APA, they fall within its forum selection clause mandating venue in the Delaware Bankruptcy Court and this Court should transfer the case to that forum. *See Turtur*, 26 F.3d at 309-10.

### C. Jurisdiction Is Proper in the Delaware Bankruptcy Court.

As discussed more fully in Defendants' Joint Remand Opposition, although Plaintiffs' claims are nominally state law claims and they chose not to name the Debtor as a party, the nature of the proceedings and the relief requested nevertheless provide this Court with "arising in," "arising under," and "related to" jurisdiction over this action, pursuant to 28 U.S.C. § 1334(b). (Joint Remand Opp. at 5-16.)

Insisting that no such jurisdiction exists and focusing only on "related-to" jurisdiction, Plaintiffs mistakenly cite a narrow test requiring a "significant connection" between the bankrupt estate and the instant action. (Pl. Br. at 10.) However, the Second Circuit has modified this standard and has broadly interpreted "related-to" jurisdiction under § 1334(b) to include any action whose "outcome might have *any conceivable effect* on the bankrupt estate." *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). As discussed more fully in Defendants' Joint Remand Opposition, the fact that the bankrupt estate is contractually obligated to indemnify Blackstone for defending these claims "*as they are incurred*" constitutes a direct effect on the assets of the bankrupt estate and, thus, satisfies related-to jurisdiction.[7] *See In re Global Crossing, Ltd. Secs. Litig.*, 311 B.R. 345, 347 (S.D.N.Y. 2003) (finding the mere

---

[7] As explained in the Preliminary Statement, the exception for willful misconduct on the part of Blackstone, upon which Plaintiffs rely so heavily, only applies to claims "finally adjudged by a court of competent jurisdiction." (*See* Ex. A (Blackstone Agreement) at Attachment A.)

-7-

"possibility" that litigation could lead to a claim against the corporation for contribution as "certainly hav[ing] a conceivable effect on the bankrupt estate"). Accordingly, Plaintiffs' claims fall within the jurisdictional provisions in § 1334(b) and thus venue is proper in the Delaware Bankruptcy Court.[8]

### II. EVEN IF VENUE IS DEEMED PROPER IN NEW YORK, THIS CASE SHOULD NONETHELESS BE TRANSFERRED TO DELAWARE BANKRUPTCY COURT PURSUANT TO § 1404 IN THE INTERESTS OF JUSTICE.

In the event that the Court determines that § 1406 is not the correct mechanism by which to enforce the mandatory venue provisions of the Sale Order and APA, the Court should instead transfer the case in the interests of justice pursuant to 28 U.S.C. § 1404(a). Even if venue is not improper in New York, the venue provisions in the Sale Order and APA are applicable and militate heavily in favor of a transfer to the Delaware Bankruptcy Court for all the reasons above. *See*, *supra*, § I. Indeed, even under § 1404(a), Plaintiffs still have the burden to "demonstrate exceptional facts" to avoid litigation in the parties' contractual choice of forum, which they have demonstrably failed to do here. (*See* Def. Br. at 12.)

For example, Plaintiffs assert that convenience of witnesses is the "single-most important factor" in the transfer analysis. (Pl. Br. at 14.) Yet, "mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum."[9] *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1279 (S.D.N.Y. 1992). In any case, even if these witnesses are located in the New York metropolitan area, depositions

---

[8] Even if neither arising under, arising in nor related to jurisdiction existed in this case -- which it does -- jurisdiction in the Delaware Bankruptcy Court would still be proper because the bankruptcy court has inherent ancillary jurisdiction to enforce the terms of the Sale Order. *See Wards Co., Inc. v. Jonnet Development Corp. (In re Lafayette Radio Electronics Corp.)*, 761 F.2d 84, 92 (2d Cir. 1982); *see also Bayside Fuel Oil Corp. v. Savino (In re V. Savino Oil & Heating Corp.)*, No. 91 Civ. 0038 (RJD), 1992 WL 118801, at *2 (E.D.N.Y. May 21, 1992).

[9] Notably Plaintiffs had no problem traveling the 115 miles from Newark to Wilmington when they wanted to buy Old Winstar.

and other discovery are typically conducted where the witness is located.  Similarly, "the location of documents is neutral in today's era of photocopying, fax machines, and Federal Express."  *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 117-18 & n.3 (S.D.N.Y. 2005).  Further, all but one of the witnesses listed in the Roover Declaration are people over which the parties have control.[10]  And Defendants have already agreed to submit themselves to the jurisdiction of the Delaware Bankruptcy Court.  (*See* Reznik Decl. at ¶ 2.)

Indeed, for Plaintiffs to complain about the "inconvenience" of the Delaware forum and to assert that all relevant operative facts for this case occurred in New York is disingenuous at best.  Plaintiff IDT is a Delaware corporation that does business in Delaware.[11] (Reznik Decl., Ex. G (14A) at 1, 31, A1, B2, B15; Ex. H (10K) at 44.)  In addition, Plaintiffs specifically availed themselves of the Delaware forum by arriving in Delaware and making an offer to buy Old Winstar's assets outside the courtroom of the Delaware Bankruptcy Court.  (Reznik Decl., Ex. I (Transcript) at 17-19;  Affidavit of Stefan Feuerabendt (hereinafter "Feuerabendt Aff.") at ¶ 3.)[12]  After IDT's proposal, negotiations and discussions involving IDT took place outside the courtroom of the Delaware Bankruptcy Court to work out an agreement in principle on the key terms of a transaction.  (*See* Feuerabendt Aff. at ¶¶ 3-5.)  Moreover,  IDT's Chairman of the Board and counsel both appeared in Delaware Bankruptcy Court to outline the details of the proposed agreement and represented that "a fair amount of time" had been spent negotiating the agreement in Delaware.  (Reznik Decl., Ex. I (Transcript) at 19; *see also id.* at 17-28.)

---

[10]  That the one non-party witness, David Duncan, the former Chief Financial Officer of Old Winstar is by Plaintiffs' own estimation a "key participant in Plaintiffs' due diligence" further illustrates the centrality of Old Winstar to Plaintiffs' allegations.  (*See* Pl. Br. at 16.)

[11]  Defendants Blackstone and Citigroup are also Delaware entities.

[12]  Plaintiffs concede that IDT is a large corporation with financial resources (Pl. Br. at 17), and its lead counsel in this action practices in Virginia, closer to Wilmington, Delaware than to New York.

Ultimately, the interests of justice favor resolving this dispute in the Delaware Bankruptcy Court as that court has a compelling interest in seeing its own Sale Order properly enforced. Because the Delaware Bankruptcy Court was intimately involved in the sale of Old Winstar's assets to Plaintiffs, it is best suited to determine the impact of Plaintiffs' claims on the ongoing bankruptcy proceeding. As Plaintiffs' claims raise no novel issues of state law, the Bankruptcy Court is perfectly capable of adjudicating this case, especially given the federal bankruptcy issues with which the claims are intertwined. (*See also* Joint Remand Opp. at 19-24.)

## CONCLUSION

For all the foregoing reasons, and for those in the Defendants' opening brief, all Defendants respectfully request that this Court transfer this case to the United States District Court for the District of Delaware so that it may be transferred to the United States Bankruptcy Court for the District of Delaware where it rightfully belongs.

Respectfully submitted,

Dated: August 2, 2007

s/ Yosef. J. Riemer

Yosef J. Riemer
Vickie Reznik
David S. Flugman
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Defendant*
*The Blackstone Group L.P.*

s/ Stephen M. Rathkopf

Stephen M. Rathkopf
Andrew C. Gold
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Attorneys for Defendant*
*Impala Partners, LLC*

s/ Stephen L. Saxl

Stephen L. Saxl
William Wargo
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Defendant Citigroup Inc., as*
*successor by merger to Citicorp*