EXHIBIT H

# IDT CORP (IDT)

520 BROAD ST
NEWARK, NJ 07102
973 438 1000
http://www.idt.net

# 10-K

**ANNUAL REPORT**
**Filed on 10/16/2006 - Period: 07/31/2006**
File Number 001-16371



LIVEDGAR[®] Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

**Table of Contents**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

# FORM 10-K

[✓] Annual report pursuant to section 13 or 15(d) of the securities exchange act of 1934 for the fiscal year ended July 31, 2006, or

[   ] Transition report pursuant to section 13 or 15(d) of the securities exchange act of 1934.

Commission File Number: 1-16371

# IDT Corporation

(Exact name of registrant as specified in its charter)

| **Delaware** | **22-3415036** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification Number) |

**520 Broad Street Newark, New Jersey 07102**

(Address of principal executive offices, zip code)

**(973) 438-1000**

(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| <u>Title of each class</u> | <u>Name of each exchange on which registered</u> |
|---|---|
| Class B common stock, par value $.01 per share | New York Stock Exchange |
| Common stock, par value $.01 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes [✔]   No [   ]

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes [   ]   No [✔]

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes [✔]   No [   ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  [✔]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer  [   ]      Accelerated filer  [✔]      Non-accelerated filer  [   ]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes [   ]   No [✔]

The aggregate market value of the voting stock held by non-affiliates of the registrant, based on the closing price on January 31, 2006 (the last business day of the registrant's most recently completed second fiscal quarter) of the Class B common stock of $12.35 and of the common stock of $12.22, as reported on the New York Stock Exchange, was approximately $572,152,373 million.

As of October 5, 2006, the registrant had outstanding 56,462,342 shares of Class B common stock, 9,816,988 shares of Class A common stock, and 15,178,173 shares of common stock. Excluded from these numbers are 5,565,255 shares of Class B common stock and 9,896,687 shares of common stock held in treasury by IDT Corporation.

Table of Contents

**IDT Telecom—Retail Telecommunications Services and Wholesale Telecommunications Services Segments**

| (in millions, except revenue-per-minute) | | | Change | |
|---|---|---|---|---|
| Year ended July 31, | 2006 | 2005 | $ | % |
| Revenues | | | | |
| Calling cards | $ 1,172.6 | $ 1,220.4 | $ (47.8 ) | (3.9 )% |
| Consumer phone services | 261.4 | 333.5 | (72.1 ) | (21.6 ) |
| Total retail telecommunications services | 1,434.0 | 1,553.9 | (119.9 ) | (7.7 ) |
| Wholesale telecommunications services | 526.5 | 544.7 | (18.2 ) | (3.3 ) |
| Total revenues | $ 1,960.5 | $ 2,098.6 | $ (138.1 ) | (6.6 )% |
| Minutes of use | | | | |
| Calling cards | 15,778 | 17,224 | (1,446 ) | (8.4 )% |
| Wholesale telecommunications services | 7,305 | 6,331 | 974 | 15.4 |
| Total minutes of use | 23,083 | 23,555 | (472 ) | (2.0 )% |
| Average revenue-per-minute: | | | | |
| Calling cards | $ 0.0736 | $ 0.0697 | $ 0.0039 | 5.5 % |
| Wholesale telecommunications services | 0.0721 | 0.0864 | (0.0143 ) | (16.6 ) |
| Total average revenue per minute | $ 0.0731 | $ 0.0742 | $ (0.0011 ) | (1.5 )% |

*Revenues*.  Revenue declines in fiscal 2006 occurred at our U.S. consumer phone services business, U.S. and European calling card businesses, and U.S. wholesale carrier business, partially offset by an increase in our European consumer phone services business and South American wholesale carrier business. Our total minutes-of-use declined by 2.0%. A decline of 8.4% in minutes-of-use in our calling card business in the United States and Europe was partially offset by a growth of 15.4% in minutes-of-use in our Wholesale Telecommunications Services segment. The calling card volume decline resulted mostly from the impact on our operations from the competitive landscape, a gradual shift in market share to wireless products and management's decision to raise prices in an effort to generate higher gross margins from this business.

Average price realization represents the average revenue per minute we recognize on the minutes that we sell within our calling card and wholesale carrier businesses. It excludes minutes of use related to our consumer phone services business, as the domestic traffic generated by that business is not carried on our network, and the international traffic generated by this business, though carried on our own network, is relatively insignificant. Our average termination cost per minute represents our average direct cost for minutes that we buy in order to terminate calls related to our calling card and wholesale carrier businesses. These costs exclude minutes of use related to our consumer phone services business, as its in-network traffic is insignificant.

The decrease in total average revenue-per-minute in our wholesale carrier business is due primarily to continued competition. During the second half of fiscal 2006, we instituted selective price increases on our calling card businesses in the United States and Europe, in an effort to improve gross margins, which has resulted in improved revenue-per-minute price realizations in both the United States and Europe.

The customer base for our U.S. bundled, flat-rate local and long distance phone service plans was approximately 135,000 as of July 31, 2006 compared to 220,000 as of July 31, 2005. We currently offer local service in the following 13 states: New York, New Jersey, Pennsylvania, Maryland, Delaware, Massachusetts, New Hampshire, West Virginia, Maine, Rhode Island, Florida, Georgia and California. In addition, we had approximately 257,000 stand-alone long distance customers as of July 31, 2006 compared to 325,000 customers as of July 31, 2005. The decreases in our customer base occurred as a result of our decision, in mid-fiscal year 2005, to significantly reduce our marketing and advertising efforts because of the increased cost structure and inferior economics we were faced with upon the abolishment of the UNE-P regime by the Federal Communications Commission. Since then, we have entered into agreements with Verizon, AT&T/SBC and BellSouth granting us access to their respective networks, albeit at higher rates than we paid under the UNE-P system. Despite our recent agreements with the RBOC's, we have generally not been able to attract new customers at an economically desirable cost, and we have therefore significantly reduced the marketing of our bundled phone service. Consequently, our customer count has continued to decline during fiscal 2006, and we expect further declines in the future. As a result of the decline in this business, we made the decision during the third

44