UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
WINSTAR HOLDINGS, LLC :
and IDT CORP., :
:
Plaintiffs, :
: 07 Civ. 4634 (GEL)
-against- :
: **OPINION AND ORDER**
THE BLACKSTONE GROUP L.P., :
IMPALA PARTNERS, LLC, and :
CITICORP, :
:
Defendants. :
:
------------------------------------------------------------x

Joseph M. Vann (Jed Lewin, of counsel), Cohen
Tauber Spievack & Wagner LLP, New York, NY,
and Melissa A. Roover (Alan M. Grayson, of counsel),
Grayson & Kubli, P.C., McLean, VA, for plaintiffs.

Vickie Reznik (Yosef J. Riemer, David S. Flugman, of
counsel), Kirkland & Ellis LLP, New York, NY, for
defendant The Blackstone Group, L.P.

Andrew C. Gold (Stephen M. Rathkopf, of counsel),
Herick, Feinstein LLP, New York, NY, for defendant
Impala Partners, LLC.

Stephen L. Saxl (William Wargo, of counsel), Greenberg
Traurig, LLP, New York, NY, for defendant Citicorp.


GERARD E. LYNCH, District Judge:

The parties to this case agree on one thing: they don't want to be here. They disagree, however, on where they should be. Plaintiffs filed this action in the Supreme Court of the State of New York, where they believe it should remain; accordingly, they have moved to remand the case to the state court. Defendants removed the case to this Court, only in order to move to

transfer the case to the United States Bankruptcy Court for the District of Delaware.  The plaintiffs' motion will be denied, and defendants' motion granted.

## BACKGROUND

Plaintiff IDT Corp. formed plaintiff Winstar Holdings, LLC, in order to acquire the assets of Winstar Communications, Inc. ("Old Winstar"), and related entities.  Old Winstar had filed for bankruptcy protection in the Bankruptcy Court in Delaware, and was in the process of liquidation.  With the approval of the Bankruptcy Court, Old Winstar retained defendant Blackstone Group, L.P. as its financial advisor, and defendant Impala Partners, LLC ("Impala") as a restructuring advisor.  Defendant Citicorp, Old Winstar's largest creditor, played a role in negotiating the terms of the contract between Old Winstar and Impala.  Plaintiffs purchased the business assets of Old Winstar from the bankruptcy estate at an auction approved by the Bankruptcy Court for $42.5 million pursuant to an Asset Purchase Agreement ("APA") dated December 18, 2001, which was approved by the Bankruptcy Court the following day.  The APA contains a forum selection clause in which the parties agree that the United States Bankruptcy Court for the District of Delaware shall have exclusive jurisdiction to resolve any dispute arising out of or related to the APA.  (APA § 9.10, Gold Decl. Ex. 1.)  The Bankruptcy Court's order approving the sale similarly provides that that court retains "exclusive jurisdiction" to "resolve any disputes arising under or related to" the APA.  (Sale Order ¶ 15, Gold Decl. Ex. 2.)

Plaintiffs allege that they were induced to enter the APA by various misrepresentations made by the defendants and by Old Winstar in an offering statement.  Their claims sound solely in New York common law.

**DISCUSSION**

I.    <u>Plaintiffs' Motion to Remand</u>

The threshold issue in addressing plaintiffs' remand motion is whether federal jurisdiction over this case exists because it "aris[es] in" a bankruptcy case or "aris[es] under" the bankruptcy code, or merely because it is "related to" a bankruptcy case. Although 28 U.S.C. § 1334(b) provides for federal jurisdiction in either situation, if the case is merely one "related to" the Old Winstar bankruptcy, and could not otherwise be brought in a federal court, statutory provisions requiring (28 U.S.C. § 1334(c)(2)) or permitting (28 U.S.C. § 1334(c)(1)) the Court to abstain from exercising jurisdiction and deferring to the state courts may apply. If, however, the case is a "core" bankruptcy proceeding that "arises under" the bankruptcy code or "arises in" a bankruptcy case, the mandatory abstention provision by its own terms do not apply and permissive abstention is less likely. Plaintiffs, accordingly, argue that the Court has, at most, "related to" jurisdiction,[1] while defendants contend that the case comes within the "arising in"

---

[1] Plaintiffs argue, in fact, that defendants have not established even "related to" jurisdiction (P. Remand Mem. 10-12), but their arguments in this regard are unpersuasive. Whether an action is "related to" a bankruptcy depends on whether there is "a significant connection" between the action and the underlying bankruptcy. In re Turner, 724 F.2d 338, 341 (2d Cir. 1983) (citations and internal quotation marks omitted). The "proceeding need not necessarily be against the debtor or against the debtor's property." In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 317 (S.D.N.Y. 2003), quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 6 (1995). In any ordinary sense, the connection between this case and the bankruptcy is obvious: the sale that is the subject of the litigation was an aspect of the bankruptcy proceeding. More importantly, the outcome of the action "'could alter the debtor's rights, liabilities, options or freedom of action'" and affect "'the handling and administration of the bankrupt estate.'" WorldCom, 293 B.R. at 317, quoting Celotex, 514 U.S. at 308 n. 6 (1995). Although plaintiffs have not named Old Winstar as a defendant, Impala allegedly has indemnification rights against Old Winstar. While plaintiffs claim that the indemnification cannot apply to this case because of an exclusion for "willful misconduct," and because (according to plaintiffs) there is no estate left to affect, the bankruptcy proceedings are on-going, as is litigation that could bring assets into the estate. The Court cannot assume the correctness of plaintiffs' assertions, which turn on facts yet

or "arising under" headings of jurisdiction.

    A.    <u>"Arising Under" Jurisdiction</u>

The most frequently cited explanation of the meaning of "arising under" jurisdiction can be found in the legislative history of the Bankruptcy Reform Act of 1978. The House Report accompanying the bill that became that Act noted that

> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. § 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977). As the leading commentator on bankruptcy law puts it, "What this language seems to mean is that, when a cause of action is one which is created by title 11, then that civil proceeding is one 'arising under title 11.'" 1 Collier on Bankruptcy ¶ 3.01[4][c][i] at 3-21 (15th ed. rev. 2007).

---

to be found or even in some instances to occur. It is unquestionable that the outcome of this case "could" affect the debtor, and that is sufficient to invoke the "related to" jurisdiction. "Related to" jurisdiction exists where "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984) (citations and italics omitted); <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 114 (2d Cir. 1992) (A litigation has a "significant connection with a pending bankruptcy proceeding" and "falls within the 'related to' jurisdiction of the bankruptcy court" if the outcome "might have any 'conceivable effect' on the bankrupt estate.") As the courts have recognized, "'A key word in [the] test is 'conceivable.' Certainty, or even likelihood, is not required. Bankruptcy jurisdiction will exist so long as it is possible'" that the proceeding may affect the debtor's rights or the administration of the estate. <u>In re Dow Corning Corp.</u>, 86 F.3d 482, 491 (6th Cir. 1996), quoting <u>In re Marcus Hook Dev. Park Inc.</u>, 943 F.2d 261, 264 (3d Cir. 1991).

The language of the statute is self-consciously patterned on that of the general federal question jurisdiction statute, which provides for federal court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. See also U.S. Const. Art. III § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."). While the precise meaning of "arising under" in the general federal question context has vexed courts and commentators, see 13B Wright, Miller and Cooper, Federal Practice and Procedure § 3562 (2d ed. 1984), it has been suggested that an action arises under federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." Bator, Mishkin, Shapiro & Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973), quoted with approval in Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9 (1983). Moreover, it is well established that a case does not arise under federal law unless "the plaintiff's statement of his own cause of action shows that it is based upon" federal law. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

Applying these standards to this case, it is plain that the instant case does not arise under title 11. Simply put, plaintiffs' causes of action are based on state tort law, and rest on familiar common-law principles prohibiting fraud and misrepresentation. No proposition of bankruptcy law must be established for plaintiffs to prevail, and no provision of the bankruptcy code is implicated in their allegations. The causes of action asserted in the complaint are in no sense "created by" title 11 of the United States Code.

Defendants argue that the case nevertheless arises under the bankruptcy code "because it will be necessary for the Delaware Bankruptcy Court to interpret" its own order approving the APA in the course of deciding the case. (D. Remand Mem. 9.) But this argument misconstrues what it means for a case to "arise under" bankruptcy law. It may be that provisions of the APA and of the Bankruptcy Court's order approving it will be relevant to the outcome of the case. However, as the Supreme Court held in Mottley in the context of general federal question jurisdiction, "[a]lthough such allegations show that very likely, in the course of the litigation, a question under [bankruptcy law] would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under [title 11]." 211 U.S. at 153.

Accordingly, this is not a case of "arising under" jurisdiction.

B.    "Arising In" Jurisdiction

The extent of the "arising in" jurisdiction is less clearly defined. The leading bankruptcy treatise refers to it as a "residual category of civil proceedings," that "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." Collier on Bankruptcy, ¶ 3.01[4][c][iv] (15th ed. 2004) (internal quotation marks and footnotes omitted). Courts too have stated that

> [t]he meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987).

Defendants argue that this standard is met, pointing out that had Old Winstar not been in bankruptcy, the sale would never have taken place, the alleged misrepresentations would never

have occurred, and so this action would have no existence absent the bankruptcy. (D. Remand Mem. 7-9.) This argument may be somewhat oversimplified. The courts and commentators using the "no existence outside of the bankruptcy" formulation seem to be referring to proceedings that by their nature cannot exist outside of bankruptcy, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy proceeding. The Bankruptcy Court in this district, for example, in a case relied upon by defendants themselves, puts the matter this way:

> A claim "arises in" bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy action, because it has no existence outside of bankruptcy. See [In re] Riverside Nursing Home, 144 B.R. [951,] 955 [S.D.N.Y. 1992]; 176-60 Union Turnpike v. Howard Beach Fitness Center, 209 B.R. 307, 311, n. 2 (S.D.N.Y. 1997) (Sprizzo, J.). Matters involving the enforcement or construction of a bankruptcy court order are in this category.

In re Sterling Optical Corp., 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). Plaintiffs here sue for fraud. Such a claim is not one that "*by its very nature* . . . can only be brought in a bankruptcy action." Rather, it is a garden-variety common-law claim that most usually is brought outside of bankruptcy.

The type of administrative matters cited in Collier, and in Sterling, as examples of "arising in" jurisdiction are closely tied to the administration of the estate itself. Actions such as motions for contempt of bankruptcy court orders, motions to change the composition of a creditors' committee or appoint or elect trustees or examiners, are matters that, while the cause of action is not created by title 11, could not "have been the subject of a lawsuit absent the filing of a bankruptcy case." Collier, ¶ 3.01[4][c][iv]. The mere fact that the cause of action would never have arisen absent this particular bankruptcy is not enough to confer jurisdiction.

Nevertheless, the claims at issue here are more closely connected to the administration of the bankruptcy than most garden-variety common-law claims. There is persuasive precedent for treating a state-law tort suit regarding the conduct of professionals involved in the administration of the bankruptcy estate as a matter that "arises in" a bankruptcy case. In re Southmark Corp., 163 F.3d 925 (5th Cir. 1999), involved a professional malpractice action against an accounting firm that worked for the court-appointed Examiner in a bankruptcy reorganization. When the defendant removed the case to the bankruptcy court that had presided over the reorganization, the plaintiff argued, like plaintiffs here, that mandatory abstention applied because the bankruptcy court's jurisdiction was of the "related to" variety because the matter was not a "core" bankruptcy proceeding. Id. at 928-29. Like plaintiffs here, the plaintiff in Southmark argued that its claims were simple state common-law tort claims that were not the sort that could arise only in a bankruptcy action, since "Southmark could have sued any accounting firm that worked for it on similar grounds of disloyalty, non-disclosure and malpractice." Id. at 930-31.

The Fifth Circuit rejected the argument, finding that "the professional malpractice claims alleged against [the accounting firm] are inseparable from the bankruptcy context." Id. at 931. The court's reasoning is instructive, and is applicable here:

> A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively.

Id.

Here, too, plaintiffs' claims go directly to the proper performance of duties by professionals retained by the bankruptcy estate, with the approval of the Bankruptcy Court, to assist it in maximizing the assets of the estate.  As the Southmark court pointed out, "[s]upervising the court-appointed professionals also bears directly on the distribution of the debtor's estate.  If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims." Id.  Here, of course, the claim is not brought by the bankruptcy estate itself, and the claim is rather that the professionals advising the estate obtained *excessive* compensation by defrauding the purchaser of the estate's assets.  But the matter is still intimately related to the administration of the bankruptcy.  The Bankruptcy Court has a vital interest in policing the integrity of the bankruptcy process in general, and of the sales of estate assets under the court's supervision in particular.

The Bankruptcy Court itself recognized the importance of the sale to its on-going administration of the case.  Its order approving the sale expressly provides that the Delaware Bankruptcy Court retains "exclusive jurisdiction to . . . resolve any dispute arising under or related to the Asset Purchase Agreement."  (Sale Order ¶ 15, Gold Decl. Ex. 2.)  This language is broad, encompassing not merely contract disputes or disputes between the parties to the APA themselves, and at a minimum expresses the Bankruptcy Court's keen interest in the resolution of disputes relating to the sale of Old Winstar's assets.  It plainly covers the dispute at hand, which unquestionably is a dispute "related to" the APA.[2]

---

[2] Plaintiffs cannot be surprised by being asked to litigate a matter relating to the APA in the Delaware Bankruptcy Court, as they themselves agreed in the APA to a choice of forum clause in which they "irrevocably submit to the exclusive jurisdiction" of that court "over any dispute arising out of or relating to this Agreement," and waived any objection to venue in that court.  (APA § 9.10, Gold Decl. Ex. 1.)  Defendants do not contend that this clause of the APA,

The Second Circuit has construed the core jurisdiction of the bankruptcy courts "as broadly as possible," because wide bankruptcy jurisdiction is "essential to the efficient administration of bankruptcy proceedings." Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 229 (2d Cir. 2002). Given this jurisdictional sweep, it is clear that this is a case "arising in" the Old Winstar bankruptcy case.

C.  Abstention

Since this case "aris[es] in" a bankruptcy case and is not merely "related to" a bankruptcy case, mandatory abstention under 28 U.S.C. § 1334(c)(2) by its own terms does not apply. However, this Court may still, in its discretion, abstain from hearing the proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Such abstention is not appropriate here.

Federal courts should be "sparing" in their exercise of discretionary abstention. In re Texaco Inc., 182 B.R. 937, 946-47 (Bankr. S.D.N.Y. 1995), citing New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358 (1989), Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 (1909), and Chicot County v. Sherwood, 148 U.S. 529, 534 (1893). There is little basis to invoke comity to the state courts here, and every reason to invoke the federal jurisdiction. Although plaintiffs' claims are based on state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of New York law. As the case was promptly removed, the New York courts have invested no effort in the case.

---

to which they were not parties, of itself controls the outcome of this motion. At a minimum, however, it reflects plaintiffs' own understanding that the Delaware Bankruptcy Court is the proper forum for disputes about the sale of Old Winstar.

In contrast, the matter is closely tied to the bankruptcy case. The very sale that is the subject of the proceedings was a central aspect and basic function of the bankruptcy proceedings. The sale of Old Winstar's assets was pursuant to directives issued by the Bankruptcy Court, and the APA was specifically approved by that court. The conduct of the debtor and its advisors (who were retained with the approval of the Bankruptcy Court) that is the subject of the plaintiffs' claims is post-petition conduct that took place under the Bankruptcy Court's auspices. Although the plaintiffs' claims are asserted as tort claims of fraud in the inducement, the evaluation of those claims will necessarily involve the interpretation of the Bankruptcy Court-approved APA, which contains provisions (including a merger clause, APA §9.13; two disclaimers of warranties, id. §§ 5.10, 9.3; and an "as is" clause, id. § 5.10) that are arguably inconsistent with plaintiffs' claims, and of the Bankruptcy Court's own orders and findings (including a finding that the consideration was fair and reasonable and a finding that the APA was negotiated in good faith, Order ¶¶ G, H). Most significantly, both the plaintiffs and the Bankruptcy Court expressly stipulated that the Bankruptcy Court would be the exclusive forum for resolving claims related to the sale.

Under all these circumstances, common sense dictates the conclusion that the Bankruptcy Court is the proper forum for resolving these disputes, and that the Court should exercise its discretion to direct the case to that forum.[3]

---

[3] For the same reasons that abstention is inappropriate, the closely-related doctrine of equitable remand, 28 U.S.C. § 1452(b), is also inapplicable here.

II.     Defendants' Motion to Transfer

In light of the above discussion, little further need be said regarding defendants' motion to transfer the case to the United States District Court for the District of Delaware for referral to its Bankruptcy Court.  The *only* reason why this case belongs in federal court is because of its close association to the Old Winstar liquidation proceedings in Delaware.  The case "arises in" those proceedings, the Delaware Bankruptcy Court reserved its jurisdiction to deal with matters related to the bankruptcy sale that is the subject of this proceeding, and the defendants are accused of fraud in executing a sale that was ordered and approved by that court.

There is a strong argument that venue must be laid in Delaware under the APA's mandatory choice of forum clause.  As the Second Circuit has held, a contract clause electing a forum for all disputes "arising out of or related to" the contract encompasses claims of fraudulent inducement.  Turtur v. Rothschild Registry Int'l., 26 F.3d 304, 309-10 (2d Cir. 1994).  Although defendants are not parties to that clause, plaintiffs are.  The plaintiffs agreed to resolve any disputes related to the APA in the Delaware Bankruptcy Court.  Moreover, the defendants are sued for wrongdoing that essentially without exception is charged to have been committed jointly with the plaintiffs' counterparty in the APA, Old Winstar.  Weingrad v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *5-6 (S.D.N.Y. Nov. 7, 2005).

But even if transfer is not mandatory pursuant to 28 U.S.C. § 1406, discretionary transfer under § 1404(a) in the interests of justice is clearly appropriate.  As noted above, the whole point of federal jurisdiction here is the close connection of the case to the bankruptcy proceedings.  There is no plausible rationale for removing the case to federal court in order to decide it in a forum remote from the court where that proceeding is pending.  Plaintiffs seek to avoid this

obvious point by retreating to a conventional analysis of the factors ordinarily applicable in deciding transfer applications. Even if their convenience arguments did not ring hollow – and they do, where the physical distance between the courts involved is a short train ride and given that in real-world modern litigation the greatest expenditure of litigation effort in most cases takes place away from court – the plain fact is that in entering the APA plaintiffs "irrevocably waive[d]" any objections to venue in the District of Delaware on grounds of inconvenience.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to remand is denied and defendants' motion to transfer the case to the United States District Court for the District of Delaware is granted.

SO ORDERED.

Dated: New York, New York
       December 10, 2007

GERARD E. LYNCH
United States District Judge